**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE  19899-1347

302 658 9200
302 658 3989 FAX

JEREMY A. TIGAN
302 351 9106
jtigan@mnat.com

Original Filing Date: July 8, 2019
Redacted Filing Date: July 15, 2019

**BY E-FILING**                                             **REDACTED - PUBLIC VERSION**

The Honorable Christopher J. Burke
United States District Court
844 North King Street
Wilmington, DE 19801

Re: *Guardant Health, Inc. v. Foundation Medicine, Inc.*, C.A. No. 17-1616-LPS-CJB; and
     *Guardant Health, Inc. v. Personal Genome Diagnostics, Inc.*, C.A. No. 17-1623-LPS-CJB

Dear Judge Burke:

    Defendants Foundation Medicine, Inc. ("FMI") and Personal Genome Diagnostics, Inc. ("PGDx") (collectively, "Defendants") jointly request that the Court order Plaintiff Guardant Health, Inc. ("Guardant") to search for and produce documents responsive to FMI's Requests for Production ("RFP") Nos. 90-104, 106-110 and PGDx's RFP Nos. 138-152, 154-158 (collectively, the "Requests"). Each of the Requests seeks documents related to Dr. Eltoukhy's employment at Illumina and simultaneous involvement with Guardant and are, therefore, central to Defendants' respective inequitable conduct claims.[1]

**I.    The Documents Defendants Seek Are Relevant to Their Respective Inequitable Conduct Claims and Proportional to the Needs of the Case**

    Defendants' inequitable conduct defenses are primarily premised on Guardant's intentional omission of Dr. Eltoukhy as an inventor of the asserted patents because he was an employee of Illumina at the time and owed a duty to assign the inventions to Illumina. Defendants now seek to compel production of the following categories of documents that are directly relevant to this defense: (1) pre-2013 communications and documents between

---

[1] The Requests were timely served on April 15, 2019, prior to the end of fact discovery on May 15, 2019 (*see* C.A. No. 17-1616, D.I. 113). Moreover, on May 21, 2019, this Court expressly noted that it was "sympathetic to Defendant's position that statements made by Dr. Eltoukhy in his recent Declaration, (D.I. 238), regarding Dr. Eltoukhy's level of involvement with Plaintiff in 2012, are very different than the answers that Dr. Eltoukhy and Dr. AmirAli Talasaz gave on this subject during their depositions." *Guardant Health, Inc. v. Personal Genome Diagnostics Inc.*, C.A. No. 17-1623-LPS-CJB ("PGDx case"), D.I. 261. The Court then allowed Defendants to take "targeted, additional discovery with respect to this issue." *Id.*

Dr. Eltoukhy and Guardant (FMI RFP Nos. 90-92, 96-97; PGDx RFP Nos. 138-140, 144-145); (2) documents relating to Dr. Eltoukhy's relationship with Guardant during his employment at Illumina (FMI RFP No. 93-94, 96-98; PGDx RFP Nos. 141-142, 144-146); (3) confidential Illumina documents in Guardant's possession (FMI RFP No. 95; PGDx RFP No. 143); (4) documents relating to Dr. Eltoukhy's compliance/noncompliance with Illumina's employment agreements and policies (FMI RFP No. 98-104; PGDx RFP No. 146-152); (5) documents relating to Dr. Eltoukhy's involvement in or awareness of the prosecution of the asserted patents (FMI RFP No. 106; PGDx RFP No. 154); (6) documents relating to any decision to name or omit Dr. Eltoukhy as an inventor on the asserted patents (FMI RFP No. 107, 109-110; PGDx RFP No. 155); and (7) documents relating to whether Illumina has any ownership interest in the asserted patents (FMI RFP No. 108; PGDx RFP No. 156).  *See* Ex. 1 [FMI's Third Set of RFPs]; Ex. 2 [PGDx's Second Set of RFPs].

Guardant served objections to the Requests on May 15, 2019, and flatly refused to search for and produce responsive documents.  The Parties have since repeatedly conferred, but on June 14, 2019, Guardant stated that it would not withdraw its objections because it believes the Requests are overbroad and not calculated to lead to the discovery of relevant evidence.  *See* Ex. 3 [6/14/2019 12:23AM].  Although Guardant has vaguely suggested that it might be willing to reasonably search for documents responsive to narrowed Requests to the extent they are relevant to Defendants' inequitable conduct claims, it refuses to specify what it considers to be relevant or whether it actually has conducted any searches for potentially relevant documents.

