## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GUARDANT HEALTH, INC.

Plaintiffs,

v.

FOUNDATION MEDICINE, INC.,

Defendant.

C.A. No. 17-cv-1616-LPS-CJB

**JURY TRIAL DEMANDED**

## GUARDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

**I.     INTRODUCTION**

For largely the same reasons set forth in Guardant's briefing in support of its Motion to Dismiss PGDx's counterclaim of inequitable conduct with respect to the '992 Patent, FMI's counterclaim should also be dismissed. *See* D.I. 285, 315 (C.A. No. 17-cv-1623-LPS-CJB). PGDx has presented no additional arguments or evidence beyond what PGDx presented to justify proceeding with its infectious inequitable conduct counterclaim, which is "even more disfavored even more than charges of inequitable conduct." *Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 675 (D. Del. 2004), aff'd in part, vacated in part, remanded, 406 F.3d 1365 (Fed. Cir. 2005).

In fact, FMI's pleading includes allegations that negate any theory of infectious inequitable conduct and reveal the highly dubious nature of FMI's (and PGDx's) counterclaims. As PGDx's opposition makes clear, a major aspect of its infectious inequitable conduct theory is apparently the notion that all the Patents-in-Suit are entitled to the same September 2012 priority date. *See* D.I. 179 at 3-4. FMI refers to "priority" 22 times in its brief. *See* D.I. 179. Yet, while FMI asserts in its opposition that the '992 Patent is entitled to the same priority date as the other Patents-in-

1

Suit such that there is infectious inequitable conduct, its counterclaims say something different.

Specifically, FMI's pleading—upon which the viability of its counterclaims must be judged—says

that the '992 Patent is entitled only to a March 2014 priority date:

> 42. On March 5, **2014**, approximately fourteen months after Dr. Eltoukhy left Illumina and joined Guardant Health, ***Guardant filed provisional application no. 61/948,530, to which the '992 patent claims priority***. The '992 patent is the only patent for which Dr. Eltoukhy is a named inventor, and the only patent for which Dr. Eltoukhy testified he had made contributions.

D.I. 148 ¶ 42 (emphasis added); *see also id*. ¶ 39 (stating that the other patents-in-suit are entitled

to a September 2012 priority date).

FMI's assertion of a 2014 priority date for the '992 Patent in its pleading undermines its

infectious inequitable conduct theory in a major way.  In its 15-page opposition, FMI never

mentions its assertion of a 2014 priority date in its pleading, let alone cite evidence to truly

establish that the '992 Patent should be entitled to the same priority date as the other Patents-in-

Suit.  At most, FMI cites examples where Guardant has allegedly asserted otherwise, such as

generic forms submitted in the Patent Office and an inadvertent statement in an IPR filing.

FMI, however, knows very well that the listing of applications on the face of the patent is

not controlling when it comes to priority.  This is precisely why it served an interrogatory

specifically requesting identification of "the earliest priority date to which Guardant contends each

Asserted Claim is entitled."  D.I. 169 at Ex. 1, p. 6.  If priority for the claims of the '992 Patent

were governed simply by the listing of applications on the cover of a patent, why would FMI have

served this interrogatory?  Indeed, this is a regular issue in all patent litigation matters.  For

example, the Northern District of California's Patent Rules require disclosure by the patentee of

"the priority date to which each asserted claim allegedly is entitled" for precisely this reason.  Ex.

1 at L.R. 3-1(f) (N.D. Cal. Patent Local Rules).

While FMI complains about misnaming of inventors for the other Patents-in-Suit, it does not deny that the '992 Patent lists the proper inventors, including Dr. Eltoukhy.  A different inventorship group on the '992 Patent is unsurprising because it claims a different invention from the other Patents-in-Suit and derives its priority from an application that was filed roughly 16 months after the priority document for the other Patents-in-Suit.  The '992 Patent even includes as an inventor an individual (Dr. Stefanie Mortimer) who never worked at Illumina and was not employed by Guardant until long after the inequitable conduct alleged for the other Patents-in-Suit.  FMI has known this from the outset of the case.  Guardant's earliest interrogatory responses state only a March 2014 priority date.  And the substance of the claims and specification of the '992 Patent—which should be considered for the purposes of this motion—clearly establish the differences relative to the other Patents-in-Suit.  The notion that misnaming of inventors can infect the enforceability of later-filed patents that are directed to *different* inventions and that undisputedly include the right inventors betrays commonsense and is unsupported in law.

