**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GUARDANT HEALTH, INC. | |
| Plaintiffs, | C.A. No. 17-cv-1616-LPS-CJB |
| v. | **JURY TRIAL DEMANDED** |
| FOUNDATION MEDICINE, INC., | |
| Defendant. | |

## GUARDANT'S MOTION TO DISMISS

## I.  NATURE AND STAGE OF THE PROCEEDING

Plaintiff Guardant Health, Inc. ("Guardant") filed its second amended complaint ("SAC")
against Foundation Medicine, Inc. ("FMI"), accusing FMI's ctDNA assays ("Accused Products")
of infringing U.S. Patent No. 9,598,731 (the "'731 Patent"), U.S. Patent No. 9,834,822 (the "'822
Patent"), U.S. Patent No. 9,840,743 (the "'743 Patent"), and U.S. Patent No. 9,902,992 (the "'992
Patent").  *See* D.I. 16.  On May 7, 2019, FMI filed its Second Amended Answer to the SAC,
asserting several counterclaims alleging unenforceability due to inequitable conduct.  *See* D.I. 148.
Guardant now moves to dismiss Count XII of FMI's counterclaims for unenforceability based on
inequitable conduct with respect to the '992 Patent.

## II.  SUMMARY OF ARGUMENT

According to FMI's counterclaims, "[e]ach of the asserted Guardant patents
is…unenforceable due to the inequitable conduct of Guardant's founders, Dr. Talasaz and Dr.
Eltoukhy, who conspired to mislead and defraud the United States Patent and Trademark Office
('USPTO') with respect to the inventorship of the claimed inventions. Specifically, Dr. Talasaz
and Dr. Eltoukhy intentionally failed to identify Dr. Eltoukhy as a named inventor of the

fundamental alleged inventions of the asserted patents despite his substantial contribution to those alleged inventions." D.I. 148 at 13.

While this theory has no merit with respect to any of the patents-in-suit, it is legally and factually inapplicable to the '992 Patent because Helmy Eltoukhy is already named as an inventor and has been named as an inventor from the outset. There is no dispute that the proper inventors are named on the '992 Patent. Further, whereas the other three patents-in-suit derive priority from an application filed in 2012, the priority for the '992 Patent is derived from a different application filed on March 5, 2014, more than a year after Dr. Eltoukhy left Illumina and became employed by Guardant. *See* Ex. 1 at 23–28 (Guardant's Response to Interrogatory No. 9). There is nothing in FMI's pleading justifying—either as a matter of law or logic—a claim of inequitable conduct based on failure to name the proper inventors when, in fact, the proper inventors are named. FMI's inequitable conduct counterclaim with respect to the '992 Patent should thus be dismissed.

## III.   LEGAL STANDARD

A court may dismiss a counterclaim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding whether to grant a motion to dismiss, the court must generally accept as true all well pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and while "detailed factual allegations," are not required, pleadings must provide more than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

Thus, for a complaint to survive a Rule 12(b)(6) motion, it must contain more than mere labels and conclusions and be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

## IV.  ARGUMENT

### A.  FMI's Inequitable Conduct Counterclaim Against The '992 Patent Should Be Dismissed Under Rule 12(b)(6) For Failure To State A Claim

FMI's inequitable conduct counterclaims with respect to the patents-in-suit are all based on the theory that Dr. Helmy Eltoukhy (Guardant's Chief Executive Officer and co-founder) and Dr. AmirAli Talasaz (Guardant's Chief Technology Officer and President) intentionally omitted Dr. Eltoukhy as an inventor in 2012.  Although this theory is without merit as to any of the patents-in-suit, FMI's allegations with respect to the '992 Patent specifically fail as a matter of law and logic and should be dismissed outright at the pleading stage.

Indeed, for the '992 Patent, Dr. Eltoukhy is specifically identified and remains identified correctly as an inventor—something on which both parties agree.  There can thus be no inequitable conduct with respect to the '992 Patent based on misnaming of inventors because it is undisputed that the right inventors are named.  FMI has pled no legal or logical relationship between the alleged misconduct with respect to the '822, '743, and '731 Patents and enforceability of the '992 Patent.  Thus, on their face, FMI's allegations with respect to the '992 Patent should be dismissed.

