IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GUARDANT HEALTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1616 (LPS) (CJB) |
| | ) | |
| FOUNDATION MEDICINE, INC., | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**FOUNDATION MEDICINE, INC.'S OPENING BRIEF
IN SUPPORT OF ITS RENEWED *DAUBERT* MOTION TO EXCLUDE
THE SUPPLEMENTAL OPINIONS OF STEPHEN L. BECKER
AND GREGORY COOPER REGARDING REASONABLE ROYALTY DAMAGES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jtigan@mnat.com

*Attorneys for Foundation Medicine, Inc.*

OF COUNSEL:

Eric J. Marandett
G. Mark Edgarton
Sophie F. Wang
Xing-Yin Ni
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

Original Filing Date: July 30, 2020
Redacted Filing Date: July 31, 2020

## TABLE OF CONTENTS

**Page(s)**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II. SUMMARY OF THE ARGUMENT ................................................................................. 1

III. STATEMENT OF FACTS .................................................................................................. 3

IV. ARGUMENT ....................................................................................................................... 3

    A. Applicable Standard .................................................................................................. 3

    B. Dr. Becker And Dr. Cooper's Supplemental Opinions Violate Legal Principles Of Apportionment And Should Be Excluded ......................................... 4

        1. Guardant's Experts Fail to Properly Account for Conventional Steps in Their Apportionment Analysis ......................................................... 4

        2. Guardant's Experts Improperly Assign Equal Value to Each Patented and Unpatented Feature ............................................................... 8

    C. Dr. Becker's Apportionment Factor Impermissibly Relies Exclusively On A Technical Expert And Provides No Supporting Economic Analysis ............... 10

V. CONCLUSION .................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .............................................................................................. passim

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*,
    No. C 11-05973, 2013 WL 4538210 (N.D. Cal. Aug. 22, 2013) ............................. 11

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
    No. 6:11-CV-00201, 2017 WL 1322550 (E.D. Tex. Mar. 29, 2017) .................... 9, 10

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) .................................................................................. 3

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*,
    879 F.3d 1332 (Fed. Cir. 2018) ........................................................................ passim

*Finjan, Inc. v. Blue Coat Sys.*,
    879 F.3d 1299 (Fed. Cir. 2018) ............................................................................. 2, 8

*Garretson v. Clark*,
    111 U.S. 120 (1884) ................................................................................................... 3

*Good Tech. Corp. v. MobileIron, Inc.*,
    No. 5:12-cv-05826, 2015 WL 4090431 (N.D. Cal. July 5, 2015) ............................. 9

*Kolcraft Enters. v. Chicco USA, Inc.*,
    No. 09 C 03339, 2018 WL 10772693 (N.D. Ill. July 16, 2018) ................................ 7

*Realtime Data, LLC v. Oracle Am., Inc.*,
    No. 6:16-CV-00088, 2017 U.S. Dist. LEXIS 187717 (E.D. Tex. Mar. 30,
    2017) ..................................................................................................... 8, 9, 10, 11

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ............................................................................. 3, 10

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*,
    No. 12-1013, 2015 WL 410342 (D. Del. Jan. 29, 2015) (Andrews, J.) ................ 9, 11

*Stragent, LLC v. Intel Corp.*,
    No. 6:11-cv-421, 2014 WL 1389304 (E.D. Tex. Mar. 6, 2014) ................................ 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) .................................................................................. 7

*VirnetX, Inc. v. Cisco Sys.*,
    767 F.3d 1308 (Fed. Cir. 2014) ........................................................................................3, 11

**Other Authorities**

Fed. R. Evid. 702 ............................................................................................................................3, 9

Case 1:17-cv-01616-LPS-CJB   Document 455   Filed 07/31/20   Page 4 of 16 PageID #: 25466

Defendant Foundation Medicine, Inc. ("FMI") respectfully moves to exclude the supplemental opinions of Plaintiff Guardant Health, Inc.'s ("Guardant") experts, Stephen L. Becker and Gregory Cooper, regarding reasonable royalty damages because their 50% apportionment factor remains wholly arbitrary and unreliable.

