# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GUARDANT HEALTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 17-1616-LPS-CJB |
| | ) | |
| v. | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| FOUNDATION MEDICINE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## FOUNDATION MEDICINE, INC.'S OPENING BRIEF IN SUPPORT OF
## ITS MOTION FOR SANCTIONS BASED ON SPOLIATION OF EVIDENCE

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jtigan@mnat.com

OF COUNSEL:

*Attorneys for Foundation Medicine, Inc.*

Eric J. Marandett
G. Mark Edgarton
Sophie F. Wang
Diane Seol
John C. Calhoun
Xing-Yin Ni
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

**Original Filing Date: September 24, 2020**
**Redacted Filing Date: October 5, 2020**

## TABLE OF CONTENTS

I.   NATURE & STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 2

    A.   FMI's Inequitable Conduct Counterclaim and Inventorship Defenses Concern Drs. Eltoukhy and Talasaz's Actions in 2012 and 2013 ......................... 2

    B.   Drs. Eltoukhy and Talasaz's Sworn Testimony Is Contradicted By Documents From The Key Time Period ................................................................. 3

    C.   Between July and November 2019, Guardant Concealed the Spoliation ............... 4

    D.   Guardant Finally Admits to Deletion of Evidence ................................................. 6

    E.   The Remaining Bodiless Emails Are Likely To Contain Relevant Information ........................................................................................................... 7

    F.   Forensic Analysis Reveals A Second Round of Deletions Just Before Dr. Eltoukhy's Laptop Was Imaged For FMI's Forensic Expert ......................... 8

III. LEGAL STANDARD ......................................................................................... 9

IV.  ARGUMENT ................................................................................................... 10

    A.   Guardant Should Be Sanctioned For Its Spoliation of Relevant Discovery ........................................................................................................... 10

        1.   Guardant Destroyed Documents in Bad Faith ........................................ 11

        2.   Guardant's Spoliation Greatly and Irrevocably Prejudices FMI .............. 15

        3.   The Court Should Declare the Patents Unenforceable and Invalid and Grant FMI Fees and Costs, Punitive Sanctions, and Other Relief ............................................................................................. 17

V.   CONCLUSION ................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bull v. United Parcel Serv., Inc.*,
  665 F.3d 68 (3d Cir. 2012)..................................................................................11

*GE Harris Railway Elecs. LLC v. Westinghouse Air Brake Co.*,
  2004 WL 5702740 (D. Del. Mar. 29, 2004) ......................................11, 12, 17, 20

*GN Netcom, Inc. v. Plantronics, Inc.*,
  2016 WL 3792833 (D. Del. July 12, 2016) ................................................ *passim*

*GN Netcom, Inc. v. Plantronics, Inc.*,
  930 F.3d 76 (3d Cir. 2019)..........................................................................9, 10, 20

*Greatbatch Ltd v. AVX Corp.*,
  179 F. Supp. 3d 370 (2016) .................................................................................11

*Liafall, Inc. v. Leaning 2000*,
  2002 WL 31954396 (D. Del. Dec. 2002).............................................................15

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
  886 F. Supp. 2d 466 (D. Del. 2012).................................................................9, 20

*Micron Tech., Inc. v. Rambus, Inc.*,
  917 F. Supp. 2d 300 (D. Del. 2013) .......................................................... *passim*

*Positran Mfg., Inc. v. Diebold, Inc.*,
  2003 WL 21104954 (D. Del. May 15, 2003)............................................ *passim*

*In re Quintis Corp.*,
  2007 WL 4233665 (D. Del. Nov. 29, 2007) ........................................................17

*Schmid v. Milwaukee Elec. Tool Corp.*,
  13 F.3d 76 (3d Cir. 1994) ...............................................................10, 15, 17, 19

*Estate of Spear v. Comm'r*,
  41 F.3d 103 (3d Cir. 1994)...................................................................................16

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011).............................................................................15

*Wagner v. Sea Esta Motel I*,
  2014 WL 4247731 (D. Del. Aug. 26, 2014) .....................................................9, 10

*In re Wechsler*,
121 F. Supp. 2d 404 (D. Del. 2000)...........................................................................17, 18, 19

**Other Authorities**

FRCP 37(e) .......................................................................................................................9

Foundation Medicine, Inc. ("FMI") submits this brief in support of its Motion for Sanctions Based on Spoliation of Evidence by Plaintiff, Guardant Health, Inc. ("Guardant").

## I.    NATURE & STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT

Guardant's co-founder and CEO, Dr. Helmy Eltoukhy, intentionally and selectively deleted critical evidence after his April 2019 deposition made it clear that such evidence was relevant to – and supportive of – FMI's inequitable conduct and inventorship defenses.  Dr. Eltoukhy admits he fully understood that he was legally obligated to preserve such evidence, and he destroyed it anyway.  This egregious misconduct was uncovered only after (a) Guardant produced numerous "bodiless" emails without relevant content, *i.e.*, emails that were missing *all* text other than the date/to/from/cc/subject line, and (b) Guardant admitted that obtaining the original emails directly from Eltoukhy's email account was a lost cause.[1]  Guardant's counsel learned of Dr. Eltoukhy's misconduct by no later than July 8, 2019, but concealed it from FMI until November 3, 2019.  Had Guardant disclosed these facts earlier, it is possible that additional measures could have been taken to recover the emails.  Moreover, a second purge of documents occurred days before Eltoukhy's laptop was imaged for forensic examination by FMI. In a December 10, 2019 Order granting FMI, among other things, a supplemental deposition of Dr. Eltoukhy to explore the deletion of evidence, Judge Burke stated:

> It is clear that Dr. Eltoukhy's deletion of these emails (some of which relate to, inter alia, Defendant[']s inequitable conduct counterclaims), came after Dr. Eltoukhy was asked about the emails at a deposition; moreover, the deletion efforts were not the result of attorney advice or consultation and were in contravention of document preservation instructions that had been provided in these cases.

