IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GUARDANT HEALTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1616 (LPS) (CJB) |
| | ) | |
| FOUNDATION MEDICINE, INC., | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

### DECLARATION AND EXPERT REPORT OF SERGIO D. KOPELEV IN SUPPORT OF FOUNDATION MEDICINE, INC'S MOTION FOR SANCTIONS BASED ON SPOLIATION OF EVIDENCE

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jtigan@mnat.com

OF COUNSEL:

*Attorneys for Foundation Medicine, Inc.*

Eric J. Marandett
G. Mark Edgarton
Sophie F. Wang
Diane Seol
John C. Calhoun
Xing-Yin Ni
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
(617) 248-5000

**Original Filing Date: September 24, 2020**
**Redacted Filing Date: October 5, 2020**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUARDANT HEALTH, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 17-cv-1616-LPS-CJB ) |
| FOUNDATION MEDICINE, INC., | ) ) |
| Defendant. | ) ) ) |

## DECLARATION AND EXPERT REPORT OF SERGIO D. KOPELEV IN SUPPORT OF FOUNDATION MEDICINE, INC'S MOTION FOR SANCTIONS BASED ON SPOLIATION OF EVIDENCE

I, Sergio D. Kopelev, hereby declare:

1. I am currently employed by Stroz Friedberg, Inc., an Aon Company ("Stroz Friedberg"). My current title is Vice President.

2. I am over the age of eighteen and suffer no mental or physical disabilities that would render me incompetent to testify in this matter. I have knowledge of the facts set forth herein, and if called to testify as a witness, could do so competently.

3. I have been retained in the above-captioned case by counsel for Defendant Foundation Medicine, Inc. ("FMI") to provide my expert analysis, opinions, and conclusions regarding Stroz Friedberg's forensic examination of the computer media described below. I submit this declaration in support of FMI's Motion for Sanctions Based on Spoliation of Evidence.

**A. Qualifications and Experience.**

4. I have been involved in the field of Computer Forensics since 1997. Since that time, I have received over 700 hours of specialized training and education in the forensic examination of digital evidence and computer media. I have extensive experience in the forensic examination of digital evidence and computer media and have performed or supervised over 1,000 computer forensic examinations, including e-discovery work conducted in connection with civil litigation, financial restatements and government investigations.

5. I routinely assist clients through the successful management of large-scale electronic discovery and computer forensics projects. I am a frequent lecturer and writer on the topic of computer forensics and electronic discovery, and have published articles in the Los Angeles Daily Journal, the Nevada Lawyer, as well as the Law Enforcement Technology magazine. I have also been interviewed on CNN, National Public Radio, and by the Los Angeles Times as an industry expert in computer forensics, and have provided testimony and offered expert reports in jurisdictions across the United States.

6. Prior to joining Stroz Friedberg, I was a Senior Director at Consilio, LLC and Huron Legal. Prior to that, I was a principal with LECG, as well as a senior manager, director and regional practice leader with Deloitte and KPMG accounting firms. Prior to entering the private sector, I worked for 8 years in law enforcement, culminating with the rank of sergeant with the Bedford County, Virginia, Sheriff's Department, where I organized and supervised a multi-agency Internet crimes taskforce called "Operation Blue Ridge Thunder."

7. I am a summa cum laude graduate of the University of Massachusetts (Boston) with a Bachelor of Arts degree from the College of Public and Community Service. Additionally, I have previously received the following professional computer forensics certifications:

EnCase Certified Examiner (EnCE), Certified PDA Examiner (CPDAE), Certified Forensic Computer Examiner (CFCE), and Certified Electronic Evidence Collection Specialist (CEECS).

8. My hourly rate for this matter, and the rate of members of my team who assisted me, is $525 per hour. My compensation, and my team's compensation, does not depend in any way on the outcome of this litigation or FMI's spoliation motion.

