**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GUARDANT HEALTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 17-1616-LPS-CJB |
| v. | ) | |
| | ) | |
| FOUNDATION MEDICINE, INC., | ) | **FILED UNDER SEAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF GUARDANT HEALTH, INC.'S OPPOSITION TO
FOUNDATION MEDICINE, INC.'S MOTION FOR SANCTIONS
BASED ON SPOLIATION OF EVIDENCE**

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL &MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone:    (650) 802-3000
Facsimile:    (650) 802-3001
edward.reines@weil.com
derek.walter@weil.com

Garland Stephens (admitted pro hac vice)
Justin L. Constant (admitted pro hac vice)
700 Louisiana Street, Suite 1700
Houston, TX 77002
(713) 546-5011
(713) 546-5000
garland.stephens@weil.com
justin.constant@weil.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff Guardant Health, Inc.*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     LEGAL STANDARD..............................................................................................3

        A.      The Law Requires Data To Be Lost And Not Recoverable....................................3

        B.      Intent To Deprive Another Party Of The Information's Use In The
                Litigation Is Required For Severe Sanctions .......................................................4

III.    FACTUAL BACKGROUND ..................................................................................4

        A.      Guardant Attempted To Collect and Preserve Dr. Eltoukhy's Emails ..................4

        B.      Dr. Eltoukhy Was Interrogated About And Subsequently Deleted Emails
                Prior to 2014 ........................................................................................................5

        C.      Guardant Returned Illumina Emails To Illumina ..................................................6

        D.      Guardant Discovered The Flaw In Collection Of Dr. Eltoukhy's Emails
                And Attempted Recovery .....................................................................................7

        E.      Backup Of Dr. Eltoukhy's Computer Was Discovered With Dr.
                Eltoukhy's Emails From His Gmail Account. .........................................................8

        F.      Complete Versions of the Emails Identified By FMI Were Found .......................8

        G.      The Forensic Image of Dr. Eltoukhy's Laptop from October 2019 (With
                The Bodiless Emails) Is Provided To FMI's Expert..............................................9

        H.      During Dr. Eltoukhy's Latest Deposition, FMI repeatedly questioned him
                regarding a bodiless email for which FMI already *had the full bodied
                version*................................................................................................................9

IV.     ARGUMENT .......................................................................................................10

        A.      Dr. Eltoukhy Did Not Intend To Destroy Evidence, Nor Did He.........................10

        B.      The Emails Have Been Recovered And FMI Has Suffered No Prejudice ...........11

        C.      FMI's Timeline Of A "Second Round" Of Deletions Is Flawed And Built
                On Unreasonable Inferences ..............................................................................14

        D.      Guardant Did Not "Conceal" Any Spoliation......................................................16

        E.      The Sanctions Requested By FMI Are Extreme And Unwarranted ....................16

i

V.    CONCLUSION............................................................................................................17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  Civil No. 1:14-CV-1611, 2016 WL 4224964 (E.D. Va. Aug. 8, 2016) .................................. 17

*Bull v. United Parcel Serv., Inc.*,
  665 F.3d 68 (3d Cir. 2012) ......................................................................................... 4

*CIGNEX Datamatics, Inc. v. Lam Research Corp.*,
  C.A. No. 17-320 (MN), 2019 WL 1118099 (D. Del. Mar. 11, 2019) ........................................ 3

*Fiteq Inc. v. Venture Corp.*,
  Case No. 13-CV-01946-BLF, 2016 WL 1701794 (N.D. Cal. Apr. 28, 2016) .................... 3, 12

*GN Netcom, Inc. v. Plantronics, Inc.*,
  930 F.3d 76 (3d Cir. 2019) ......................................................................................... 4

*Living Color Enters., v. New Era Aquaculture, Ltd.*,
  Case No. 14-cv-62216, 2016 WL 1105297 (S.D. Fla. March 22, 2016) ................................ 3

*Monolithic Power Sys., Inc. v. Intersil Corp.*,
  C.A. No. 16-1125-LPS, 2018 WL 6075046 (D. Del. Nov. 19, 2018) ........................................ 3

*NW Pipe Co. v. DeWolff, Boberg & Assocs., Inc.*,
  No. EDCV 10-0840-GHK, 2012 WL 137585 (C.D. Cal. Jan. 17, 2012) ................................ 17

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  328 F.R.D. 543 (N.D. Cal. 2018) ................................................................................. 3

*Residential Funding Corp. v. DeGeorge Financial Corp.*,
  306 F.3d 99 (2d Cir. 2002) ......................................................................................... 4

**Rules**

FRCP 37(e) .............................................................................................................. 3, 4

FRCP 37(e)(2) ........................................................................................................... 3, 4

## I.     INTRODUCTION

FMI contends that Dr. Eltoukhy destroyed documents in bad faith and that those documents have not been recovered.    The record does not support FMI's allegations.