Guardant has made clear, however, that it will not search for or produce any Illumina confidential documents or information in response to the Requests.  *See* FMI RFP No. 95; PGDx RFP No. 143.  Indeed, Guardant has already identified at least some Illumina communications in Guardant's possession that it is improperly withholding on the basis of relevance.  *See* Ex. 9 [excerpts of Guardant's 14th Supplemental Privilege Log showing entries 1076, 1083-1093, 1175-1181, 1213-1272, 1753-1768, and 4216].  Specifically, Guardant originally withheld as privileged certain pre-2013 communications between Dr. Eltoukhy and other Illumina employees that Guardant found in its files (presumably when they hit on Defendants' search terms).  Guardant then withdrew its claim of privilege and removed those Illumina-owned communications from its privilege log when Defendants challenged Guardant's privilege claim.  Guardant nonetheless continues to improperly withhold those documents on the basis of alleged irrelevance.[2]  Having previously been identified by Guardant as responsive and included on Guardant's privilege log, however, those documents are presumptively discoverable and should be produced on that basis alone.  *See, e.g., Williams v. Corelogic Rental Prop. Sols., LLC*, No. PX 16-58, 2016 WL 6277675, at *3 (D. Md. Oct. 26, 2016).

---

[2] The parties have been actively conferring with respect to Guardant's privilege log for nearly two months.  As a result of those meet and confers, Guardant has now produced 14 versions of its privilege log, amending its log to: (1) remove entries over which it could not credibly claim privilege, (2) provide additional descriptions for certain entries over which it maintains its assertion of privilege, and (3) add entries relating to privileged documents that were inadvertently produced.  *See* Ex. 4 [6/10/2019 10:58PM]; *see* Exs. 5-8.

      Moreover, there can be no question that the requested documents are not only relevant, they are pivotal to Defendants' inequitable conduct claims. For example, communications and documents exchanged between Dr. Eltoukhy and Guardant while Dr. Eltoukhy was still employed at Illumina may shed light on the level of involvement he had in the development of Guardant's technology during the critical 2012 timeframe. Similarly, documents related to Dr. Eltoukhy's failure to comply with the terms of his employment agreements with Illumina (including the failure to return confidential Illumina documents to Illumina at the end of his employment) may provide evidence of Guardant's deceptive intent in failing to name Dr. Eltoukhy as an inventor on the asserted patents. Further, to the extent non-privileged documents exist showing that Dr. Eltoukhy was directly involved in the prosecution of the asserted patents (as Guardant's privilege log suggests), and in any decision regarding whether he should be named as an inventor on those patents, those documents also are directly relevant and should be produced.

      The Requests are also entirely proportional to the needs of the case given the significance of Defendants' inequitable conduct claims. Here, Guardant is seeking to enforce the asserted patents against Defendants with the goal of ultimately removing Defendants' life-saving genomic assays from the market through injunction. If Defendants are ultimately successful in proving that Guardant obtained the asserted patents through fraud on the Patent Office, the asserted patents will be rendered unenforceable. *Cf. W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. 11-515-LPS, 2017 WL 4231572, at *2 (D. Del. Sept. 20, 2017) ("the public has an interest in invalidating patents that cannot survive a validity challenge").

## II.    Guardant Has Failed To Articulate Any Undue Burden

      The documents sought are exclusively in Guardant's possession and, indeed, at least some have already been located and reviewed by Guardant's attorneys. Given the limited subject matter (Illumina-related documents) and discrete time frame (2011-2013) of the documents sought, there should be little burden to Guardant in collecting and producing those documents. Nor has Guardant ever articulated any undue burden that would prevent it from searching for and producing responsive documents. *See* Ex. 3 [6/14/2019 12:23AM].

## III.    Conclusion

      For the foregoing reasons, Defendants respectfully seek an order from the court requiring Guardant to (1) undertake a timely search for documents responsive to FMI's RFP Nos. 90-109 and PGDx's RFP Nos. 138-152, and 154-158; and (2) to produce the documents described in the following entries of Guardant's 14th Supplemental Privilege Log over which Guardant is no longer asserting privilege: 1076, 1083-1093, 1175-1181, 1213-1272, 1753-1768, and 4216.

          Respectfully,

          Jeremy A. Tigan (#5239)

JAT/rs
cc: Clerk of Court (by hand delivery)
   All Counsel of Record (by e-mail)