FMI's pleading includes no relevant allegations directed to the differences between the '992 Patent and the other Patents-in-Suit.  Ultimately, the sole case that FMI cites in support of its position is irrelevant because it includes as a key fact identity of priority among patents, which is undisputedly absent here.  Simply put, even if, as FMI contends, Guardant improperly failed to name Dr. Eltoukhy as an inventor on the other Patents-in-Suit in 2012, there is no "immediate and necessary" relationship between this alleged misconduct and the '992 Patent.  FMI fails to identify a single case where alleged inequitable conduct due to inventorship issues was found to infect any related patent—much less those with different priority applications.

Ultimately, FMI's infections unenforceability pleading is just as threadbare and legally defective as PGDx's pleading.  FMI fails to allege anything more than that the patents are related,

claim "highly similar concepts to the other asserted patents," and have a "near identical" specification.   D.I. 148 ¶ 56.   Alleging a mere relationship among patents and similar specifications, however, is insufficient to meet the strenuous "immediate and necessary relationship" standard required by the Federal Circuit.   If this sort of pleading were deemed sufficient to state a claim for infectious unenforceability, the "immediate and necessary relationship" requirement would be all but eviscerated in every case involving a continuation-in-part application.

FMI's infectious unenforceability counterclaim with respect to the '992 Patent should be dismissed.

## II.     THE '992 PATENT CANNOT SATISFY THE "IMMEDIATE AND NECESSARY RELATION" STANDARD

FMI appears to contend that there is an "immediate and necessary" relationship between the alleged inequitable conduct and the '992 Patent because it "shares a nearly identical specification with the asserted patents" and that the 2012 Application is listed on the cover of the '992 patent.   D.I. 179 at 10-11.

Such allegations, however, even if assumed to be true, merely establish that the patents-in-suit are related.   This is insufficient to state the "immediate and necessary" relationship required for infectious inequitable conduct.   *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CIV. 08-309-JJF-LPS, 2009 WL 4928024, at *9 (D. Del. Dec. 18, 2009), report and recommendation adopted, No. CIV. 08-309-JJF-LPS, 2010 WL 2990039 (D. Del. July 22, 2010) (Magistrate Judge Stark recommending dismissal of infectious unenforceability claims as failing to establish the required "immediate and necessary relation" standard where the "specifications are related and share some figures, that 'many of the claims of each patent include substantively the same limitations,' and that all three patents have been asserted against the same [] products.");

*Bone Care Int'l, LLC v. Pentech Pharm., Inc.*, No. 08-CV-1083, 2010 WL 1655455, at *3 (N.D. Ill. Apr. 23, 2010) (holding that the mere fact that patents are related "is not sufficient to invoke the infectious unenforceability").

Because FMI has done nothing more than plead a relationship among the Patents-in-Suit, its infections inequitable conduct allegations fail and should be dismissed. Moreover, as documented below, the '992 Patent has no meaningful relationship with the other Patents-in-Suit for the purposes of an "immediate and necessary relation" analysis, and there is no set of facts FMI can plead to justify proceeding with an infectious inequitable conduct claim.

**A.      The '992 Patent Is A Different Invention And Does Not Derive Priority From The Same Application As The Other Patents-in-Suit**

Although FMI argues that the Patents-in-Suit "are all directed to the same basic invention," this is a clear overstatement. D.I. 179 at 2. To the extent FMI alleges in its pleading that the "immediate and necessary relationship" required for infections unenforceability is present because the '992 Patent is entitled to the same priority date of the other Patents-in-Suit, such allegations are simply incorrect and FMI has not pled facts to plausibly support this allegation. As documented below, it is undisputed that the '992 Patent is directed to a ***different*** invention than the other Patents-in-Suit and that it ***is not*** entitled to the same priority date. Because FMI has not—indeed, cannot—plead around these facts, its entire theory of infectious inequitable conduct fails and should be dismissed.

The invention of the '992 Patent and all of its claims, unlike the other Patents-in-Suit, derive their priority from U.S. Provisional Application No. 61/948,530 ("2014 Application"), filed Mar. 5, 2014, over a year after Dr. Eltoukhy left Illumina and joined Guardant. Consistent with this, the '992 patent has two additional inventors (Drs. Stephanie Mortimer and Dr. Eltoukhy), one of whom never worked at Illumina. While the other three Patents-in-Suit all derive priority (and

thus written description support) from U.S. Provisional Application No. 61/696,734, filed Sep. 4, 2012 ("2012 Application") for each of the claims, the '992 Patent does not.