Attempting to nevertheless present a theory of inequitable conduct based on inventorship, FMI alleges that Dr. Eltoukhy's and Dr. Talasaz's supposed inequitable conduct during prosecution of the other three patents-in-suit somehow tainted the prosecution of the '992 Patent. D.I. 148 ¶ 74 ("Dr. Eltoukhy and Dr. Talasaz's inequitable conduct also directly relates to the '992 Patent.").  Even if FMI had a viable inequitable conduct claim against the other three patents—which they do not—this theory would still fail for multiple reasons.

While inequitable conduct during prosecution of one patent can taint the prosecution of other family members in limited circumstances, such infectious inequitable conduct only occurs where the *inequitable conduct* in prosecuting the original patent had an "immediate and necessary relation" to the prosecution of the other patent. *See Consol. Aluminum Corp. v. Foesco Int'l Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990); *see also Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 4 F. Supp. 2d 477, 493 (E.D. Va. 1998).

Here, FMI asserts that the '992 and '731, '822, and '743 patents are "substantially similar" (D.I. 148 ¶ 73) and that "Dr. Eltoukhy and Dr. Talasaz's inequitable conduct also directly relates to the '992 patent." D.I. 148 ¶ 74.

This is insufficient. FMI fails to note that the '992 Patent derives its priority from U.S. Provisional Application 61/948,530 filed on March 5, 2014 as opposed to the other three asserted patents which derive priority from U.S. Application No. 61/696,734 filed a year and a half earlier on September 4, 2012. Ex. 1 at 8–22, 23–28 (Guardant's Response to FMI Interrogatory No. 9). The '992 Patent priority application was filed well after Dr. Eltoukhy left Illumina and joined Guardant. Thus, there is not nearly as much of a relationship between the '992 Patent and the other patents-in-suit as FMI claims. More importantly, the fact that the priority date of the '992 Patent is long after Dr. Eltoukhy joined Guardant renders FMI's inventorship-based inequitable conduct theory totally irrelevant to the '992 Patent.

The only thing left of FMI's inequitable conduct theory for the '992 Patent, then, is its assertion that the patents are related by virtue of an overlapping specification. A relationship between patents for infectious unenforceability purposes, however, requires far more than a mere shared specification between the patents-in-suit. Rather, it requires a relationship between the alleged *inequitable conduct* and the prosecution of the patents-in-suit in question. *See Pharmacia*

*Corp. v. Par Pharm., Inc.*, 417 F.3d 1369, 1375 (Fed. Cir. 2005) (affirming holding that inequitable conduct did not extend to related patents where the "record shows no inequitable conduct during prosecution" of the patent itself); *see also Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 4 F. Supp. 2d 477, 493 (E.D. Va. 1998) ("Moreover, the alleged misconduct during the ***prosecution*** of the '204 patent is too remote from the patent-in-suit to be probative of SEL's plan, motive, intent and pattern and practice with regard to the '636 patent.") (emphasis added).

Courts have applied this "immediate and necessary relation" standard stringently, declining to find infectious unenforceability based on mere relatedness of the subject matter across related patents.  *See, e.g.*, *Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F.Supp.2d 1011, 1017 (N.D. Cal. 2004) ("The doctrines of infectious unenforceability and unclean hands have been developed to aid in determining whether an unconscionable act that occurs during the *prosecution* of one patent has an immediate and necessary relation to the equity sought in the *prosecution* of another patent.") (refusing to find infectious unenforceability as a matter of law based on similarity in subject matter); *Ormc Ormco Corp. v. Align Tech., Inc.*, No. CV 03-16 CAS ANX, 2009 WL 466070, at *6 (C.D. Cal. Feb. 23, 2009), at *6 (rejecting the defendant's argument that "the alleged misconduct related to '405 reissue is material, because the subject matter of the '405 patent and the '444 patent is similar."); *Chamberlain Group, Inc. v. Lear Corp.*, 756 F.Supp.2d 938, 972 ("Lear, however, offers little in the way of explanation or argument as to why the failure to disclose with respect to the '544 patent permeated the *prosecution* of the '123 and '056 patents.") (emphasis added).  The fact that the '992 Patent has a specification similar to the '731, '743, and '822 Patents' specifications and relies on earlier disclosed subject matter for written description support bears no relation to the alleged misnaming of inventors on the previously filed patents, especially given that priority derives from different applications.