**I.      NATURE AND STAGE OF THE PROCEEDINGS**

On December 10, 2019, FMI filed a *Daubert* motion to exclude the original reasonable royalty opinions of Guardant's experts based on their failure to properly apportion reasonable royalty damages. The gravamen of that motion was that the royalty opinions of Guardant's experts were not supported by a reliable methodology or any discernible facts. *See* D.I. 301 at 3-6. Judge Burke issued a Report & Recommendation ("R&R") on April 22, 2020, finding that "[b]ecause no concrete tie to the specific 50% value is explained, Dr. Becker's and Dr. Cooper's opinions lack a sufficiently reliable methodology." D.I. 419 at 36. He thus recommended that the motion be granted, but nonetheless afforded Guardant an opportunity to address the deficiencies by serving supplemental expert reports. *Id.* On May 6, 2020, Guardant served supplemental expert reports from its damages expert, Dr. Becker, and its technical expert, Dr. Cooper, purporting to address the deficiencies. On June 5, 2020, FMI served rebuttal reports from its experts. After supplemental expert discovery concluded on the issue of apportionment, FMI moved for leave to file the present motion, to which Guardant did not object. Trial is scheduled for November 6, 2020.

**II.     SUMMARY OF THE ARGUMENT**

Judge Burke's R&R afforded Guardant's experts the opportunity to substantiate their opaque, "plucked out of thin air" royalty opinions. D.I. 419 at 36. Forced to do so, Guardant's experts have violated other well-settled apportionment principles in an apparent effort to arrive at the same result by a different route. Specifically, Dr. Becker and Dr. Cooper fail to properly

1

apportion the commercial value of the conventional steps in FMI's workflow as compared to the steps that Guardant asserts distinguish the method from what was known in the art and covered by its patents. Instead, Guardant's technical expert, Dr. Cooper, simply excludes what he concedes are conventional product features from his apportionment analysis, presenting no factual or quantifiable support that these features provide no commercial value to FMI's accused products. The Federal Circuit has consistently disallowed such an approach. *See, e.g.*, *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018). Guardant's experts' failure to abide by controlling authority for apportioning conventional steps is particularly unfounded where, as here, Guardant ignores altogether the traditional *Georgia Pacific* approach of identifying a royalty rate. Instead, Guardant applies the apportionment factor to FMI's profit margin in an effort to back into the same unsupported result that the Court has already excluded once. Further, with respect to the features he does include in his analysis, contrary to controlling authority, Dr. Cooper appears to arbitrarily assign equal value to each step in FMI's workflow, without assessing the relative commercial value of the steps he admits were well known in the art as compared with the steps he says distinguish Guardant's patented method from the prior art. Further, the supplemental report of Dr. Becker, Guardant's economics expert, still applies no economic analysis at all. Rather, Dr. Becker merely parrots Dr. Cooper's improper conclusion that a 50% apportionment is appropriate and asserts, without any supporting economic methodology or facts, that a royalty rate equal to 50% of FMI's profits is somehow appropriate. The supplemental opinions of Guardant's experts fail therefore under *Daubert* and the applicable law. They should be excluded.

**III.   STATEMENT OF FACTS**

A detailed description of the reasonable royalty opinions that FMI seeks to exclude are set forth in the Argument section below.

**IV.   ARGUMENT**

**A.   Applicable Standard**

Expert testimony is permitted at trial only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993). To meet the *Daubert* standard, an expert's opinion on reasonably royalty damages must be both (a) apportioned to the incremental value of the patented invention as compared to conventional features, and (b) based on reliable evidence. *See Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("The patentee [] must [] give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative . . ."); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("essential requirement" of a royalty analysis is that the "award must be based on the incremental value that the patented invention adds to the end product."). In conducting an apportionment analysis, an expert must "carefully tie proof of damages to the claimed invention's footprint in the market place." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (internal citations and quotations omitted); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Assessing the reliability of an expert's apportionment

methodology is an important part of the court's "gatekeeping obligation." *VirnetX*, 767 F.3d at 1328.