D.I. 289.[2]

---

[1]  Personal Genome Diagnostics, Inc. ("PGDx") – the defendant in a related case that recently settled with Guardant – and its counsel participated in most of the communications and events described herein.  For simplicity, this motion refers only to FMI and/or its counsel.
[2]  Unless otherwise noted, all docket citations are to C.A. No. 17-1616-LPS-CJB.

Guardant did not make Dr. Eltoukhy available for his court-ordered second deposition until last Friday, September 18, 2020, despite FMI's repeated requests (*see* D.I. 393; D.I. 394; D.I. 465; Exs. 40-45), before which time FMI could not file this motion.  FMI also completed a forensic examination of Dr. Eltoukhy's laptop and an archive file that contained the bodiless emails, the results of which are described herein and in the Declaration of Sergio D. Kopelev ("Kopelev Decl.") filed herewith.  Notwithstanding substantial efforts to recover the deleted evidence, there remain nearly 300 bodiless emails from a key time period, the content of which has been lost forever.  It is also unclear what additional relevant evidence was destroyed and, therefore, is unavailable to FMI.  Based on the undue prejudice caused by Guardant's willful and bad faith conduct, FMI requests that the Court enter judgment that Guardant's patents are unenforceable and invalid for improper inventorship and award monetary sanctions.  In the alternative, FMI requests that the Court grant FMI an adverse inference instruction as to the deleted evidence, monetary sanctions, access to Guardant's privileged communications regarding spoliation, and the ability to offer expert testimony at trial.

## II.   STATEMENT OF FACTS

### A.   FMI's Inequitable Conduct Counterclaim and Inventorship Defenses Concern Drs. Eltoukhy and Talasaz's Actions in 2012 and 2013

FMI's inequitable conduct and inventorship defenses assert that Dr. Eltoukhy, while still employed at Illumina, Inc. ("Illumina"), substantially contributed to the conception of the alleged inventions of the asserted patents, aided in part by confidential documents he misappropriated from Illumina.  D.I. 168, Counterclaims ¶¶ 20-75.  Discovery revealed that Guardant intentionally omitted naming Dr. Eltoukhy as an inventor of its patents to avoid any ownership claim by Illumina based on his contractual obligation to assign inventions to Illumina.  *Id*., ¶¶ 58, 69-73.  Guardant has admitted to having over 51,000 Illumina documents in its possession that Dr. Eltoukhy took

from Illumina before he resigned from the company in January 2013.  Ex. 33, 28:23-25.  Many of these Illumina documents were marked confidential and had been sent from Dr. Eltoukhy's Illumina email address, through his personal Gmail account, to Guardant's co-founder, president, and the named inventor on the asserted patents, Dr. AmirAli Talasaz, in 2012 while Eltoukhy was still an Illumina employee. Illumina has confirmed "that neither Guardant Health nor Dr. Eltoukhy should have been in possession of those confidential Illumina documents."  D.I. 184, at 1.  In denying Guardant's motion for summary judgment on FMI's inequitable conduct allegations, Judge Burke concluded that the facts were "easily sufficient" to create a triable issue.  D.I. 419, at 11.

### B.   Drs. Eltoukhy and Talasaz's Sworn Testimony Is Contradicted By Documents From The Key Time Period

Dr. Eltoukhy testified in his first deposition that he was merely an "advisor" and an "investor" in Guardant with "no official capacity."  Ex. 27, 197:3-198:22.  However, emails from 2011-2012 show that Dr. Eltoukhy contributed significantly to Guardant's technology and inventions.  One of the critical events took place in June 2012, when Dr. Eltoukhy was still an Illumina employee and Dr. Talasaz had just left Illumina for Guardant.  D.I. 168, Counterclaims ¶¶ 31-35.  Dr. Eltoukhy used his Illumina email account to ask an Illumina director, Dr. Frank Steemers, to send Dr. Eltoukhy an improved sequencing error correction presentation.  *Id*., ¶ 31. Dr. Steemers then provided several confidential Illumina slides disclosing material elements of Guardant's asserted claims.  *Id*., ¶ 32-33.  Two minutes later, Dr. Eltoukhy forwarded the email to his personal Gmail account, which he used to conduct Guardant business while working for Illumina.  *Id*., ¶ 35.  This was done shortly before the alleged July 2012 conception date identified by Guardant.  *Id*., ¶ 36.

Guardant initially maintained that Dr. Eltoukhy never shared the "Steemers emails" with

Dr. Talasaz.  *See* Ex. 32, at 15; Ex. 34, ¶ 429.  During his first deposition in April 2019, Dr. Eltoukhy was questioned about the Steemers emails and other confidential Illumina documents in Guardant's possession, which evidenced his contributions to Guardant in its early stages.  Dr. Eltoukhy testified that he did not recall sharing the Steemers emails with "anyone outside of Illumina" or forwarding them "to anyone at any time."  Ex. 27, 310:20-311:7.  Dr. Eltoukhy suggested that he had forwarded the emails to his Gmail account to review while "traveling."  *Id*. at 318:3-20.  Dr. Talasaz testified that he had never seen the Steemers emails.  Ex. 29, 182:6-183:4; Ex. 30, 576:10-578:2.