9. My complete CV is attached as Exhibit 1.

### B. Materials Considered

10. In forming the opinions expressed herein, I have studied, reviewed and/or relied on:

   a. A Toshiba MQ04ABF100 hard drive, Serial# Y934PMC3T, containing an image of a MacBook Pro laptop (the "Laptop") used by Dr. Helmy Eltoukhy, the Chief Executive Office of Guardant Health, Inc. ("Guardant"), and an Outlook for Mac Archive File, titled Archive.olm ("Archive File"), which Stroz Friedberg received on January 15, 2020.

   b. Based on a review of the MacBook acquisition log, it appears that the hard drive from the Laptop was forensically imaged on October 16, 2019 by "W. Ng" using Blackbag's Macquisition forensic imaging tool.

   c. After the forensic images were received by Stroz Friedberg, a detailed chain of custody was created for the original drive acquired from the third-party. In addition, a working copy of each image was made, and the original was retained in secure evidence storage.

-3-

        d.  A meta-data listing for 298 emails that were produced by the Plaintiffs that are missing all text other than the date/to/from/cc/subject line.

**C. Analysis Requested.**

11.    I understand from FMI's counsel that Dr. Eltoukhy admitted to deleting certain emails and other electronically stored information from his computer on certain occasions in 2019.

12.    I understand from FMI's counsel that, based on information disclosed by Guardant, Dr. Eltoukhy deleted all of his pre-2014 emails from his personal Gmail account on both his computer and Google's server sometime between April 8-9 and July 8, 2019.

13.    I was asked to analyze the Laptop and Archive File identified above to determine whether any of the pre-2014 emails could be recovered and to analyze the evidence concerning the deletion of documents and emails by Dr. Eltoukhy.

**D. Internet History Examination.**

14.    Stroz Friedberg's forensic examination included the analysis of internet activity on the Laptop.

15.    Stroz Friedberg's analysis of the internet history artifacts identified usage of browsers such as Safari, Google Chrome and Mozilla Firefox.

16.    Stroz Friedberg's analysis of the Safari history artifacts contained within the Laptop identified access to ███████████████████████████████████████████.

17.    The Safari Internet history analysis identified access to online storage and webmail to include ████████████████████████████████████████ ████████████

████████ some of which occurred on October 8, 2019 between 08:35:40 PM and 10:24:15 PM Pacific Time (Table 1).

18.   Google Takeout is used to manage Google account data to include downloading all or part of a user's Google account data.



19.   On October 8 at between 8:35 and 8:37 pm, a user logged into Dr. Eltoukhy's Gmail, and accessed the "manage archives" section. This section has a "takeout" function, which allows for data content (such as email) export. At this time a user also accessed the

"Data and Personalization" page, which allows the creation of a data export regarding account usage.

20. Between 8:51 and 9:06 pm, a user logged into ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

21. A user continued accessing Gmail between 9:03 and 10:24 pm.

22. Additionally, Stroz Friedberg observed access to the Google Mail Trash folder associated with the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ account on October 10, 2019 at approximately 07:13:15 AM Pacific Time (*Table 2*).



23. A detailed listing of all internet activity relating to Safari Browser is included as Exhibit 2.

**E. Deletion Activity.**

24.     Stroz Friedberg's forensic analysis also included the examination of a variety of artifacts that record information about files that were deleted on the Laptop.

25.     FSEvents, or File System Events, are recorded events of changes to file system objects such as files and folders which occur on a Macintosh formatted (macOS) volume. FSEvents data is stored in the '.fseventsd' directory, located in the root of the volume,[1] and may contain anywhere from one to hundreds of FSEvent log files. The FSEvents log files contain historical file system and user activity over the course of a few days to months.

26.     Among various filesystem events, FSEvents logs Trash activity, which includes files sent to the Trash and Trash emptying. Files which were sent to the Trash will include the mask "Renamed" and files that were emptied from the Trash will include the mask "Removed".