During his April 2019 deposition in this case, Dr. Eltoukhy was interrogated regarding his obligations to Illumina and emails involving his Illumina and Gmail accounts from before 2013. After his deposition and upon learning that he still had Illumina confidential information in his Gmail account that he should no longer possess, Dr. Eltoukhy sought to remove it from his possession believing that his counsel had already collected all such documents from his computer. While regrettable in hindsight, Dr. Eltoukhy did so by deleting his pre-2014 email without consulting his counsel.

Dr. Eltoukhy did **not** delete this email with the intent of depriving FMI of "the information's use in the litigation," but rather with the good intent to remove Illumina information from his computer.    At the time, Dr. Eltoukhy had the objectively reasonable understanding that his email had been preserved by Counsel.    He had provided his laptop to Guardant's IT staff and counsel for collection and preservation in 2018, and his email client was fully synced to his Gmail account.    Dr. Eltoukhy's belief was reinforced because at his deposition he had been shown emails sent to and from his Gmail account that had been produced in the case.    Thus, he had no reason to believe that he was destroying evidence, but merely deleting his particular copy of information that he should no longer possess.    Unbeknownst to Dr. Eltoukhy (and Guardant), the original collection of Dr. Eltoukhy's Gmail was flawed.    For many of the emails, only the recipients, sender, date, and subject were collected, but not the bodies and attachments (the "bodiless" emails).

After learning of the problem, Guardant engaged in substantial efforts to recover the information.    This included engaging a forensics expert, preparing a forensic image of Dr.

1

Eltoukhy's computer, joining a subpoena to Google, and collecting email from others that might have had additional copies.   While these efforts largely were unsuccessful, Guardant ultimately managed to locate a previously unknown backup of Dr. Eltoukhy's computer from *before* his deposition.   This backup contained Dr. Eltoukhy's synced Gmail account including over 16,000 emails from between 2011 to 2013 (averaging 22 per day).   Constant Decl ¶ 35.   There is no reason to believe that this collection of Dr. Eltoukhy's Gmail contains anything less than all of his email from the time period that he possessed as of this litigation.

To try to show that there are nevertheless missing email from Dr. Eltoukhy's Gmail account caused by his post-deposition deletion of his copies, FMI's identifies 298 bodiless emails as evidence that information has been lost.   However, Guardant has recovered full versions for over 98% of these emails.[1]   FMI did not receive most of the full versions of these emails because they were so irrelevant that they did not fall within the parties' agreed-upon search restrictions, not because they were lost.   Others were withheld as privileged or had already been produced. Thus, FMI received all the emails with bodies that it was supposed to receive in discovery.

As a second argument, FMI submitted a timeline to create the appearance of improper behavior in relation to the later creation of a forensic image of Dr. Eltoukhy's computer that was created and turned over to FMI as part of Guardant's good faith effort to cooperate.   FMI's timeline contains significant flaws, fails to show that any relevant information was deleted, and does not support FMI's arguments that anything improper occurred or the extraordinary relief it seeks.

---

[1] The remainder appear to be bodiless.

Because, there was no intent by Dr. Eltoukhy to deprive FMI of "the information's use in the litigation"—a prerequisite for any relief under FRCP 37(e)(2)—and no information has actually been lost, FMI's motion for sanctions should be denied.

## II. LEGAL STANDARD

### A. The Law Requires Data To Be Lost And Not Recoverable

Where the issue of alleged spoliation turns on a party's loss or destruction of electronically stored information, Rule 37(e) governs the analysis. *CIGNEX Datamatics, Inc. v. Lam Research Corp.*, C.A. No. 17-320 (MN), 2019 WL 1118099, at *3 (D. Del. Mar. 11, 2019); *Monolithic Power Sys., Inc. v. Intersil Corp.*, C.A. No. 16-1125-LPS, 2018 WL 6075046, at *1 (D. Del. Nov. 19, 2018). "Rule 37(e) essentially functions as a decision tree." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018). "The threshold inquiry is whether ESI has been lost" and "*it cannot be restored or replaced* through additional discovery." *Id.* at 548*;* FRCP 37(e); *see also Monolithic Power Sys., Inc,* 2018 WL 6075046, at *3 (sanctions under Rule 37(e) inappropriate where defendant failed to show missing instant messages "cannot be restored or replaced through additional discovery"); *Fiteq Inc. v. Venture Corp.*, Case No. 13-CV-01946-BLF, 2016 WL 1701794, at *3 (N.D. Cal. Apr. 28, 2016) (no sanctions where deleted emails were later restored and produced); *Living Color Enters.*, *v. New Era Aquaculture, Ltd.,* Case No. 14-cv-62216, 2016 WL 1105297, at *5-6 (S.D. Fla. March 22, 2016) (no sanctions for deleted or lost texts where another party produced the majority of them). "Only if this threshold requirement is met can the court proceed to impose non-dispositive measures to cure any resulting prejudice." *Oracle* at 549.