Due to particular limitations of the '992 Patent claims, they can only derive support from the later 2014 Application. Specifically, each of the claims of the '992 Patent requires ligation comprising "using more than 10× molar excess of the adaptors as compared to the cfDNA molecules, thereby generating tagged parent polynucleotides." D.I. 20-4 at claim 1 ('992 Patent). This concept was invented by Dr. Stephanie Mortimer in the late 2013 time frame, a point that FMI does not dispute. Accordingly, the "10× molar excess" limitation does not appear in—and has no support in—the 2012 Application. It appears only in the specification of the '992 Patent. *See id.* at 42:50-43:12 (describing the use of a molar excess of barcodes). FMI's claim of a "nearly identical specification" thus carries no weight here as the relevant differences between the specifications directly pertain to the 10× molar excess limitation discussed above.

Because the "10× molar excess" limitation was only disclosed and described in the 2014 Application, it would not have been possible for Guardant to file a patent application on this subject matter prior to 2014. From the earliest stages of the case, this has been Guardant's position, which FMI has never disputed. In fact, FMI's pleading confirms that that the '992 Patent is entitled only to a March 2014 priority date:

> 42. On March 5, **2014**, approximately fourteen months after Dr. Eltoukhy left Illumina and joined Guardant Health, ***Guardant filed provisional application no. 61/948,530, to which the '992 patent claims priority***. The '992 patent is the only patent for which Dr. Eltoukhy is a named inventor, and the only patent for which Dr. Eltoukhy testified he had made contributions.

D.I. 148 ¶ 42 (emphasis added); *see also id.* ¶ 39 (stating that the other Patents-in-Suit are entitled to a September 2012 priority date).

Consistent with this, FMI did not include any facts its pleading to address the differences

in the claims and specification of the '992 Patent relative to the other Patents-in-Suit, and it totally

ignored these differences in its opposition.  These differences, however, are precisely why the

invention of the '992 Patent cannot be considered the same as the rest of the Patents-in-Suit and

one of the many reasons why there is no "immediate and necessary" relationship required for

infectious unenforceability.  They should be considered in deciding this motion.  *See Pfizer, Inc.*

*v. Ranbaxy Labs., Ltd.,* 525 F. Supp. 2d 680, 684 (D. Del. 2007) ("[T]he Court may consider

'document[s] integral to or explicitly relied upon in the complaint' without converting the motion

to dismiss to a motion for summary judgment.").

It is noteworthy that FMI's opposition does not meaningfully deny that the '992 Patent is

entitled only to a March 2014 priority date.  Both unwilling and unable to state facts to plausibly

allege that the '992 Patent is entitled to a September 2012 priority date, FMI attempts to save its

infectious inequitable conduct allegation for the '992 Patent by elevating form over substance.

First, FMI makes much ado about the listing of the 2012 Application on the face of the

'992 Patent and in Application Data Sheets.  But this does not plausibly plead that the '992 Patent

is actually entitled to the same priority date as the other Patents-in-Suit.  For the claims of the '992

Patent to claim the benefit of the 2012 Application, there must be sufficient written description in

the 2012 Application.  *See Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918, 923 (Fed. Cir. 2019)

(holding that a priority claim to a provisional application requires that the provisional 'contain a

written description of the invention and the manner and process of making and using it, in such

full, clear, concise, and exact terms,' 35 U.S.C. § 112 ¶ 1, to enable an ordinarily skilled artisan to

practice the invention claimed in the non-provisional application.") (internal citations omitted).

As noted above, Guardant has made clear in its interrogatory responses that the '992 Patent does

not derive priority from the 2012 Application, a fact that FMI affirmatively **adopts** in its pleading. *See* D.I. 148 ¶ 42.

Additionally, FMI argues that Guardant somehow admitted in an IPR filing that the '992 Patent derives its priority from the 2012 Application. The statements by IPR counsel relied upon by FMI, however, reflect inadvertent error, something FMI undoubtedly knew as evidenced by the statements in its pleading (*see* D.I. 148 ¶¶ 39, 42) and by virtue of the unambiguous positions Guardant has taken with respect to the '992 Patent from the outset of this case. Guardant has already requested authorization from the PTAB to correct its mistake. Ex. 2 (July 1, 2019 email from Guardant to the PTAB).