FMI also argues that by "not naming Eltoukhy as an inventor on the '731, '822, and '743 Patents, Eltoukhy and Talasaz concealed that Eltoukhy also invented the fundamental ideas underlying the '992 Patent." D.I. 148 ¶ 74. This, however, does not speak to how the alleged inequitable conduct in prosecuting the '731, '822, and '743 Patents infected the prosecution of the '922 Patent. Accepting FMI's argument would amount to creating new rule of law that failure to disclose an inventor on one patent application would taint the prosecution of all later patents even if the inventorship was correct and priority for the later patents was derived from later applications. What's more, Eltoukhy is indisputably a named inventor to the '992 Patent—a point on which both parties agree. There is no statutory, regulatory, or common law requirement that an applicant must list **which claims** each inventor contributed to in a particular patent. Thus, it would be impossible for Eltoukhy and Talasaz to have concealed that Eltoukhy "invented the fundamental ideas underlying the '992 Patent."

Because FMI's vague allegations of the '992 Patent being related to the other patents-in-suit does not speak to the legally required "immediate and necessary relation" between the alleged misconduct during prosecution of the '742, '731, and '822 Patents, and the '992 Patent, FMI's claim that the '992 Patent is unenforceable thus fails as a matter of law.

### B.    FMI Should Not Be Given Further Leave to Amend

No set of facts or pleading can change the fact that Dr. Eltoukhy is listed as an inventor to the '992 Patent. There is thus no cognizable inequitable conduct theory that can render the '992 Patent unenforceable based on misnaming of inventors, and any attempts to cure would be futile such that FMI should not be given further leave to amend if the Court dismisses FMI's inequitable conduct theory with respect to the '992 Patent. *See, e.g.*, *Perlmutter v. Salton, Inc.*, C.A. No. 09-690-GMS, 2010 WL 3834040, at *5 (D. Del. Sept. 24, 2010), *aff'd sub nom. Perlmutter v. Russell*

*Hobbs, Inc.*, 450 F. App'x 161 (3d Cir. 2011) ("dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.").

While any further amendments to FMI's inventorship theory would be futile, the Court should also not permit FMI to amend its counterclaim to add any new theories of inequitable conduct with respect to the '992 Patent.  The fact discovery period has long since closed, the deadline for amendments to pleadings has passed, and expert reports are due shortly.  Other than its defective inventorship theory, FMI has not disclosed any other inequitable conduct theory with respect to the '992 Patent, and it would be highly prejudicial for FMI to be permitted to now add a new and previously undisclosed theory.

## V.      CONCLUSION

For the reasons stated above, FMI's counterclaim XII regarding inequitable conduct for the '992 Patent should be dismissed with prejudice and without further leave to amend.

 Dated: June 20, 2019                          Respectfully submitted,

                                               FARNAN LLP

                                               */s/ Michael J. Farnan*
                                               Brian E. Farnan (Bar No. 4089)
                                               Michael J. Farnan (Bar No. 5165)
                                               919 N. Market St., 12th Floor
                                               Wilmington, DE 19801
                                               Tel: (302) 777-0300
                                               Fax: (302) 777-0301
                                               bfarnan@farnanlaw.com
                                               mfarnan@farnanlaw.com

                                               Edward R. Reines (admitted *pro hac vice*)
                                               Derek Walter (admitted *pro hac vice*)
                                               WEIL, GOTSHAL &MANGES LLP
                                               201 Redwood Shores Parkway
                                               Redwood Shores, CA 94065
                                               (650) 802-3000

                                               *Attorneys for Plaintiff Guardant Health, Inc.*