### B. Dr. Becker And Dr. Cooper's Supplemental Opinions Violate Legal Principles Of Apportionment And Should Be Excluded

Guardant does not dispute that apportionment is required in this case, nor that a proper apportionment must reflect the incremental benefit derived from the asserted claims. As Dr. Becker acknowledged in his opening report, a "reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." Ex. 1 (Excerpt of the Opening Expert Report of Stephen L. Becker, Ph.D.) at ¶200 (quoting *Ericsson*, 773 F.3d at 1226). Yet for the second time, Guardant's experts have failed to apportion value to each patented feature based on its relative importance to the commercial success of the accused product, in contravention of controlling Federal Circuit precedent.

#### 1. Guardant's Experts Fail to Properly Account for Conventional Steps in Their Apportionment Analysis

In his supplemental report, Dr. Cooper begins his technical analysis by arbitrarily breaking down FMI's workflow into 16[1] steps, mapping the limitations of certain of the asserted claims to 9 of those steps, and then concluding that 50% would therefore be a "conservative estimate" for apportionment. Ex. 4 (Supplemental Expert Report of Gregory Cooper, Ph.D.) at ¶24, pp. 5-8. Dr. Cooper's recitation of 16 workflow steps is not based on any internal documents or testimony from FMI. Instead, Dr. Cooper artificially dissects the high-level description of FMI's products presented by FMI's technical expert, Dr. Michael L. Metzker, into 16 separate steps. *See* Ex. 5 (Supplement to the Rebuttal Expert Report of Michael L. Metzker,

---

[1] Even Guardant's attempt to count the steps they claim are involved in the process is flawed and indicative of a lack of reliability. Curiously, paragraph 24 of Dr. Cooper's Supplemental Report (Ex. 4) counts 17 workflow steps, whereas the table Dr. Cooper provides identifies only 16 steps. Dr. Becker's Supplemental Report discusses Dr. Cooper's analysis as identifying 16 steps. Ex. 3 at ¶7.

Ph.D.) at ¶15.  To back into Guardant's previously excluded 50% apportionment, Dr. Cooper breaks down certain processes that Dr. Metzker described into multiple sub-steps.  On the other hand, Dr. Cooper deems other processes that in fact involve many sub-steps to be a single step. *See* Ex. 4 at ¶24, pp. 5-8; Ex. 5 at ¶15.  Dr. Cooper then presents the results of his analysis in a table that maps the asserted claim limitations to 9 of the 16 individual steps within his purported FMI workflow.  Ex. 4 at ¶24, pp. 5-8.

The Federal Circuit has held that a mere quantification of the steps that are allegedly covered by the claims is not the correct inquiry.  As Guardant itself asserted in its prior *Daubert* briefing, "a blind counting of component steps provides no meaningful information" where the expert has not articulated a method "to determine the relative importance of these steps."  D.I. 335 at 2.  Where, as here, "the claims recite both conventional elements and unconventional elements," a reliable apportionment methodology must "account for the relative value of the patentee's invention in comparison to the value of any conventional elements recited in the claim, standing alone."  *Exmark*, 879 F.3d at 1348 (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015)).  By asserting that 9 out of 16 steps "are recited by each of the independent claims" and concluding that 50% of FMI's success is therefore attributable to the asserted claims (Ex. 4 at ¶24, pp. 5-8), Dr. Cooper's initial analysis entirely fails, and indeed does not even attempt, to account for any steps within FMI's workflow that are conventional.  Even assuming his identification of the steps in FMI's workflow were accurate (which it is not, according to Dr. Metzker[2]), Dr. Cooper's initial analysis fails under the legal standard articulated by the Federal Circuit.  *See Exmark*, 879 F.3d at 1348.

---

[2]    *See generally* Ex. 5 (Supplement to the Rebuttal Expert Report of Michael L. Metzker, Ph.D.).