### C.     Between July and November 2019, Guardant Concealed the Spoliation

After the April 2019 deposition, FMI served discovery requests targeting Dr. Eltoukhy's Gmail account and communications between Drs. Eltoukhy and Talasaz from the key time period before the patents' alleged July 2012 conception date, and before Dr. Eltoukhy's departure from Illumina in January 2013.  Ex. 28, at 9-12.  Guardant refused to produce any documents, requiring a motion to compel.  *See* D.I. 178.  By no later than July 8, 2019, Guardant's counsel became aware of the document destruction.  Ex. 35, at 8-9.  On August 7, 2019, Judge Burke granted the motion to compel, ordering the parties to agree on search terms for a subset of approximately 5,000 pre-2013 emails that Guardant had collected but not yet produced.  D.I. 191.  At that time, Guardant did not disclose to the Court or FMI that it had already discovered, on July 8, 2019, that Dr. Eltoukhy had intentionally "*deleted older files containing messages and [all] messages from his personal gmail account prior to 2014 from both the Google servers and his laptop*" after his deposition.  Ex. 35, at 8-9.

Throughout August and September 2019, the parties conferred about appropriate search terms and discovery of Dr. Eltoukhy's Gmail account, and FMI expressed concern about Guardant's preservation and collection of emails from Dr. Eltoukhy's Gmail account.  *See*, *e.g*.,

Ex. 35, at 18-19, 25, 30, 42-43, 50, 65.  Although Guardant knew by then that Dr. Eltoukhy had deleted all of his pre-2014 emails, Guardant called FMI's concerns "unwarranted fears" and became increasingly combative.  *See id.* at 20, 30 ("[FMI's questions] seem more like irascible demands than questions"); *id.* at 18 (calling FMI's concerns "snide innuendo" making "it tough to want to cooperate").  The reason for Guardant's behavior became clear when it finally produced some of the requested documents.

In response to the Court's Order, Guardant finally produced several "smoking gun" emails from Dr. Eltoukhy's personal Gmail account which contradicted his and Dr. Talasaz's prior sworn testimony.  *See, e.g.*, Exs. 14, 16.  Contrary to Guardant's prior denials, the evidence previously withheld by Guardant showed that Dr. Eltoukhy was deeply involved in the day-to-day activities of Guardant prior to his departure from Illumina, including its technology development. *See, e.g.*, Ex. 26 ████████████████████████████████████████████████████████████
████████████████[3]  Importantly, the evidence further contradicted Dr. Eltoukhy's testimony that he didn't send the Steemers emails to anyone; instead, showing that he sent the Steemers emails from his Gmail account to Talasaz's Gmail account on the *same day* that he requested and received them, and again the *next day*, having requested additional slides from Dr. Steemers.[4]  *Compare* Ex. 14, *with* Ex. 15; *compare* Ex. 16, *with* Ex. 17.[5]  Guardant's production also included several hundred bodiless emails that Guardant only later revealed came from an ████████████████

---

[3] The evidence also showed that Michael Wiley, Drs. Eltoukhy and Talasaz's co-founder, helped them conceal their activities from Illumina by warning them to stay "away" from the Guardant premises when an Illumina representative was scheduled to visit.  Ex. 19.

[4]  Guardant also asserted that Dr. Talasaz no longer has a copy of the emails, but still has not explained when, how or why Dr. Talasaz's emails were deleted.  Ex. 35, at 1, 3-6.

[5]  Only after Dr. Eltoukhy was confronted with the documents at his supplemental deposition, did he finally admit that he did in fact forward these slides to Dr. Talasaz.  *See* Ex. 38, 954:7-959:12; Exs. 12, 17.

███████     *See* Exs. 14, 16; *see also* Ex. 35, at 16-18; D.I. 280, at 2.

### D.     Guardant Finally Admits to Deletion of Evidence

Following Guardant's initial production of certain critical, contradictory evidence from Dr. Eltoukhy's Gmail account, FMI immediately asked Guardant to produce emails directly from the founders' personal Google accounts.  Ex. 35, at 18-19, 20-21.  On November 3, 2019, after many additional communications and repeated evasive responses and attempts by Guardant to deflect FMI's inquiries, Guardant finally admitted that it could not produce the emails because Dr. Eltoukhy had taken the extraordinary step of ***deleting every single pre-2014 email*** from his personal Gmail account on both his computer ***and*** Google's server after his April 2019 deposition. *Id*. at 9.  Incredibly, Dr. Eltoukhy did so *after* he was confronted with the Steemers emails and other documents at his deposition, after admitting that he understood the critical nature of those emails and other Illumina documents from the key pre-2013 time period, and at a time when he admits that he knew he was under an obligation to preserve documents.  *Id*.; *see also* Ex. 38, 781:17-783:17.  Guardant's claim that Dr. Eltoukhy deleted his emails "[w]ith the understanding that these files and messages had previously been collected and preserved as part of this litigation" is contradicted by Dr. Eltoukhy's admission at his initial deposition in April 2019 that he *did not know* whether his emails had been searched.  Ex. 27, 319:11-16.  Moreover, as Judge Burke explained and as Dr. Eltoukhy himself has now confirmed, Dr. Eltoukhy never confirmed with counsel whether his Gmails had been collected before he destroyed them.  Ex. 38, 795:18-796:3, 781:17-783:17; Ex. 35, at 5; D.I. 289.  Finally, Dr. Eltoukhy has now testified that he destroyed the evidence because he did not want to possess the "sensitive information" that he was confronted with at his first deposition, further demonstrating that he knew the evidence was both highly relevant and harmful to Guardant's case.  Ex. 38, 789:13-790:3; *see also* D.I. 286, at 2.