27.     FSEvent records consist of three components: the full path, record flags, and the event ID. While FSEvents do not contain timestamp of when the event occurred, based on the creation timestamp of the actual log file from which a set of events are parsed, combined with the time stamps of prior and subsequent log files, Stroz Friedberg was able to derive an approximate date and time for the various events, such as deletions.

28.     Stroz Friedberg's analysis of FSEvents identified deletion of ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ from the Laptop, each of which we believe contained an "mbox" file that appeared to be emails gathered in a July 2019 search. Based on the timestamp from the originating, prior and subsequent FSEvent Log files, the deletion appears to have occurred on October 8, 2019 between approximately 8:38:57 PM and 9:20:27 PM Pacific Time (Table 3).

---

[1] The root discovery, or root folder, refers to the uppermost folder on a hard drive. A volume is a storage space for a hard drive.



29.     Stroz Friedberg's analysis further identified that subsequently, 389 files and folders were deleted from the Laptop on October 11, 2019 between approximately 9:11:06 AM and 11:02:39 AM Pacific Time.

30.     This was then followed by Trash being emptied on 10-11-2019 at approximately 11:03:11 AM Pacific Time.

31. The deleted files or folders; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" no longer exist on the Laptop and cannot be recovered.

32. There is another event of Trash being emptied on 10-16-2019 at approximately 08:49:33 AM Pacific Time.

33. The Laptop was found to have been formatted using the Apple File System (APFS) and was using the operating system macOS Mojave version 10.14.6.

34. Each volume in an APFS container uses unique volume and secondary encryption keys. When a file is deleted, its data blocks are released to the container pool. At that point it is not possible to map an unallocated data block back to its original volume. We therefore do not know which encryption keys to use to correctly decrypt the data. This process is further complicated since encrypted blocks can be relocated on disk. When this happens, the data is not re-encrypted, and the original block number must be known to decrypt the data. This information is generally lost when a file is deleted. Since unallocated blocks remain encrypted inside the logical container pool, carving for data that was associated with an encrypted volume will be ineffective because there are no known signatures to look for in the header.

35. Once a file or folder is deleted (sent to the Trash) and the Trash is subsequently emptied on a computer using APFS, the files or folders become unrecoverable.

36. A detailed listing of Deletion activity surrounding the events discussed above is included as Exhibit 3.

**F. The "Bodiless" Emails Produced By Guardant.**

37. Stroz Friedberg received from FMI's counsel a meta-data listing for 298 emails that were produced by Guardant that are missing all text other than the date/to/from/cc/subject line (the "bodiless emails"). *See* Exhibit 4.

38. Stroz Friedberg was able to locate all of these 298 emails contained in Archive File and found that all of them appear to contain only email Header Information without any additional content such as the Email Body, Attachments, etc. Specifically, 296 of these emails were located in a subfolder "On My Computer/Recovered Folder," 1 was located in a subfolder "\Illumina\Sent Items," and 1 was located in a subfolder "\oghe\Inbox."

39. Further examination of the "On My Computer/Recovered Folder" showed that this folder appears to contain 6,379 emails, the majority of which contained only email Header Information with only 11 emails appearing to contain all of the content, such as Email Header Information, Email Bodies, some with Attachments, etc.

40. The lack of content beyond the email Header Information and the location where they were found inside the Outlook for Mac (OLM) Archive file, is consistent with emails which were previously deleted and subsequently recovered in a partial format.

41. After utilizing several forensic tools, Stroz Friedberg does not believe that any additional content can be recovered for these bodiless emails from the Archive File or the Laptop. We also were not able to determine when Dr. Eltoukhy deleted all of his pre-2014 emails from his Gmail account on both his computer and Google's server.

I declare under penalty of perjury under the laws of the United States that the foregoing and the content of my Declaration and Expert Report are true and correct to the best of my knowledge. Executed this 24 day of September, 2020, in Cancun, Mexico.

_____
Sergio D. Kopelev, EnCE