**B.      Intent To Deprive Another Party Of The Information's Use In The Litigation Is Required For Severe Sanctions**

The more severe sanctions listed in Rule 37(e)(2) are only available with proof of bad intent.   *Id.*   *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting FRCP 37(e)).   Even negligence or gross negligence are insufficient for a finding of such a finding. FRCP 37(e), Adv. Comm. Note (2015) (the Rule "rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence."). Also, Rule 37(e) "recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection." FRCP 37(e), Adv. Comm. Note (2015).   A dispositive sanction is warranted only where "the non-responsible party's case is severely impaired because it lacked the information that was not produced."   *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 83 (3d Cir. 2012).

**III.    FACTUAL BACKGROUND**

**A.      Guardant Attempted To Collect and Preserve Dr. Eltoukhy's Emails**

Dr. Eltoukhy's emails were collected in 2017 in connection with another litigation and again on July 20, 2018.   Ex. 23 (11/3/2019 Constant email).   At the time of collection, Dr. Eltoukhy's entire Gmail account was synchronized to his laptop.   Ex. 1 at 789:5-15 (Eltoukhy Dep.).   While not known at the time, this collection was imperfect.   For many emails involving Dr. Eltoukhy's Gmail account, the copy created by counsel contained only the email's header information—the recipients, the sender, the date, and subject line—but not the bodies or attachments (the "bodiless" emails).   Despite multiple investigations and the engagement of a forensics expert, it is unknown how or why this computer malfunction occurred.   D.I. 286 at 2; Ex. 24 (Moore Decl.) at ¶ 10.

4

Nevertheless, as part of Guardant's initial collection, Guardant captured scores of Illumina emails from the 2011-2013 time frame when Dr. Eltoukhy was still employed by Illumina and prior to his joining Guardant.   This includes Illumina documents that were sent to and from Dr. Eltoukhy's Illumina email account, which Dr. Eltoukhy had inadvertently retained as backups and was unaware that he still had in his possession.   Ex. 1 at 789:18-790:10.   These documents were nevertheless produced from the outset and describe Dr. Eltoukhy's activities in the 2011 time frame.   *See, e.g.* Exs. 25-26 (GUARDFM00193039; GUARDFM00279185).   This evidence formed the core of FMI's original inequitable conduct allegation and still constitutes the core of FMI's inequitable conduct evidence.

**B.    Dr. Eltoukhy Was Interrogated About And Subsequently Deleted Emails Prior to 2014**

On April 8th and 9th, 2019, Dr. Eltoukhy was deposed by FMI.   During the deposition Dr. Eltoukhy was presented with and questioned about emails involving both his Illumina account and Gmail account.   Ex. 2 at 199:7-10.; Ex. 13 (Eltoukhy Dep. Exhibit 7); Ex. 14 (Exhibit 19); Ex. 15 (Exhibit 22).   The questioning focused extensively on alleged wrongs that Dr. Eltoukhy committed against Illumina by virtue of his inadvertent retention of Illumina documents, such as whether he breached his employment agreement, breached the Illumina code of ethics, stole trade secrets from Illumina, or breached a duty of confidentiality to Illumina:

- "Were you at all aware that Illumina had a code of conduct?" Ex. 2 at 109:15-16

- "And do you believe you fully complied at all times with Illumina's code of conduct?"   *Id.* at 110:21-22.

- "So how were you able to keep separate the confidential information you learned at Illumina and the advice you gave to the team at Guardant Health?" *Id.* at 199:7-10.

- "Do you recall if your employment agreement with Illumina allowed you to assist other companies in other work?" *Id.* at 104:19-21.

- "Did you let anyone at Illumina know that you were an investor in Guardant Health?"   *Id.* at 106:1-2; *see also id.* at 105:9-10.