Surprisingly, counsel for FMI opposed Guardant making this correction, even though it benefits in the IPR from a later priority date and it knows Guardant has been consistent in this case that the later priority date applies. *See* Ex. 2. FMI's allegation that a simple mistake that is being corrected is some kind of attorney wrongdoing is untoward. *See Astellas Pharma, Inc. v. Elizabeth Actavis LLC*, Case No. 16-905-JFB-CJB, Slip Op. at 20 (May 14, 2019 D. Del.) ("Too often in the current litigation landscape, it seems to the Court that it is precisely that concept—i.e., how serious it is to make an allegation of wrongdoing against a fellow member of the legal profession, a profession that rightly holds itself to a very high standard of integrity and ethics that is getting lost, all in the rush to win."). FMI's need to rely on an unpled extrinsic "fact" that it knows full-well is erroneous is simply further evidence that FMI has not plausibly plead infectious unenforceability.

**B.     There Is No "Immediate And Necessary" Relationship To Either Enforceability Or Prosecution**

In an attempt to salvage its pleading, FMI argues that Guardant applied the wrong "immediate and necessary relation" standard and that the immediate and necessary relation need

only be to "enforcement" of the patents-in-suit, not prosecution.  D.I. 308 at 13.  Whatever the

standard, FMI has not stated a viable infectious unenforceability claim.

As to enforcement, FMI only contends that the '992 Patent "share[s] a nearly identical

specification" with the other asserted patents, that the 2012 Application was identified on the cover

of the '992 patent, in some generic Application Data Sheets, and in Guardant's IPR filing, and

points to its Counterclaims at Paragraph 51.  D.I. 179 at 10-12; D.I. 148 ¶ 51.  Yet, as documented

above, the '992 Patent is a different invention that derives priority from a separate application.

Paragraph 51 only alleges that "Dr. Eltoukhy substantially contributed to the conception of the

inventions claimed in each of the asserted patents" and that "each of the asserted patents is

generally directed to a method for identifying tumor markers" by following a series of steps.  D.I.

148 ¶ 51.  This, however, is merely an assertion that Guardant committed inequitable conduct in

connection with the prosecution of the original patents (because Dr. Eltoukhy is actually listed on

the '992 Patent), and says nothing about the differences between the '992 Patent and the other

Patents-in-Suit.  FMI's theory of an "immediate and necessary" relationship based on enforcement

is so broad that it would encompass all continuation-in-part patents that happen to be asserted

alongside a patent tainted by inequitable conduct.  FMI cites no law supporting this limitless

approach.

As to an alleged "immediate and necessary" relationship based on prosecution, FMI relies

on nothing other than the priority claim listed on the face of the patent, generic application data

sheets, and Guardant's IPR filing, the latter of which is not even plead and is nothing more than

an inadvertent error. *See id*.  As documented above, however, the '992 Patent claims a different

invention than the other Patents-in-Suit.  It includes as an inventor not just Helmy Eltoukhy and

AmirAli Talasaz, but also a third Guardant scientist who never worked at Illumina.  The '992

Patent is simply not entitled to the same priority date as the other Patents-in-Suit, and FMI has neither meaningfully disputed this nor plead any facts to suggest otherwise.  There is thus no "immediate and necessary" relationship of any sort sufficient for infectious unenforceability.

## III.    FMI'S CITED AUTHORITY DOES NOT SUPPORTS ITS POSITION

FMI cites only a single inapposite case in support of its positions, *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379-LED-JDL, 2011 WL 13134896, at *8 (E.D. Tex. Dec. 13, 2011).  In that case, however, the related continuation-in-part claimed priority to the earlier patent for which the alleged inequitable conduct occurred.  The Court noted that "but for the inequitable conduct in procuring the [patent], [plaintiff] would be unable to claim priority to the [patent's] filing date."  No such situation exists here. The priority for the '992 Patent derives from the 2014 Application so even if the other Patents-in-Suit were invalid due to improper inventorship, the '992 Patent would still be held to be valid.

## IV.    CONCLUSION

For the reasons stated above, PGDx's counterclaim regarding inequitable conduct for the '992 Patent should be dismissed with prejudice and without further leave to amend.

Dated: July 19, 2019

Respectfully submitted,

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (to be admitted *pro hac vice*)
Derek Walter (to be admitted *pro hac vice*)
WEIL, GOTSHAL &MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Plaintiff Guardant Health, Inc.*