Next, Dr. Cooper appears to walk back from his previously excluded analysis by identifying certain "conventional elements" in FMI's workflow, but he again engages in what the Federal Circuit has held to be an improper inquiry. He opines that considering all 16 steps of the FMI workflow would be over-inclusive of the benefits achieved by FMI's products and therefore the 5 steps he considers "standard" and "well known" in the art should be *altogether removed* from the workflow and excluded as steps to which one should apportion value related to the patented invention. Ex. 4 at ¶25. Based on his improper elimination of 5 workflow steps, Dr. Cooper appears to conclude that 7 (rather than 9) out of 11[3] (rather than 16) steps are covered by the asserted claims, or 63% of the pared down workflow. *Id.* In so doing, Dr. Cooper provides no assessment of the relative commercial value that should be ascribed to the 5 steps in FMI's workflow that he contends are conventional, as compared with the steps that he says are covered by Guardant's patents and that, according to Dr. Cooper, distinguish the patented method from the prior art. Indeed, certain steps that he removes from the workflow are directly relevant to comprehensive genomic profiling (CGP), such as extracting cell-free DNA (Dr. Cooper's Step 2) and sequencing the capture library (Dr. Cooper's Step 9). *See* Ex. 4 at ¶24, pp. 5-6. Having acknowledged through his analysis that certain of the steps are "conventional elements" under *Exmark*, 879 F.3d at 1348, Dr. Cooper chooses to ignore the steps that are inconvenient for his analysis rather than determine their incremental value for purposes of determining apportionment.

Dr. Becker, Guardant's damages expert, in turn merely parrots Dr. Cooper's 50% apportionment conclusion, without offering any further economic opinions concerning the

---

[3] Confusingly, paragraph 25 of Dr. Cooper's report states that removing 5 steps ("steps 1-3, 9 and 10") would result in "twelve steps, seven of which are performed by the independent claims," but, in fact, removing these 5 steps from the 16 steps laid out in his table in paragraph 24 results in only 11 remaining steps. Ex. 4, ¶24-25, pp. 5-8.

incremental value of the standard and non-standard steps in FMI's workflow. *See* Ex. 3 (Supplemental Expert Report of Stephen L. Becker, Ph.D.) at ¶8 (quoting Ex. 4 at ¶25). Guardant's failure to abide by Federal Circuit precedent for apportionment is particularly unfounded in this case, where Dr. Becker has applied the flawed apportionment factor directly to FMI's anticipated incremental profit margins instead of a royalty rate or royalty base. Such an approach is rarely encountered and inherently difficult to substantiate. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (rejecting the assumption that 25% of the profit margin is a reasonable starting place for the royalty rate determination); *Kolcraft Enters. v. Chicco USA, Inc.*, No. 09 C 03339, 2018 WL 10772693, at *3-4 (N.D. Ill. July 16, 2018) (excluding reasonable royalty opinion where expert applied a 1/3 apportionment factor to incremental profits and observing that "the one-third number might have been picked out of a hat"). Although Guardant's experts discuss "the value added by the patented features in abstract terms," they do not "explain how those advantages translate to the [] apportionment number [they] chose." *Kolcraft*, 2018 WL 10772693, at *3.

Guardant's experts present no factual or quantifiable support for their conclusion that the "conventional steps" provide no commercial value to FMI's accused products. On the contrary, Dr. Cooper offers the conflicting opinion that "the entire workflow performed by FMI's FoundationACT and FoundationOne Liquid assays contributes to FMI's success." Ex. 4 at ¶25. Like the expert in *Exmark*, Dr. Cooper has "acknowledged that other elements of the [accused product] affect sales and profits," but "failed to conduct any analysis indicating the degree to which these considerations impact the market value or profitability of the [accused product]." 879 F.3d at 1350. As in *Exmark*, Dr. Cooper's unsupported conclusion that certain workflow steps "do not affect the value of the accused [product] amounts to nothing more than

7

speculation." *Id.* Where, as here, the "proposed royalty rate lacked sufficient ties to the facts of the case," it is inadmissible evidence and should be excluded. *Id.* at 1350-51.