E.     **The Remaining Bodiless Emails Are Likely To Contain Relevant Information**

FMI sought to recover Dr. Eltoukhy's deleted Gmails directly from Google. However, Google had no documents to produce by the time that Guardant finally revealed the destruction of evidence because deleted Gmails are only recoverable for a limited time. *See* Ex. 39.

After FMI kept pressing the issue, on December 6, 2019, Guardant produced complete versions of some, but not all, of the bodiless emails it located from another source. These documents confirmed that Dr. Eltoukhy did indeed send the Steemers email to Talasaz in June 2012. *See supra*, n.5; *see also* Exs. 12, 17. The documents further showed that Dr. Eltoukhy was, in fact, deeply involved with Guardant while still an Illumina employee, including by contributing to the conception of Guardant's claimed inventions prior to Guardant's alleged July 2012 conception date. *See*, *e.g.*, Exs. 5, 7, 10, 20, 24. Guardant, however, was unable to produce hundreds of other bodiless emails. Kopelev Decl., Ex. 4; *see also* Ex. 37, at 1 ("Guardant has completed its production."). Some of these emails included indisputably relevant subject lines and dates.[6] Other emails with seemingly immaterial subject lines may have also included relevant content; indeed, many emails produced in this case with innocuous subject lines have contained highly relevant information.[7] For some of the remaining bodiless emails, the subject lines match those of highly relevant emails that have been produced with full bodies but for which but the time stamps do not match, meaning they are likely to contain additional relevant content and cannot be discounted as merely duplicative.[8] Dr. Eltoukhy could not say what the content of the emails may

---

[6]  *See*, *e.g.*, Ex. 2 (subject line: "███████████████████"); Ex. 6 (subject line: "Fwd: Forming a New Corp"); Ex. 21 (subject line: "██████████"); Ex. 22 (subject line: "█████████████████"); Ex. 23 (subject line: "██████████████"); Ex. 13 (subject line: "Guardant Health values"); Ex. 25 (subject line: "████████████").

[7]  *See* Ex. 9 (subject line: "Re: Updates"); Ex. 10 (subject line: "Fwd: Follow up"); Ex. 11 (subject line: "Re: Fwd:"); Ex. 18 (subject line: "Re: to do list"); Ex. 20 (subject line: "Re: Hi").

[8]  *See*, *e.g.*, Ex. 2 (subject line: "████████████████"); Ex. 3 (subject line: "███████████████████████"); Kopelev Decl., Ex. 4, entry no. 12 (GUARDFM00932881,

be.  Ex. 38, 907:5-908:13; 909:6-910:21; 925:16-927:11; *see also* Exs. 2; 6.

> **F.      Forensic Analysis Reveals A Second Round of Deletions Just Before Dr.
> Eltoukhy's Laptop Was Imaged For FMI's Forensic Expert**

After the Court required Guardant to provide images of Dr. Eltoukhy's laptop (*see* D.I.

289), Guardant provided FMI's forensic expert, Stroz Friedberg, with an image of Dr. Eltoukhy's

laptop (the "Laptop") and ███████████████████████████████████, collectively with

the Laptop, the "Examined Media").  Kopelev Decl., ¶ 10.  FMI's expert was not able to (1) recover

the full content of the nearly 300 bodiless emails or (2) determine how soon after the April 2019

deposition Dr. Eltoukhy deleted all of his pre-2014 emails.  As explained below and in the Kopelev

Declaration, an analysis of the Laptop revealed additional suspicious activity, including the

deletion of evidence that occurred in the days immediately before the Laptop was imaged for

FMI's expert:

- On October 7, 2019, Guardant agreed to FMI's proposed process for the court-ordered forensic investigation.
- The next day, October 8, 2019, between 8:35 p.m. and 8:37 p.m., Dr. Eltoukhy, or someone acting on his behalf, logged into Dr. Eltoukhy's Gmail, accessed the ██████ section of the ██████ (email export) function, and accessed the ██████ ██████ page.  *Id.* at ¶ 19.  Between 8:38 p.m. and 9:20 p.m., the following files and folders were deleted from the Laptop, each of which contained an ██████ file that appeared to be emails gathered in a July 2019 search: ██████ ██████████████████████████████████████████.  *Id.* at ¶ 28. Between 8:51 p.m. and 9:06 p.m., the ██████ application was accessed and the "deleted files" folder was accessed twice.  *Id.* at ¶ 20.  Dr. Eltoukhy or someone acting on his behalf continued accessing Gmail between 9:03 p.m. and 10:24 p.m.  *Id.* at ¶ 21.
- Two days later, on October 10, 2019, Dr. Eltoukhy, or someone acting on his behalf, logged into Gmail and accessed the "trash" folder five times (as well as "Google Photos").  *Id.* at ¶ 22.
- The next day, October 11, 2019, Dr. Eltoukhy or someone acting on his behalf, deleted 389 files and folders between 9:11 a.m. and 11:02 a.m. (*Id.* at ¶ 29), and at 11:03 a.m., emptied the trash can.  *Id.* at ¶ 30.
- On October 16, 2019, at approximately 8:49 a.m., Dr. Eltoukhy, or someone acting on his behalf, emptied the trash can again.  *Id.* at ¶ 32.  Later that day, the Laptop was

---

subject line: "██████████████████████████"); Ex. 4 (subject line: "████████████████

███████").

forensically imaged, and on January 15, 2020, the Laptop image was provided to FMI's expert for examination.

The file names of some of the deleted documents indicate that they relate to Guardant and other potentially relevant issues in this case.[9]   At his deposition last week, Dr. Eltoukhy did not deny deleting evidence between October 7 and 16, 2019, but instead claimed he could not recall. Ex. 38, 994:22-997:9; 999:8-1000:18; 1002:22-1005:3.  He also claimed not to recall whether his Laptop was out of his possession during this time period.  *Id.*, 995:19-996:21; 1003:19-1005:3. However, the forensic analysis confirms that multiple, highly suspicious deletions took place immediately before the Laptop was imaged for FMI's expert.