In the wake of this questioning, and while regrettable in hindsight, Dr. Eltoukhy chose to remove all emails prior to 2014 from his Gmail account.   Ex. 1 at 789:5-15.   This was not done maliciously or with any ill intent and certainly not with the intent to deprive FMI of evidence—given his understanding that the emails had been collected and preserved.   Dr. Eltoukhy simply did not want to possess information he was not supposed to have.   *Id.* at 789:5-15.

During Dr. Eltoukhy's employment at Illumina, Dr. Eltoukhy used his Gmail account regularly.   *See* Ex. 3 (Dr. Eltoukhy including his Gmail email address in his Illumina email signature).   Thus, as expected, Dr. Eltoukhy's Gmail account contained confidential Illumina information.   After realizing from the deposition that some of this information was still present in his Gmail account from years ago, Dr. Eltoukhy sought to remove it from his possession.   Ex. 1 at 790:20-791:5.

At the time, Dr. Eltoukhy believed that all of his email had been collected by Guardant's counsel—Gmail and otherwise.   *Id.* at 789:9-15.   When the collection was performed, emails were collected by Guardant's IT department and counsel from Dr. Eltoukhy's laptop, which was synced to his entire Gmail account.   *Id.*   He was shown multiple exhibits in his deposition that were emails with his Gmail address on them.   Exs. 27-29 (Eltoukhy Dep. Exs. 62, 63, 70).   Thus, to Dr. Eltouhky's understanding, he was not destroying any evidence, but rather deleting only the one particular copy in his possession.   *See* Ex. 1 at 789:5-791:5.

## C.    Guardant Returned Illumina Emails To Illumina

After Dr. Eltoukhy realized that he was in possession of Illumina emails, Illumina was informed and the emails were returned.   Ex. 1 at 789:18-790:6.   Subsequently, Illumina requested in July 2019 that Guardant and Dr. Eltoukhy confirm that they no longer have possession

6

of any confidential Illumina documents (except for Guardant's outside counsel).   On July 22, 2019, Guardant confirmed that all such Illumina information was removed from Guardant and Dr. Eltoukhy has carried on a normal professional relationship with Illumina since then.

### D.   Guardant Discovered The Flaw In Collection Of Dr. Eltoukhy's Emails And Attempted Recovery

Unknown to Dr. Eltoukhy and Guardant, the original collection and preservation of Dr. Eltoukhy's email was flawed.   A problem was discovered in September 2019 after Guardant produced emails from Dr. Eltoukhy's Gmail account pursuant to the Court's August 7, 2019 order. D.I. 191.   Per the order, the parties conferred upon a set of search terms and conditions prior to the production (a total of 68 terms).   Ex. 4 (10/7/2019 Constant Email) (38 search terms); Ex. 30 (8/13/2019 Miller Email) (30 search terms).   The parties also agreed that the emails would be limited to before 2013 and between Dr. Eltoukhy and Guardant employees or advisors.   The production of emails from Dr. Eltoukhy's Gmail account was also be limited to emails after 2010.

After the emails were produced on September 20, 2019, FMI's counsel identified several of the emails from the production as missing bodies and attachments.   Only the headers remained with the recipients, the sender, the date, and the email subject.   *See e.g.,* Ex. 5.[2]

After the issue was raised, Guardant engaged in extensive efforts to recover this information including forensically imaging Dr. Eltoukhy's computer, hiring a forensics expert, joining in a subpoena to Google, and searching the emails and computers of others that might possibly have some of this information.   Although these initial efforts did not recover all of the information, further steps were taken, as documented below.

---

[2] This document has since been recovered in full and produced.   *See* Ex. 6.

**E.    Backup Of Dr. Eltoukhy's Computer Was Discovered With Dr. Eltoukhy's Emails From His Gmail Account.**

In November 2019, after searching high and low, Guardant was able to locate a previously unknown backup of Dr. Eltoukhy's computer from March 2019, before Dr. Eltoukhy's deposition and his subsequent removal of emails. Constant Decl ¶ 34.   That backup contained the fully synced Gmail account with complete emails.   *See e.g.* Moore Decl. ¶¶ 3, 6.   From this backup, Guardant has recovered 16,014 complete emails (including bodies and attachments) from Dr. Eltoukhy's Gmail account that were sent or received between 2011 and 2013.   Constant Decl. ¶ 35.   These emails were evenly distributed over time, ranging between 425 to 1392 emails per month, averaging 22 emails per day.   Constant Decl. ¶ 35.   There is no reason to believe that this pre-deposition collection of Dr. Eltoukhy's email was missing emails from his Gmail account. These emails have since been produced pursuant to the agreed upon search parameters by the parties.   Few of them have any relevance to the issues in this case.