In sum, entirely eliminating steps from the workflow as Dr. Cooper has done is contrary to the applicable legal principles, which require apportioning value to each workflow step based on its relative importance to the commercial success of the accused product. *See Exmark*, 879 F.3d at 1348; *Finjan*, 879 F.3d at 1311 (finding that apportionment must "reflect the value of the patented technology compared to the value of unpatented elements"); *Realtime Data, LLC v. Oracle Am., Inc.*, No. 6:16-CV-00088 RWS-JDL, 2017 U.S. Dist. LEXIS 187717, at *17 (E.D. Tex. Mar. 30, 2017) ("a damages analysis must take into account the incremental benefit conferred by the non-conventional elements of a patent claim taken as a whole."). Applying Dr. Cooper's flawed approach of simply removing the steps that he claims are routine and conventional would result in a 100% apportionment every time. Such a result, of course, is nonsensical and contrary to Federal Circuit precedent.

### 2. Guardant's Experts Improperly Assign Equal Value to Each Patented and Unpatented Feature

The apportionment methodology employed by Guardant's experts is also improper because, with respect to the steps of FMI's workflow that Dr. Cooper does include, he and Dr. Becker appear to simply assign equal value to each of their sixteen steps. Indeed, Dr. Becker assumes a 50% apportionment factor based solely on Dr. Cooper's opinion that 9 out of 16 steps (56%) of FMI's workflow are covered by the patents-in-suit and that "[a]ccordingly, 50% is a conservative estimate of the portion of FMI's success that is attributed to the asserted claims." Ex. 4 at ¶24, pp. 5-8; Ex. 3 at ¶¶7, 10. Thus, in reaching a 50% apportionment factor, Guardant's experts simply assume that each of the 16 steps identified by Dr. Cooper as part of FMI's

8

workflow should be given equal value.[4]  However, Guardant's experts provide "no analysis of what weight to assign to what feature" and "no investigation into whether any [step] is more important than others, or how strongly each [step] is tied to the patents." *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 WL 4090431, at *7 (N.D. Cal. July 5, 2015) (excluding royalty scenarios that assigned equal value to each product feature); *see also Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 1389304, at *3-4 (E.D. Tex. Mar. 6, 2014) (criticizing the experts' attribution of equal value to all product features as "not based on any theory that meets the *Daubert* criteria of verifiability" and relying on "arbitrary assumptions that have no basis in the facts of this case"); *Realtime Data*, 2017 U.S. Dist. LEXIS 187717, at *19 n.2 (concluding that the expert failed to "adequately explain why each of his identified 'features' should be entitled to equal weight"); *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, No. 12-1013-RGA, 2015 WL 410342, at *2-3 (D. Del. Jan. 29, 2015) (Andrews, J.) (excluding the damages expert's reasonable royalty opinion because it gave each feature equal weight and "provided no basis for how he determined which features 'related to' the patent.").

The court's exclusion of an apportionment opinion in *Eidos Display, LLC v. Chi Mei Innolux Corp.*, highlights the fatal deficiencies of Drs. Becker's and Cooper's opinions. No. 6:11-CV-00201-JRG, 2017 WL 1322550 (E.D. Tex. Mar. 29, 2017). Like Guardant's experts here, the damages expert in *Eidos* reached an apportionment factor of 10% by simply dividing the single step to which he attributed value by the 10 total steps. *Id.* at *5-6. Citing the requirements of Rule 702, the court concluded that this approach was "arbitrary . . . without any

---

[4]  Among these 16 steps, for example, is isolating plasma from a patient sample, which was undisputedly routine and known by 2012.  However, Guardant ascribes equal value to this step and non-unique tagging, which Dr. Cooper has claimed in his prior opinions is a point of novelty over the prior art. *See, e.g.*, Ex. 2 (Excerpt of the Expert Rebuttal Report of Gregory Cooper, Ph.D.) at ¶¶128-134, 156-157 (arguing that certain prior art references do not teach non-unique tagging).

9

connection to the economic demand for the claimed technology." *Id.* at *6. Moreover, the court held that "all ten steps cannot be of equal value, when [the expert] devotes his [primary apportionment] analysis to discounting nine of the steps as 'conventional' or already known in the art, and assigns the only value of the patented technology to the G8 step." *Id.*

Here, Dr. Cooper contends that certain FMI workflow steps are "standard," "well known," and allegedly not covered by the patents-in-suit. Ex. 4 at ¶25. But he makes no attempt to assign any relative commercial value to these steps; instead he gets to 50% apportionment by merely assuming, without support, that each step should be assigned equal value. Dr. Becker then accepts Dr. Cooper's conclusion and adds no economic support.