## III.   <u>LEGAL STANDARD</u>

"Under Rule 37 of the Federal Rules of Civil Procedure, a district court may sanction a party that destroys electronically stored information 'with the intent to deprive another party of the information's use in the litigation.'"  *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting FRCP 37(e)).  "The court may presume the information was unfavorable to the infracting party, instruct the jury that it may or must presume the information was unfavorable, or dismiss the action."  *Id*.  "Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480 (D. Del. 2012).  Spoliation arises if "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party."  *Wagner*

---

[9] *See* Kopelev Decl., Ex. 3 (listing deleted files such as ███████████████████████, █████████████████, ██████████, and ████████████████████████████).

*v. Sea Esta Motel I*, 2014 WL 4247731 at *1 (D. Del. Aug. 26, 2014).  Parties who breach the duty to preserve by destroying evidence may be sanctioned by the Court.  *Id*.

IV.   **ARGUMENT**

   A.   **Guardant Should Be Sanctioned For Its Spoliation of Relevant Discovery**

   Dr. Eltoukhy admittedly deleted *all* of his pre-2014 emails from both his computer and personal Gmail account after a litigation hold had been put in place, at a time when he knew he had to preserve his documents, and after deposition questioning which revealed to him that emails from this time period were incriminating evidence of misappropriation from Illumina and fraud on the Patent Office.  Because Guardant's CEO was successful in destroying evidence, it is impossible to know the full extent of the loss of relevant evidence caused by Dr. Eltoukhy's conduct.  However, the limited evidence that Guardant has been able to produce from this time period, including the subject lines of several of the remaining nearly 300 bodiless emails, indicate that the deleted documents are likely highly relevant to FMI's inequitable conduct and inventorship defenses.

   Because spoliation has occurred, the analysis "turns to the determination of the appropriate sanction using the *Schmid* factors."  *Wagner*, 2014 WL 4247731 at *1 (discussing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).  Under *Schmid*, the three factors the Court considers in determining whether to impose a sanction for spoliation are: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."  *Schmid*, 13 F.3d at 79; *see Wagner*, 2014 WL 4247731 at *1; *GN Netcom*, 930 F.3d at 82.  As discussed below, each factor supports FMI's requested sanction.

### 1.    Guardant Destroyed Documents in Bad Faith

"The first *Schmid* factor is the degree of fault of the spoliating party." *Micron Tech., Inc. v. Rambus, Inc.*, 917 F. Supp. 2d 300, 323 (D. Del. 2013). Guardant's "destruction of discoverable documents for the purpose of gaining an advantage in litigation reveals a high degree of fault." *Id.* (finding bad faith document destruction in a patent case, dismissing the case, and holding the patents unenforceable). The evidence shows that Guardant did so in bad faith, which "is pivotal to a spoliation determination." *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833 at *5 (D. Del. July 12, 2016) (quoting *Bull v. United Parcel Serv., Inc.,* 665 F.3d 68, 79 (3d Cir. 2012)). Guardant's "bad faith intent speaks to [its] degree of fault." *GE Harris Railway Elecs. LLC v. Westinghouse Air Brake Co.,* 2004 WL 5702740 at *11 (D. Del. Mar. 29, 2004). "To make a determination of bad faith, the court must find that the spoliating party intended to impair the ability of the potential defendant to defend itself." *Greatbatch Ltd v. AVX Corp.*, 179 F. Supp. 3d 370, 380 (2016) (internal quotations and citation omitted). Such facts are present here.

There are multiple grounds for finding bad faith. First, Dr. Eltoukhy admits that he was aware of his obligation to preserve documents, yet he intentionally destroyed all of his pre-2014 emails without consulting anyone about such conduct. *Supra* pp. 1, 5-6. He also understood that the emails he deleted were from a key time period in the case – during his employment at Illumina – and that the broad swath of emails he deleted included incriminating information that would both contradict Guardant's deposition testimony and support FMI's theories in the case. *Id.* Indeed, Dr. Eltoukhy testified that he intentionally deleted evidence because he did not want to be in possession of the "sensitive information" he was asked about at his first deposition. *Supra* p. 6. Such facts are similar to *Positran Mfg., Inc. v. Diebold, Inc.*, where the court found that the evidence showed an "extreme degree of fault" where a witness destroyed evidence, "not before litigation ensued, but rather, months after" the complaint was filed and document requests were

served." 2003 WL 21104954 at *3 (D. Del. May 15, 2003).  Similarly, in *GE Harris Railway Elecs.*, an executive understood his preservation obligations, but nonetheless deleted his computer files when he became aware they might be relevant.  2004 WL 5702740 at *4.  The court noted that the executive "did not consult with anyone when he destroyed documents" and found a high "degree of fault" that weighed "heavily in favor of imposing a serious sanction."  *Id*.  Here, the spoliation was deliberate and conducted by Guardant's apex executive.