**F.    Complete Versions of the Emails Identified By FMI Were Found**

Complete versions of 292 (98%) of the 298 bodiless emails (list At D.I. 470-4) identified by FMI have been found.   Over 80% were not produced because they did not contain one of the 68 ESI search terms or otherwise meet the other restrictions agreed upon by the parties.   *See* Ex. 7.   The remainder are privileged, were previously produced, or appear to have been bodiless from the outset:

- 292 (98%) full body versions of the 298 bodiless emails were located and analyzed for production

  - 252 (86%) of these did not meet the agreed upon restrictions and were not produced or reviewed as part of the production process

  - 36 (12%) of these were withheld as privileged

  - 4 (1%) of these were previously produced

- 6 (2%) emails have no additional information associated with them.   *Id.*

**G.    The Forensic Image of Dr. Eltoukhy's Laptop from October 2019 (With The Bodiless Emails) Is Provided To FMI's Expert**

As discussed above, Guardant created a forensic image of Dr. Eltoukhy's computer on October 16, 2019, as part of Guardant's initial efforts to recover the data for the bodiless emails (prior to locating the backup).   This image was provided to a forensic expert, Britton Moore, who was unable to recover any additional emails.   Pursuant to the Court's order on December 10, 2019, the image was also provided to FMI's consultant, Mr. Kopelev, for additional review.   D.I. 289.   Under an agreement between the parties, Mr. Kopelev would attempt to recover any additional emails, provide them to Guardant for a privilege review, who would then produce them. Ex. 8 (Dec. 31 2019 email from Baraa Kahf Re: Defendants' proposal re forensic analysis); Ex. 9 (Kopelev Declaration).   This production occurred in March 2020.   Ex. 10 (March 3, 2020 email from Sergio Kopelev re: Guardant v. PGDx – 03/03/2020 Deliverable).   There was no review for relevance or responsiveness.   Of the 298 bodiless documents identified by FMI, 294 resulted from that production that included non-responsive documents.   Keep in mind, this was before the back-up computer with the complete emails was found.

**H.    During Dr. Eltoukhy's Latest Deposition, FMI repeatedly questioned him regarding a bodiless email for which FMI already *had the full bodied version*.**

FMI repeatedly questioned Dr. Eltoukhy regarding a bodiless email exhibit for which FMI already *had the full bodied version*. *Compare* Ex. 11 (Eltoukhy Dep. Ex. 66) to Ex. 12 (Email Produced to FMI on 12/6/2019);[3]  *see also* Ex. 1 at 927:4-928-2 (9/18/2020 Eltoukhy Depo. Tr.) ("Q. And -- and you can't tell -- there's nothing -- there's nothing in the body of the E-mail, so you

---

[3]  The timestamp between the emails is exactly 1 hour apart—to the second—due to importation and processing artifacts, but represents the same email. *See* Moore Decl. ¶ 7.

can't tell just from the subject matter what it was about?", "Q. So if there was text in the body of the E-mail, you can't, looking at this, remember what it was?", "Q. . . . But you -- you can't tell -- certainly, looking at this, you can't say, oh yeah, I remember that E-mail and it did have text and it was about something. You don't know, right?").   The full bodied version of the email was produced to FMI on December 6, 2019 nearly 6 months before the deposition.

## IV.   ARGUMENT

### A.   Dr. Eltoukhy Did Not Intend To Destroy Evidence, Nor Did He

Dr. Eltoukhy's deletion of emails after his deposition was not an attempt to destroy evidence.   At the time, Dr. Eltoukhy had the objectively reasonable belief that he was not deleting the sole source of evidence and that Guardant's counsel had a copy.   Ex. 1 at 784:5-19; 789:5-15.   Because he did not act with "intent to deprive [FMI] of the information's use in the litigation," the extreme sanctions sought by FMI pursuant to FRCP 37(e)(2)—including termination of the case—are not appropriate.

After being extensively deposed regarding the 6-year old Illumina information that was still in his possession, Dr. Eltoukhy made a misguided choice to remove it from his computer without first consulting counsel.   Dr. Eltoukhy proceeded with a "batch-delete" operation that removed all emails prior to 2014.   The operation ensured the removal of any Illumina confidential information that he had from his time at Illumina without requiring an email by email review.   As Dr. Eltoukhy explained:

> Q. Okay. So did you at any point in time, between the commencement of this lawsuit and the date of your first deposition in April of 2019, delete anything from your Gmail account?
>
> A. I believe with, my understanding, that the E-mail from my Gmail account had been collected, given that my laptop was synced to my entire Gmail account and that had been collected by IT department and our counsel, *I removed documents from my computer so that I didn't have any sensitive information that was there.*

Ex. 1 at 789:5-15 (emphasis added).