Thus, Guardant's experts fail to satisfy the legal requirement that apportionment must be supported by "sound economic reasoning" that assesses the relative "economic demand for the claimed technology." *Exmark*, 879 F.3d at 1350; *ResQNet.com*, 594 F.3d at 872-73. Absent such a showing, the 50% apportionment factor adopted by Guardant's experts is arbitrary and without economic basis.

### C. Dr. Becker's Apportionment Factor Impermissibly Relies Exclusively On A Technical Expert And Provides No Supporting Economic Analysis

Dr. Becker's apportionment opinion should be excluded for the further reason that he relies exclusively on the opinions of Dr. Cooper, a technical expert, and provides no supporting economic analysis. As in his initial reports, Dr. Becker merely parrots Dr. Cooper's conclusions: "From this review of Dr. Cooper's analysis and opinion I conclude that an apportionment factor that credits the Patents-in-Suit with 50% of the success of FMI's CGP liquid biopsy products is reasonable." Ex. 3 at ¶11. His approach is legally insufficient.

In *Realtime Data LLC v. Oracle Am., Inc.*, the Eastern District of Texas held that the technical expert's "opinions about the incremental benefit conferred by the patented features of

10

the accused products . . . may be an input into the damages expert's opinion about the proper apportionment value, but may not be the final apportionment value itself." 2017 U.S. Dist. LEXIS 187717, at *15. Dr. Becker's errors here are two-fold, because (1) Dr. Cooper failed to properly analyze the incremental benefit attributable to the patented features, and (2) Dr. Becker himself failed to apply any further economic principle or methodology to determine the proper apportionment value. *See id.*; *Sprint*, 2015 WL 410342, at *2-3 (excluding damages expert's reasonable royalty opinion that relied solely on technical expert's counting of functions).

Moreover, the circumstances presented here are very different from other cases involving a reasonable royalty determination based on a 50/50 split of incremental profits where the damages expert at least offered supporting economic principles. *See, e.g.*, *VirnetX*, 767 F.3d at 1331-34 (invoking Nash Bargaining Solution theorem). Here, in contrast, Guardant's economics expert presents no economic analysis at all. The only "commercial evidence" Dr. Becker purports to present is a statement that the purported failure of liquid biopsy companies that are *not* accused of infringing the patents-in-suit to "achieve any meaningful commercial success" is "consistent with Dr. Cooper's opinion that the Patents-in-Suit are responsible for 50% or more of the success of FMI's accused products." Ex. 3 at ¶10. Dr. Becker's opinions are speculative and lack any factual or economic reasoning, and are thus inadmissible. *See VirnetX*, 767 F.3d at 1334 (vacating damages reward where "the suggestion that [incremental] profits be split on a 50/50 basis . . . is insufficiently tied to the facts of the case, and cannot be supported"); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C 11-05973 PSG, 2013 WL 4538210, at *4-5 (N.D. Cal. Aug. 22, 2013) (excluding royalty opinion based on a 50/50 profit split that had no economic basis).

For these additional reasons, Dr. Becker's conclusory opinion, based entirely on Dr. Cooper's flawed analysis, should be excluded. *See Sprint*, 2015 WL 410342, at *2-3; *Realtime*, 2017 U.S. Dist. LEXIS 187717, at *15.

## V. CONCLUSION

For the foregoing reasons, Dr. Becker's reasonably royalty opinion and the opinions of Dr. Cooper on which he relies should be excluded in their entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Jeremy A. Tigan*

Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jtigan@mnat.com

OF COUNSEL:

Eric J. Marandett
G. Mark Edgarton
Sophie F. Wang
Diane Seol
John C. Calhoun
Xing-Yin Ni
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

*Attorneys for Foundation Medicine, Inc.*

July 30, 2020