"On these facts, [Guardant] cannot credibly claim that [Dr. Eltoukhy] was unaware of his obligations."  *Positran Mfg.,* 2003 WL 21104954 at *3.  The timing and scope of Dr. Eltoukhy's deletion strongly supports a conclusion of bad faith.  *See GN Netcom*, 2016 WL 3792833 at *7 (deletion "one month after [the] lawsuit was filed" "strongly suggests an intent to deprive GN of discovery.").  Dr. Eltoukhy selectively deleted all of his pre-2014 his emails (a) when he knew of his obligation to preserve evidence, (b) *years* into the litigation, after FMI served document requests, and (c) after his deposition, at which detailed deposition questioning about documents from this time period confirmed the relevance of such documents, and he testified that he did not know if his Gmails had been collected.  *Supra* pp. 1, 4-6.  All of these facts support the conclusion that Dr. Eltoukhy attempted to "destroy all the unfavorable documents and/or retain all the favorable documents" for the litigation.  *See Micron Tech.*, 917 F. Supp. 2d at 317 (finding spoliation was carried out in bad faith).

Second, to ensure that none of his deleted emails could be recovered, Dr. Eltoukhy "double deleted emails" by moving relevant emails to the trash, emptying the trash, and by deleting emails from both his Laptop and from the Google server.  This "support[s] the Court's conclusion that [the] deletion of his own emails was undertaken to deprive" FMI of discovery.  *GN Netcom*, 2016 WL 3792833 at *7 (inferring bad faith from double deletion).

Third, Dr. Eltoukhy has repeatedly given false testimony about his extensive involvement at Guardant prior to departing Illumina.  Ex. 27, 197:3-198:6 (testifying he was merely an "advisor" and an "investor" in Guardant with "no official capacity"); Ex. 31, at 2 (stating in a sworn declaration that "my relationship as a member of the Board of Directors, an advisor and one of the largest investors was that of a corporate agent and fiduciary of Guardant."); *see also Guardant Health, Inc. v. Personal Genome Diagnostics, Inc.*, C.A. No. 17-1623-LPS-CJB, D.I. 261 (granting additional discovery regarding Dr. Eltoukhy's involvement with Guardant in 2012 because of the contradictory statements made in his deposition and subsequent declaration).  A court may infer bad faith from false testimony, where the false testimony shows an intent to hide impropriety regarding document retention.  *See Micron Tech.*, 917 F. Supp. 2d at 318 (bad faith supported by witnesses' "false testimony on several subjects" related to the retention of documents); *Positran Mfg.*, 2003 WL 21104954 at *3 (bad faith supported by witness's contradictory testimony regarding the destruction of his handwritten notes).  Dr. Eltoukhy's deletion of evidence was an attempt to prevent FMI and this Court from discovering the existence and extent of his false testimony.

Fourth, Dr. Eltoukhy attempted to conceal his conduct from his own attorneys.  *See Micron Tech.*, 917 F. Supp. 2d at 318 (bad faith shown by failure to "inform outside counsel" of the destruction of documents "or the scope of document destruction").  He admitted at the supplemental deposition that he made no effort to confer with counsel before deleting all of his pre-2014 Gmails.  Ex. 38, 795:18-796:3.  He claims the deletions occurred between two and four weeks after his April 2019 deposition (*see id.*, 792:19-793:12), two months before his attorneys attempted to collect his Gmails on July 8, 2019.  *Id.*, 792:22-793:4.

- 13 -

Fifth, even upon learning that the documents were missing, Guardant's counsel failed to immediately inform FMI of this misconduct, and instead spent months misleading and trying to deter FMI from pressing the issue, even calling FMI's preservation concerns "unwarranted fears." *See* Ex. 35, at 18, 20, 30.  Guardant's actions significantly delayed and inhibited FMI's ability to recover the emails from Google and/or through its expert's examination of Dr. Eltoukhy's Laptop. *See GN Netcom*, 2016 WL 3792833, at *8 (bad faith shown by outside counsel's failure to be candid with opposing party's counsel regarding facts of spoliation).  Indeed, as in *GN Netcom*, Guardant repeatedly engaged in "obfuscation and misrepresentations related to [Dr. Eltoukhy's] email deletion and its investigation of it," which further supports that Guardant acted "in bad faith, intending to impair the ability of the other side to effectively litigate its case."  *Id.* at *8 (internal quotations and citations omitted).  Additionally, Guardant's counsel refused to answer all of FMI's questions about the deletions and instead repeatedly told FMI that it would have to ask Dr. Eltoukhy himself.  Ex. 36, 27:16-19, 29:6-12.  Yet, Guardant repeatedly delayed that deposition, even after the parties agreed it would proceed remotely, resulting in the necessity for a stipulation setting a firm deposition date.  D.I. 465.  And, when Guardant finally made Dr. Eltoukhy available, he refused to acknowledge his misconduct, and provided evasive answers to crucial questions, citing his selective memory regarding the events of April and May of 2019.  *See* Ex. 38, 781:17-801:3; *see also GN Netcom*, 2016 WL 3792833 at *8 (bad faith shown where executive who deleted emails "repeatedly refused to acknowledge his misconduct").  Further, in response to the evidence that additional documents were deleted in October 2019, Dr. Eltoukhy was unable to confirm whether he deleted additional documents even after he was aware of the dispute caused by his deletion of his pre-2014 emails earlier in 2019.  Ex. 38, 994:22-997:9; 999:8-1000:18; 1002:22-1005:3.

### 2.   Guardant's Spoliation Greatly and Irrevocably Prejudices FMI

The second *Schmid* factor considers the degree of prejudice suffered by the opposing party.
*Schmid*, 13 F.3d at 79.  "A finding of prejudice requires a party to 'come forward with plausible,
concrete suggestions as to what the lost evidence might have been' and a showing that its loss
'materially affect[ed]' the substantial rights of the adverse party and is prejudicial to the
presentation of the case." *GN Netcom*, 2016 WL 3792833 at *6.  The "question of prejudice turns
largely on whether a spoliating party destroyed evidence in bad faith." *Id.* (quoting *Micron Tech.*,
917 F. Supp. 2d at 319).  Where, as here, evidence was destroyed in bad faith, "the burden shifts
to the spoliating party to show lack of prejudice.  A bad faith spoliator carries a heavy burden to
show lack of prejudice because [a] party who is guilty of intentionally [destroying] documents . .
. should not easily be able to excuse the misconduct by claiming that the vanished documents were
of minimal import." *Id.* (quoting *Micron Tech.*, 917 F. Supp. 2d at 319).