Dr. Eltoukhy's belief that his emails from his Gmail account had been preserved by Guardant's counsel was objectively reasonable even though it ultimately turned out to be incorrect. Dr. Eltoukhy had provided his laptop to Guardant's counsel so that his email could be collected. At the time, his entire Gmail account was synced.   Ex. 1 at 784:5-15.   Thus, he had no reason to believe that these emails had not been collected.   At the deposition, his belief then was confirmed by the multiple exhibits involving his Gmail address.   *See* Ex. 13 (Exhibit 7); Ex. 14 (Exhibit 19); Ex. 15 (Exhibit 22).

Dr. Eltoukhy's good faith belief that the emails in his Gmail account were collected is also borne out by Guardant's production of the bodiless emails themselves.   Indeed, the initial set of bodiless documents produced by Guardant in September 2019 were collected from Dr. Eltoukhy's Gmail account confirming that Guardant attempted a collection.   Dr. Eltoukhy would have had no way of knowing that there later turned out to be a flaw in that process and could not have the intend to deprive FMI "of the information's use in the litigation."

Pursuant to FRCP 37(e), the Court is limited in awarding sanctions for a failure to preserve electronically information where no intent has been found.   Specifically, the Court "may order measures no greater than necessary to cure the prejudice."   FRCP 37(e)(1).   Because, as explained below, FMI has suffered no prejudice, no sanctions are warranted here.

**B.     The Emails Have Been Recovered And FMI Has Suffered No Prejudice**

As discussed above, with the discovery of the backup of Dr. Eltoukhy's computer from before his deposition, Guardant has recovered 16,041 complete emails (including bodies and attachments) from Dr. Eltoukhy's Gmail account that were sent or received between 2011 and 2013 (an average of 22 per day).   The emails were all searched pursuant to the parties' agreed parameters and produced to FMI after a privilege review.   The sheer volume of this recovery

11

confirms Dr. Eltoukhy's testimony that his "laptop was synced to [his] entire Gmail account." Ex. 1 at 789:9-15.   Because there is no evidence of lost information, sanctions under Rule 37(e) sanctions are improper.   *See Fiteq Inc.,* 2016 WL 1701794, at *3 (no sanctions where deleted emails were later restored and produced).

FMI points to 298 "bodiless" emails in an inaccurate attempt to argue that information is still missing.   This is incorrect.   From the list provided by FMI to the Court, Guardant has 292 (98%) complete corresponding emails.   The remaining 6 may have been intentionally or unintentionally blank.   *See e.g.,* Ex. 16 (email Dr. Eltoukhy sent to himself with the subject "test"); Ex. 17 (email subject ███████████████     Of the documents that Guardant recovered, 252 (86%) of the documents simply did not meet the search parameters agreed to by the parties, including 68 search terms.   The remainder were either withheld as privileged or had already been produced.   *See* Ex. 7.   For example, FMI calls out 7 bodiless emails (from the list of 298) with allegedly relevant subject lines as examples of lost information.   D.I. 468 at 7 n. 6. However, for each of these, the full bodied versions of the documents were previously produced, withheld as privileged, or appear to have never contained a body:

- D.I. 469-2 (FMI Ex. 2) – Previously produced at GUARDFM00912765 (Ex. 12)
- D.I. 469-6 (FMI Ex. 6) – Withheld as privileged at log entry 4542 (Ex. 31 at 370)
- D.I. 469-21 (FMI Ex. 21) – No evidence of a full bodied version or attachment. Email was sent from Dr. Eltoukhy to himself with the subject ███████████
- D.I. 469-22 (FMI Ex. 22) – Withheld as privileged at log entry 5103 (Ex. 31 at 398)
- D.I. 469-23 (FMI Ex. 23) – Withheld as privileged at log entry 5131 (Ex. 31 at 400)
- D.I. 469-13 (FMI Ex. 13) – Full version recovered, but did not meet the search criteria.
- D.I. 469-25 (FMI Ex. 25) – Full version recovered, but did not meet the search criteria

In other words, FMI does not have this information because it is not relevant or privileged, not because it was not recovered.