Guardant cannot meet its heavy burden here because Dr. Eltoukhy specifically targeted and
destroyed – from the very source most likely to contain relevant information – emails in the time
period most likely to be relevant to FMI's inequitable conduct and inventorship counterclaims and
defenses, namely that Dr. Eltoukhy hid and had motivation to hide his inventive contributions from
his employer Illumina and the Patent Office.   Dr. Eltoukhy's "scienter [is] at issue in this
litigation," an issue to which the deleted documents would have been highly probative. *See Liafall,
Inc. v. Leaning 2000*, 2002 WL 31954396 at *4 (D. Del. Dec. 2002); *Therasense, Inc. v. Becton,
Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (specific intent to deceive the Patent Office
is a requirement of inequitable conduct).  "[Guardant's] spoliation precluded [FMI] from possibly
obtaining evidence of" Dr. Eltoukhy substantially contributing to the conception of the alleged
inventions of the asserted patents based on his own contributions and, in part, on confidential
documents misappropriated from Illumina, while he was still employed by Illumina. *See Micron*

*Tech.*, 917 F. Supp. 2d at 323. Indeed, the subject matter of the emails is suggested, in part, by the subject matter of other deleted emails that were recovered, which show, for example, Dr. Eltoukhy's stealing of Illumina confidential information and his role in the conception of the purported inventions claimed in the asserted patents. *See GN Netcom*, 2016 WL 3792833 at *9 (inferring subject matter of lost emails based on subject matter of other deleted emails that were recovered). "While the precise degree of prejudice cannot be known" because Guardant destroyed the documents, Guardant "should not easily be able to excuse its misconduct by claiming that the vanished documents were of minimal import." *Micron Tech.*, 917 F. Supp. 2d at 324. "[B]ecause [FMI] has no means of determining what [the missing evidence] described, the prejudice to [FMI] is not insignificant." *Positran Mfg.*, 2003 WL 21104954 at *4.

Guardant cannot show that FMI's ability to access the deleted emails and evidence "cannot even '*plausibly* be thought likely to affect the outcome of the trial.'" *GN Netcom*, 2016 WL 3792833 at *11 (emphasis in original) (quoting *Estate of Spear v. Comm'r*, 41 F.3d 103, 115 (3d Cir. 1994)). "As [Guardant's] spoliation precluded [FMI] from possibly obtaining evidence of [inequitable] conduct, . . . [Guardant] has not satisfied its heavy burden of showing that its destruction of internal documents would not prejudice [FMI's] defense of inequitable conduct." *Micron Tech.*, 917 F. Supp. 2d at 323. "Again, the fact that no record was made of what documents were destroyed can be of no avail to [Guardant], the bad faith actor. As a result, the court [should find] . . . that [Guardant's] spoliation may have prejudiced [FMI's] inequitable conduct claim[s]." *Id*.

Although Guardant did recover some of the deleted emails, "this would only eliminate prejudice to [FMI] if it resulted in the production of all of [Dr. Eltoukhy's] responsive deleted emails." *GN Netcom*, 2016 WL 3792833 at *10. Guardant cannot "assume[] without any evidence

that the content" of the recovered emails is fully "representative of the content of all of [Dr. Eltoukhy's] unrecoverable and responsive deleted emails." *Id.* Guardant may also contend that the subject lines of the bodiless emails suggest they are irrelevant. But the recovered emails demonstrate that the content of the emails is often far more relevant than would be suggested by the subject line.[10] For example, Ex. 8 has the subject line: "Re: Merry Christmas!!" but discusses highly relevant subject matter, such as Guardant's work on ███████████ .

### 3. The Court Should Declare the Patents Unenforceable and Invalid and Grant FMI Fees and Costs, Punitive Sanctions, and Other Relief

The third and final *Schmid* factor considers whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Schmid*, 13 F.3d at 79.

Based on Guardant's willful spoliation of evidence, FMI requests that the Court enter judgment declaring the patents-in-suit unenforceable and invalid due to improper inventorship. This request is consistent with precedent addressing the intentional deletion of relevant evidence and is particularly warranted here, where Guardant's most senior executive has admitted to intentionally destroying volumes of relevant emails – after his deposition – from a critical time period in contravention of a litigation hold. *See, e.g.*, *Micron Tech.*, 917 F. Supp. 2d at 323 ("the only appropriate sanction is to hold the patents-in-suit unenforceable"); *In re Quintis Corp.*, 2007 WL 4233665 at *3 (D. Del. Nov. 29, 2007) (entering judgment as sanction for spoliation); *In re Wechsler*, 121 F. Supp. 2d 404, 430 (D. Del. 2000) (entering finding of liability); *GE Harris*, 2004 WL 5702740 at *3 ("Evidence warranting a finding of bad faith may support the drastic sanction of preclusion of evidence that could result in the entry of judgment against the spoliating party."). In *Micron*, the court held the patents unenforceable based on bad faith in the thorough document

---

[10] *See supra*, note 7.

destruction and prejudice to the inequitable conduct defense. *Micron Tech.,* 917 F. Supp. 2d at 322-23, 327-28.   In addition, FMI requests monetary sanctions in the form of fees and costs incurred by FMI in connection with these disputes, and punitive sanctions in the amount of $6,000,000. *See GN Netcom,* 2016 WL 3792833 at *14 (awarding attorneys' fees and costs, as well as punitive sanctions of $3,000,000); *In re Wechsler*, 121 F. Supp. 2d at 430 (entering finding of liability).