The primary reason that FMI has the bodiless versions of these irrelevant or privileged documents is that they were selected for production by FMI's consultant, Mr. Kopelev in a process

that did not include a review for relevance.   Pursuant to the parties' agreement regarding review of the October 2019 forensic image of Dr. Eltoukhy's laptop, Dr. Kopelev would identify allegedly "deleted" emails, provide them to Guardant for a privilege review only, and then Guardant would produce them to FMI – ***regardless*** of relevance to this case or responsiveness to the agreed upon document production parameters.   As part of Guardant's cooperative approach to remediate this issue, it did not filter any of these documents for relevance or responsiveness.   Nearly all (294 of the 298) of the bodiless emails identified by FMI were produced by this method.   Importantly, FMI is making this argument even though this was all explained to FMI nearly 6 months ago.   Ex. 18 (4/28/2020 Email from J. Constant to E. Miller) ("production was based on the emails provided by Sergio Kopelev and was only subject to a privilege review (and standard deduplication)" and that "there may have been bodiless and full bodied documents included that would not have been included in Guardant's production and recovery efforts that were subject to the agreed upon limitations including ESI terms and To/From/CC/BCC restrictions.")   FMI never raised any objections to this approach.

FMI even attempted to push its unsupported narrative of missing relevant information during the most recent deposition of Dr. Eltoukhy.   FMI repeatedly questioned him regarding a bodiless email exhibit for which FMI already had the full bodied version. *Compare* Ex. 11 (Exhibit 66 to Dr. Eltoukhy's Deposition) to Ex. 12 (Email Produced to FMI on 12/16/2019);[4]  *see also* Ex. 1 at 927:4-928:2 (questioning Dr. Eltoukhy regarding the bodiless exhibit).   These attempts to craft a narrative of lost information have no basis in fact.

---

[4]  The timestamp between the emails is exactly 1 hour apart—to the second—due to importation and processing artifacts, but represents the same email. *See* Moore Decl. ¶ 7.

### C.   FMI's Timeline Of A "Second Round" Of Deletions Is Flawed And Built On Unreasonable Inferences

FMI constructs a timeline to create the appearance of improper behavior in relation to the later creation of a forensic image of Dr. Eltoukhy's computer that was part of Guardant's good faith remediation effort.   FMI's timeline contains significant flaws, fails to show that any relevant information was deleted, and does not support FMI's inferences that anything improper occurred.

As an initial matter, despite FMI's claims to the contrary, there was no "court-ordered forensic investigation" on October 7, 2019.   The creation of a forensic image of Dr. Eltoukhy's computer was part of the internal effort to find the missing data for the bodiless emails.   The parties had disputed the issue of whether it was justified for FMI's consultant to also review the image *after it was created*.   D.I. 274 (Letter requesting teleconference dated November 18, 2019). The issue was not decided until December 10, 2019 that Dr. Eltoukhy's forensic image could be reviewed by Mr. Kopelev (with significant restrictions to account for privilege and trade secret information).   D.I. 289.   As such, any inference that Dr. Eltoukhy was attempting to hide information from FMI's consultant makes no sense.

FMI next points to multiple activities on October 8, 2019.   First, FMI identifies browser history indicating that Dr. Eltoukhy accessed Google's data export function (Google Takeout). The Google Takeout function, however, only makes copies of data in Google's possession, it does not delete it.   *See, e.g.,* Ex. 19 (Google Takeout Form, available online at https://takeout.google.com/settings/takeout).   Next, FMI identifies files that were deleted including a file named ███████████████████████   As FMI correctly surmised, this was collected as part of a July 2019 collection by counsel.   As this had already been collected, there is no reason why it could not be deleted from Dr. Eltoukhy's computer.   For the collection itself, none of these emails were dated before 2013, the relevant time period for FMI's inequitable

14

conduct claim.   Any relevant emails within the ████████████████████ have long since been produced to FMI.   *See e.g.* Ex. 20 (email with metadata filename ████████████████████).   Third, FMI identifies browser history showing accessing a Dropbox website and the deleted files folder.   Again, the accessing of a deleted files folder shows nothing about any relevant files being deleted.

FMI then points to activity *two days later* on October 10, 2019 where the browser history shows access to the Gmail trash folder.   Not only does this not indicate that anything was deleted, but it would be entirely consistent with Dr. Eltoukhy's testimony that he deleted spam, ads and advertisements "from time to time."   Ex. 1 at 791:6-792:6.

Finally, FMI argues that the deletion of 389 files and folders (now 3 days after the initial alleged "suspicious activity") constitutes improper conduct.   The list is inflated by including a large number of files that could not possibly be relevant to this case.   For example, Mr. Kopelev identifies the deletion of:

- 172 instances of files being deleted as part of a "Web Form Builder Lite" application.   *See* Ex. 21 (web builder description)
- 70 instances of files being deleted from a folder called "About Stacks.Ipdf" including 22 copies of a document called "About Stacks.pdf"
- 14 temporary files (indicated by a "~" before the file name).   *See* Ex. 22 (Word help)
- cardcheckout.png (an image file) from a folder called "payments"

As for the remainder, there is no indication that these files are in anyway relevant to FMI's inequitable conduct defense or dated ***prior to 2013***.   Indeed, one of the files specifically called out by FMI is a temporary file named with a March 26, 2018 date ████████████████████ ████████████ more than 5 years after Dr. Eltoukhy left Illumina and joined Guardant.