There is no lesser sanction that will avoid substantial unfairness and deter future conduct by others.  "Attorney fees or a monetary sanction, when used alone" are "relatively mild sanctions, disproportionate to the degree of fault and prejudice" when a party destroys evidence.  *Micron Tech.*, 917 F. Supp. 2d at 325.  "[N]either would compensate [FMI] for the irretrievable loss of evidence that may be dispositive to the case."  *Id.*  Moreover, "[a]s primarily a remedial sanction, adverse jury instructions are appropriately used in cases where a party's spoliation was not done in bad faith and where the degree of prejudice is low."  *Id.* at 326.  "Where, as here, [Guardant's] spoliation was not only extensive, but there is no record of exactly what documents were destroyed, [FMI] would be helpless to rebut anything that [Guardant] might use to try to overcome the adverse presumption."  *Id.* (internal citations omitted).  In contrast, a "dispositive sanction ensures that [FMI's] interests are protected, as [FMI] will not find itself in the position of litigating on an unfair playing field."  *Id.* at 327.  Further, "a dispositive sanction serves as an effective deterrent to future misconduct of this severity, which will in turn advance the ability of the court to decide cases on the merits."  *Id.* at 328.  It is well established that "[w]hen the destruction is willful or in bad faith and intended to prevent the other side from examining the evidence, the court may impose the most severe sanction of them all—the outright dismissal of a claim or the entry of a default judgment."  *Positran Mfg.*, 2003 WL 21104954, at *2.   As confirmed at Dr. Eltoukhy's

supplemental deposition, FMI has no way of knowing what additional relevant information the unrecovered, and now unrecoverable, documents contained. *See supra* at p. 14 (citing Ex. 38, 907:5-908:13; 909:6-910:21; 925:16-927:11).

Dr. Eltoukhy is the CEO of a publicly-traded company, a sophisticated patent holder, and a serial entrepreneur, who was well aware of the pending litigation that he and Guardant filed and the importance of the destroyed documents. *See supra* at p. 11. Dr. Eltoukhy and Guardant have not been forthright in acknowledging their wrongdoing. *GN Netcom*, 2016 WL 3792833 at *13 (spoliator created "difficulties" for opposing party in "getting to the bottom of the deletion story"). If Guardant is permitted to escape the consequences of Dr. Eltoukhy's actions, Guardant would unfairly receive an enormous windfall that inevitably would encourage such conduct in the future. *Id.* (unpunished spoliators could receive "potential windfall"); *Micron Tech.*, 917 F. Supp. 2d at 328 ("Any lesser sanction would, in effect, reward [Guardant] for the gamble it took by spoliating and tempt others to do the same."). In such circumstances, "a sanction of adverse jury instructions would be ineffective as a remedy, punishment, or deterrent." *Micron Tech.*, 917 F. Supp. 2d at 326. In contrast, "[i]mposing a dispositive sanction for this type of conduct punishes the wrongdoer for the severity of its culpable conduct, and serves to put the public on notice that this type of behavior will be punished severely. As a result, the ruling should serve to discourage similar misconduct in the future." *In re Wechsler,* 121 F. Supp. 2d at 429; *see also Micron Tech.*, 917 F. Supp. 2d at 327-28.

For these reasons, there is no lesser sanction that would be appropriate under the *Schmid* factors. However, in the event the Court disagrees, FMI requests that the Court presume the deleted information was unfavorable and grant an adverse inference instruction to the jury advising the jury of the destruction and directing them to infer that the deleted documents would have shown

Dr. Eltoukhy's inventive contributions and his motivation to hide them. FMI also requests monetary sanctions in the form of fees and costs incurred by FMI in connection with these disputes, and punitive sanctions in the amount of $6,000,000. *See GE Harris*, 2004 WL 5702740 at *5 (finding a severe punishment was warranted, but concluding that adverse inference was appropriate because spoliators were forthright in acknowledging wrongdoing and reconstructing missing evidence).

Should the Court not grant a dispositive sanction, FMI should be permitted to present expert forensics testimony at trial, to the extent FMI determines that such testimony is necessary. *GN Netcom*, 930 F.3d at 86-88 (reversing decision to exclude expert testimony regarding spoliation at trial where adverse instruction was given and explaining that "spoliation-related evidence clears the baseline relevance hurdle of Rules 401 and 402"). Withholding such evidence could "deprive[] the jury of the ability to make an informed decision about the adverse inference." *Id*. at 86. Moreover, the risk of any "unfair" prejudice from such testimony is small, particularly since the adverse instructions would already "alert[] the jury to the willingness of [a Guardant] executive[] to destroy . . . relevant evidence." *Id*. at 88. In addition, Guardant should be ordered to produce its hold letter and its attorney-client communications regarding Dr. Eltoukhy's spoliation. "[T]here has been a growing trend among courts to find the attorney-client privilege is lost when spoliation has occurred." *Magnetar Techs.*, 886 F. Supp. 2d at 482. Guardant should not be permitted to argue its good faith in preserving documents at trial while withholding the very communications that would rebut those arguments.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, FMI seeks the relief requested in the proposed order.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jtigan@mnat.com

*Attorneys for Foundation Medicine, Inc.*

OF COUNSEL:

Eric J. Marandett
G. Mark Edgarton
Sophie F. Wang
Diane Seol
John C. Calhoun
Xing-Yin Ni
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

September 24, 2020