In sum, FMI has twisted relatively routine computing tasks into a false narrative of improper behavior.   As Dr. Eltoukhy testified, he would delete items from "time to time" such as

"spam E-mails," "duplicative files" or "personal" things.   Ex. 1 at 1000:8-1001:5.   All of the activities identified by Mr. Kopelev are entirely consistent with his testimony.

### D.    Guardant Did Not "Conceal" Any Spoliation

FMI argues that Guardant concealed the alleged "spoliation" and Dr. Eltoukhy's deletion of emails after his deposition.   This is far from the truth.   As explained above, Guardant attempted to collect and preserve Dr. Eltoukhy's email in 2018.   It was not until September 2019 when it was discovered that the collection was imperfect and did not contain complete copies of Dr. Eltoukhy's emails in his Gmail account.   It was at that point that Guardant's counsel became aware that information may have been lost.

FMI points to the collection of emails on July 8, 2019 from Dr. Eltoukhy's Gmail account as the alleged date that Dr. Eltoukhy's deletion of emails became known.   Again, this is incorrect. That collection was performed pursuant to an explicit request by Defendants' counsel that Guardant search the account directly in the web interface, rather through the synchronized Outlook client.

### E.    The Sanctions Requested By FMI Are Extreme And Unwarranted

Even if FMI could show that any information was lost (it was not) and that Dr. Eltoukhy acted with intent to deprive FMI of information (he did not), terminating sanctions would still not be appropriate.   For example, in *Cat3*, the court found that the plaintiff had *intentionally* falsified emails and determined that the requirements for sanctions under both FRCP 37(e)(1) and (2) were met.   However, the court awarded less severe sanctions tailored to cure the specific prejudice that the defendants suffered by precluding the plaintiff from relying on its version of the altered emails. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501-02 (S.D.N.Y. 2016) (acknowledging the reluctance to award terminating sanctions where the plaintiffs' underlying claims might be legitimate); *see also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, Civil

No. 1:14-CV-1611, 2016 WL 4224964, at *18-19 (E.D. Va. Aug. 8, 2016), appeal docketed, No. 16-1972 (4th Cir. Aug. 24, 2016) (concluding that lesser measures were sufficient despite a finding of intentional spoliation); *NW Pipe Co. v. DeWolff, Boberg & Assocs., Inc.*, No. EDCV 10-0840-GHK, 2012 WL 137585, at *4 (C.D. Cal. Jan. 17, 2012) ("[T]he fact that this sanction can be imposed does not necessarily mean that it should.").

Here, FMI already has 1000's of emails from the relevant 2011 to 2013 time frame when Dr. Eltoukhy was an employee of Illumina.   A substantial number of those have been repeatedly cited by its experts and in its summary judgment briefing as alleged evidence in support of its unenforceability defense.   As such, even if emails were lost, the prejudice is not so great as to justify a termination of the entire litigation.[5]

In the alternative, FMI requests that it be permitted to present expert forensics testimony at trial as well as a waiver of privilege.   Neither is justified.   FMI's consultant has been in possession of the forensic image of Dr. Eltoukhy's computer since January 15, 2020.   Ex. 32. Despite this, FMI failed to provide any of his analysis until this Motion was filed, over 8 months later.   There is no excuse for FMI withholding Mr. Kopelev's opinions if it intended to use them at trial.   As for any waiver of privilege, there is again no reason for this.   Dr. Eltoukhy was deposed specifically on this issue for 5-hours, and FMI has more than sufficient information to determine that Dr. Eltoukhy did not destroy any evidence and did not intend to do so.

## V.   CONCLUSION

For the foregoing reasons, Guardant respectfully requests that FMI's motion be denied.

---

[5]   FMI also requests $6,000,000 as a punitive monetary sanction.   However, FMI provides no reason for that amount or any authority or case where such a significant sanction was awarded.

Dated:   October 15, 2020                   Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL &MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Garland Stephens (admitted pro hac vice)
Justin L. Constant (admitted pro hac vice)
700 Louisiana Street, Suite 1700
Houston, TX 77002
(713) 546-5011
(713) 546-5000
garland.stephens@weil.com
justin.constant@weil.com
*Attorneys for Plaintiff Guardant Health, Inc.*