

November 1, 2020

**VIA E-FILING**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building            **FILED UNDER SEAL**
844 N. King Street
Room 6124, Unit 26
Wilmington, DE 19801-3556

           Re:     Guardant Health, Inc. v. Foundation Medicine, Inc.
                    C.A. No. 17-cv-1616-LPS-CJB

Dear Chief Judge Stark,

Pursuant to Your Honor's October 30, 2020 Oral Order (D.I. 500), the parties submit this joint status report. The parties' positions are set forth below.

**Plaintiff's Position**

Guardant appreciates the opportunity to respond to the Court's questions and further address FMI's spoliation motion, all of which it takes very seriously.

After reviewing FMI's position at the oral hearing (as compared to over the last year or in its motion papers), and the specific issues about which the Court had the most questions, Guardant analyzed closely whether there was any spoliation at all.

As Guardant believes it demonstrates straightforwardly below in light of the Court's inquiries, there was no spoliation. Under the 2015 amendments to Rule 37(e) that added safeguards to ESI spoliation law, if information is not deleted or is not lost, there can be no spoliation sanction. Here, that is the case. Accordingly, Guardant structures this brief by explaining first and in logical order why the threshold hurdle of spoliation is not met. In the course of that, it answers this Court's questions.

First, the bodiless emails were the focus of FMI's motion. Of the six emails still without a body, two of them can be shown to have never had a body. As to the other four, if they had been in existence in Dr. Eltoukhy's Gmail account as of his deposition, they would have appeared in the March 2019 backup of his laptop, which was forensically shown to have been synced with his Gmail account. Those four emails in fact were not in his Gmail account in March 2019 and thus were not even deleted by Dr. Eltoukhy after his deposition. If they were not deleted, there can be no spoliation of those four emails.

The remaining issue on the bodiless emails is whether FMI was entitled to email unconstrained by the agreed-upon search terms. Magistrate Judge Burke correctly ruled that such an unconstrained production was not proper and there was no objection to his ruling (which makes it final) nor a reconsideration motion.

FMI's justification for such a production is that it was led to believe that only the emails that hit the agreed-upon search terms were on the March 2019 Backup it has known about for almost a year. That makes no sense. Why would a March 2019 Backup that existed long before the parties' negotiated specific search terms be limited to only the documents that hit the later-negotiated search terms?

Second, FMI admits it "shifted" to the October 2019 computer operations in its reply in support of this motion. But it had never asked about the supposedly missing files over the last year—even though it knew about Dr. Eltoukhy's Backup. And even at Dr. Eltoukhy's deposition it did not ask about those files to see if they were available. Only in its motion did it raise this issue. And, as explained below, the files it complained were deleted exist on the March 2019 Backup to the extent they existed in March 2019. The only reason this issue was not vetted over the last year is that FMI did not raise it until now. FMI's argument that Guardant should have investigated this issue over the last year even though FMI chose not to raise it is meritless.

The ▅▅▅▅ and ▅▅▅▅▅▅▅▅ emails were not deleted and there is no lost information meeting the standard of FRCP 37(e). Accordingly Guardant believes the trial should move forward on November 30th.

FMI refuses to engage on whether the threshold finding of deletion and lost evidence is satisfied. FMI contends that Guardant "sand bagged" it by proving that there was no spoliation or loss of information. FMI's argument stands the record on its head. FMI flatly admits that it "shifted" its argument from the bodiless emails to the October computer operations in its reply brief. The October computer operations were not even part of the argument in FMI's motion. FMI does not and cannot deny this.

FMI did not identify any particular files that it thought were deleted in October 2019 until its *reply* brief. Moreover, FMI still has not offered a plausible argument as to why it never raised the October computer operations—when it knew about the March 2019 Backup—for nine months from when its forensic analysis was performed. While a sanctions motion must be treated seriously by the accused party, there is also a duty borne by the movant to provide reasonable notice of the basis for its argument and there should be a fair opportunity to respond. As FMI shifted its argument, it is reasonable for Guardant to point out that the missing files are indeed on the back-up now that some specific files have been identified in reply and at oral argument.

FMI argues about the number of hours it had to respond. Guardant sought to begin the preparation of the joint report and to meet and confer early Saturday. FMI set the schedule that the parties followed.

FMI's refusal to engage on the question of deletion and loss of information speaks volumes about the merits. FMI instead attempts to inflame the Court by focusing on supposed bad faith. FRCP 37(e) includes protections against this type of rush to judgment. There must be a deletion of significant evidence or a loss of information before sanctions can be awarded. FMI does not establish that. Further, FMI's arguments about bad faith amount to a rehash of its rhetoric that does not advance the ball. The context, including the presence of backups, belies FMI's argument that Dr. Eltoukhy was attempting to deprive FMI of evidence.

### A. The Focus Of FMI's Motion Was The Post-Deposition Deletion, Not The October 2019 Computer Activity

FMI's spoliation motion does not even mention the October 2019 computer activity in the argument section. D.I. 468 at 10-20. At oral argument, FMI acknowledged that the October 2019 computer activity was not the focus of its motion. Ex. 1 at 50:1-2 (10/29/20 Hearing Tr.) ("[t]he focus of our initial brief was on the bodiless emails"). FMI does not dispute this.

FMI concedes that, when it accepted that the bodiless emails had been recovered from the March 2019 Backup, it "shifted" its argument in reply to the October 2019 computer activity. Ex. 1 at 50:5-7 ("Once we learned that those emails had apparently been recovered, of course we would shift to the deletions that took place in October."). FMI does not dispute this.

FMI's position shift belies it claims about the importance of the October 2019 computer activity.

### B. There Is No Spoliation Arising From The Post-Deposition Deletions

#### 1. Guardant Identified A March 2019 Backup

On December 3, 2019, Guardant informed the Court that it had located a backup that appeared to contain the pre-2014 bodiless emails from Dr. Eltoukhy's Gmail account. D.I. 286 at 2 ("Guardant has recently located a backup of Dr. Eltoukhy's older laptop amidst obsolete equipment that appears to contain the bodiless emails") ("March 2019 Backup").

As it turned out, Guardant produced 1,679 emails from Dr. Eltoukhy's Gmail account, including those that matched previous bodiless emails, confirming that it had indeed found an authentic backup that contained all the pre-2014 Gmail that could have been in his account at the time of his deletion a couple months later.

With Guardant's production from the March 2019 Backup in its hands early in the year, FMI did not challenge the bona fides of the March 2019 Backup, even though it had many months to do so. It also never requested a copy of or to forensically examine the March 2019 Backup. Likewise, in its motion briefing FMI did not challenge the bona fides of Guardant's March 2019 Backup.

At oral argument, for the first time, FMI vaguely expressed a question about the backup, claiming ignorance. The record does not support FMI's vague and belated challenge and FMI still does not explain its position. FMI blames Guardant for an inability to identify the basis for its position, which makes no sense.

Guardant discovered the March 2019 Backup of Dr. Eltoukhy's laptop, amongst over 100 computers and hard-drives in a store room. K. Moore Decl. ¶ 2.[1] An independent computer expert, Britton Moore, received the March 2019 Backup and determined—as a matter of forensic science—that it was fully synced to Dr. Eltoukhy's Gmail account and was up-to-date as of March 22, 2019. D.I. 486 ¶ 3. In its reply brief, FMI did not question Mr. Moore's declaration submitted

---

[1] The November 1, 2020 Declaration of Kim Moore is attached as Exhibit B.

in opposition that established the Backup was a complete sync of Dr. Eltoukhy's Gmail account as of March 2019. Instead, FMI shifted to the October deletion for its reply.

The March 2019 Backup of Dr. Eltoukhy's pre-2014 Gmail account is authentic, as proven by an independent forensic expert and the fact that extensive email was produced from that Backup that matched the bodiless emails. If there was not an authentic Backup, the email would not have matched up.

FMI's vague and belated challenge to the authenticity of the March 2019 Backup at oral argument is unfair. If FMI truly questioned whether the Backup was an authentic copy of Dr. Eltoukhy's Gmail account, it should have raised that issue long ago. As shown above, it is a meritless argument anyway that FMI has apparently abandoned.

### 2. Because Guardant Recovered A "Pre-Deletion" Copy Of Dr. Eltoukhy's Gmail File From March 2019, No Information Could Have Been Lost From His Deletion Of That File A Couple Months Later

As explained above, Guardant recovered—and its forensics expert still has—a copy of Dr. Eltoukhy's March 2019 Backup, including the pre-2014 email that were used to produce the complete versions of the bodiless emails. Dr. Eltoukhy obviously did not obtain any pre-2014 Gmail between March 2019 and a couple months later when he deleted his pre-2014 Gmail. So nothing unrecoverable could have been deleted by him after his deposition. FMI does not challenge the force of this persuasive logic.

Simply put, insofar as Dr. Eltoukhy had the pre-2014 Gmail after his deposition, they would also be on the March 2019 Backup from just a couple months before that exists to this day. There is nothing lost. Thus, FMI's arguments fail.

### 3. The Six Bodiless Emails Were Either Recovered Or <u>Not</u> Deleted

There are six bodiless emails that were required to be produced for which the body has not been located. Ex. 1 at 54:21-22 (FMI Counsel to Court: "Are you talking about the six emails that remain bodiless…"). FMI argues that, even though there are only a few required to be produced that remain without bodies, they could be important.[2]

If the emails were not recovered from the March 2019 Backup, they were not in Dr. Eltoukhy's Gmail account a few months later, and so were *not* deleted. It is important to note again that FMI does not challenge this logic. There is no spoliation.

---

[2] FMI argues below that the 6 emails were lost and misleadingly cites to cherry-picked portions of the hearing transcript as support. However, Guardant's counsel was clear that there is no lost information as a legal matter. Ex. 1 at 58:23-59:21 ("First, I want to really correct something that I said. I acknowledged that with respect to ▅ email that, you know, that there is an argument that it was lost, but there actually isn't. And I think that there is, just as a legal matter, that there is no lost information here.")

### a. Two Of The Bodiless Emails Never Had Bodies; Nothing Is Lost

Two of the bodiless emails never had content, including the ▬▬ email and the ▬▬▬▬▬▬▬▬ email. So there is no missing body that could have been deleted.

The origin of the missing body emails is from the original document collection in 2018 when Dr. Eltoukhy's Gmail was collected from a 2015 archive file of his Gmail on his 2018 computer. Constant Decl. ¶ 3.[3] As set forth in the Brandon Moore declaration without challenge, that "bodiless" error in the 2015 Gmail archive was an innocent and anomalous corruption event. D.I. 485-24 ¶ 6. Defendants' forensic expert studied the file and did not contest this. D.I. 470 ¶¶ 38-41. FMI still does not context this dated issue.

The ▬▬ and ▬▬▬▬▬▬▬▬▬▬▬▬ emails were discovered in Dr. Eltoukhy's March 2019 Backup Gmail file where there was no corruption issue—as shown by the production of over 290 complete emails that had appeared bodiless from the original 2018 document collection. Constant Decl ¶¶ 25-30. Both of these emails were bodiless in the March 2019 Backup, proving that they never had bodies because that Backup did not have the corruption issue. *Id*. The Constant Declaration confirms this, but this point is already proven by the fact of the March 2019 Backup.

In addition, the ▬▬▬▬▬▬▬▬▬▬ email looks like it has no content given the phrase followed by an ellipses. It was also found elsewhere in Guardant's massive document production at the beginning of a thread that is complete. Constant Decl. ¶ 30. And in that complete copy of the thread, it shows up as bodiless, further confirming that it never contained a body. *Id.* The remaining emails in the thread had bodies. *Id.* The ▬▬ email looks exactly like a test email one would send to one's self, which Dr. Eltoukhy regularly did. Constant Decl. ¶ 27. This further confirms all the other evidence that there is no body.

Because these emails have no body, there is nothing lost.

### b. The Four Other Bodiless Emails Were Not Present To Be Deleted After Dr. Eltoukhy's Deposition

The four other bodiless emails are really two threads. First, a three email ▬▬▬▬▬▬ thread. Second, a ▬▬▬ email. None of this email was in Dr. Eltoukhy's Gmail file at the time of his deposition. This is proven because neither of these email was on the March 2019 Backup. Constant Decl ¶¶ 24, 31. Guardant explained at this oral argument. Ex. 1 at 58:23-59:21. There is nothing new about it. The Constant Declaration just re-confirms this point. Because the email was not in his Gmail file post-deposition when he deleted his pre-2014 email, these emails were not spoliated at all.

Because these emails were not present when Dr. Eltoukhy deleted his pre-2014 Gmail after his first deposition, there is no viable spoliation claim based on them.

---

[3] The November 1, 2020 Declaration of Justin Constant is attached as Exhibit A.

### 4. FMI's Attempt To Fault Guardant For Not Producing Email That Did Not Hit Agreed-Upon Search Terms Under The Court's Order Should Be Rejected

The Court asked whether additional email should be produced from Dr. Eltoukhy's gmail file. For the following reasons, and others set forth in this statement, Guardant does not believe they should be produced.

Dr. Eltoukhy's Gmail account included a large amount of personal and irrelevant information including about his health and family. Magistrate Judge Burke evaluated the record and ruled that FMI could not obtain all of Dr. Eltoukhy's Gmail without a search term restriction. D.I. 191 ("By no later than August 13, 2019, Defendants shall provide Plaintiff with a list of reasonable search terms."); *see also* D.I. 289 ("To the extent that it has not already done so, Plaintiff shall run the agreed-upon search terms on all emails from the newly located Backup, and produce any relevant, non-privileged emails containing such term(s)."). FMI did not object to that decision, waiving further challenge. *Barr v. Capouillez*, 602 F. App'x 44, 50 (3d Cir. 2015) ("A party who fails to appeal a Magistrate Judge's pretrial ruling to the District Court, see Fed. R. Civ. Pro. 72(a), waives review of that ruling by this Court absent 'exceptional circumstances.'") (citing *Continental Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 254 (3d Cir.1998). Further, it never sought reconsideration of that decision over the last year. That should be unsurprising because it was a good and fair decision that permitted FMI to select search terms, which Guardant ran before reviewing and producing the emails as the Court instructed.

Now, FMI is asking for email that is outside the Court's Order that the parties agree to search terms to limit the supplemental production of email from Dr. Eltoukhy's Gmail account. FMI attempts to excuse its belated challenge to Magistrate Judge Burke's good decision, arguing that it somehow did *not* know that emails other than those that hit key search terms were discovered on the Backup.

FMI's argument makes no sense and it no longer attempts to defend it. As with so many of the points that FMI ignores in this submission, there is nothing improper about Guardant's position in this submission that would prevent FMI from defending its position. But it cannot because FMI's argument is unsupportable. After notifying the Court and FMI that the March 2019 Backup had been found, the Court was clear that any production would remain limited by the agreed-upon ESI terms. D.I. 289 (12/9/2019 Order) ("To the extent that it has not already done so, Plaintiff shall ***run the agreed-upon search terms on all emails from the newly located Backup***, and produce any relevant, non-privileged emails containing such term(s)."). There was no reason to believe that Guardant would be producing email that the Court specifically ruled it did not need to produce.

Why would the recovered email from the March 2019 Backup somehow only include those emails that hit the agreed-upon search terms? The search terms were agreed to in 2020. Their selection would not somehow retroactively confine what email was on the March 2019 Backup.

The Court's Order limiting Guardant's production to the agreed-upon search terms and Guardant's subsequent statement that its production was limited to those search terms should be enough to resolve the issue. But to reinforce the point, Guardant submits the declaration of Justin

Constant that walks through the parties' correspondence (in the possession of both parties) and demonstrates how it would have been objectively unreasonable for FMI to conclude that Guardant's Backup only had the emails that were called for by the Court-ordered search term agreement. Constant Decl. ¶¶ 6-12.

### C. FMI's Shift To Its Allegations About The October 2019 Computer Operations Also Fails

#### 1. The March 2019 Backup Contains The Supposedly Deleted Files

The Court asked whether the files that were the subject of the October 2019 computer operations should be restored. As explained below, they exist.

FMI's shift to its spoliation theory based on the October 2019 computer operations fails because even a quick analysis shows that the files that were supposedly improperly deleted are on the March 2019 Backup. This makes sense. Because there is a March 2019 Backup, Guardant has files deleted a few months later that supposedly relate to the pre-2014 time period.

FMI identifies 16 items that were supposedly deleted that it deems most relevant. Thirteen of those are present on the Backup so there is no lost information there. K. Moore Decl. ¶¶ 3-16. The other three are a ▓▓▓▓ folder, which includes a ▓▓▓▓ folder, which includes a file named ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. D.I. 470-3 at Entries 413, 415, 416. That these three are not on the March 2019 Backup makes sense because they were created in July 2019, after the March 2019 Backup.[4] Constant Decl. ¶ 16. But this is not a problem because that litigation search was conducted by litigation counsel, which still has that file. *Id.* FMI ignores all of these important facts.

There is no reason to believe the identified documents are missing based on the October 2019 computer operations because they are in the March 2019 Backup.[5]

#### 2. The Supposedly Deleted Files Were Collected, Reviewed And Produced As Appropriate

The 16 items that FMI identifies as being most relevant pertain to topics that were the subject of standard collection efforts in 2018. Litigation counsel had Dr. Eltoukhy's laptop and reviewed the materials on it for what appeared potentially relevant. It collected those. After term-searching and review for privilege and responsiveness, it produced some of the collected materials based on standard discovery procedures.

A further production of these files is unwarranted. There is no reason to believe the original collection efforts were unreasonable or that the 16 items identified are not cumulative of other documents that have been produced. Indeed, most of the documents FMI identifies appear to

---

[4] Google provides a tool called Google Takeout that allows users to export a copy of their Gmail emails to their computers.
[5] Given the short time period, Guardant has not confirmed that every single file that was the subject of the October 2019 computer operations are on the March 2019 Backup. But there is no reason to believe they are not to the extent they existed in March 2019.

pertain to technical details regarding the design and operation of Guardant's product introduced in 2014, a topic that has been the subject of major discovery and for which FMI has never suggested it has incomplete information.

### 3. FMI's Delay In Asking About The March 2019 Backup Is Unreasonable, Unfair And Belies Its Objection

FMI's forensic expert received the image of Dr. Eltoukhy's laptop on January 15, 2020. D.I. 470 ¶ 10.a. FMI knew since November 22, 2019 that Guardant had a backup of Dr. Eltoukhy's laptop. Constant Decl. ¶ 7. Yet, the first time FMI identified its concerns about the October computer operations was in this motion, nine months later. That is unreasonable, unfair and belies its objection.

The only explanation FMI offers for its lengthy delay is that it wanted to await Dr. Eltoukhy's deposition before asking Guardant if relevant files were missing or could be found on the Backup that FMI knew existed. That makes no sense. FMI never raised the issue with Guardant so Guardant could not have asked FMI to await Dr. Eltoukhy's deposition. In any event, Dr. Eltoukhy's deposition FMI did not identify any of the computer operations, files names or anything else to see if Dr. Eltoukhy knew anything about them. FMI simply asked if he remembered deletions in a time period almost a year earlier. D.I. 469-38 at 1000:8-1001:5. He said he did delete files from time to time but could not specifically remember doing so in that time period. *Id.* Rather than take the natural next step in the examination and ask about the specific filenames to focus the witness's recollection, FMI cut off its own examination and sat on the files. *Id.* Even after the second Eltoukhy deposition FMI still did not ask Guardant about the supposedly missing files to see if they were on the March 2019 Backup.

FMI's delay precluded the parties from locating the files, determining if they were responsive to requests, and whether they are on the March 2019 Backup.

FMI's lengthy delay in asking Guardant about the October computer operations belies its arguments based on those operations.

### D. Without Deletion Or The Loss Of Information, There Is No Spoliation

In 2015 safeguards that were added to FRCP 37(e) to address the excesses of spoliation litigation regarding ESI and its often inflammatory character. There is no sanction if there is no deletion of the information at issue or if that information is not lost. Advisory Committee Notes To FRCP 37(e) ("If the information is restored or replaced, no further measures should be taken."). This law is undisputed.

As explained above, there is no showing of deletion of the ▮▮▮▮▮▮ or ▮▮▮▮ information or loss of relevant information otherwise.

### E. Dr. Eltoukhy Did Not Delete Documents In Bad Faith

The Court has asked whether Dr. Eltoukhy should be heard by the Court before a bad faith finding.

8

Guardant's opposition explains that Dr. Eltoukhy did not delete documents to conceal that from litigation discovery. He did not act in bad faith and was merely trying to remove the Illumina confidential information from his personal possession, believing in good faith that his counsel had copies in light of Gmail emails being shown to him in his deposition. This is reinforced by Dr. Eltoukhy's knowledge at the time of the deletions that his computer had already been searched by litigation counsel and documents collected, Guardant likely had Backups, and, in the case of the October computer operations, that a computer forensic expert was going to study his computer.

If the Court reaches the question of Dr. Eltoukhy's intent notwithstanding the above showing that he either did not delete the information at issue or it was not lost, Guardant requests an oral hearing on the subject at which Dr. Eltoukhy may address the issue. FMI argues below that the video clips for Dr. Eltoukhy's deposition would be enough to assess Dr. Eltoukhy's credibility. However, the one-sided cross examination of a Dr. Eltoukhy with selective questioning is not sufficient for a fair assessment of his veracity nor did it allow Dr. Eltoukhy to fully explain his actions.

FMI argues that Guardant's in-house counsel should not be able to access a copy of the March 2019 back-up. But there are now multiple copies of that back-up, including one in the possession of Guardant's independent forensic expert, who confirmed that it is an authentic version of Dr. Eltoukhy's synced Gmail as of March 22nd.

### F. GN Netcom, Inc. v. Plantronics, Inc.

In *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833 at *7 (D. Del. July 12, 2016), this Court found that non-dispositive sanctions were appropriate where an executive instructed others to delete their emails. *Id.* at *2 ("I would suggest everyone immediately delete this message, thanks."; "Given the sensitive nature of this issue and the on going legal issues. please delete this entire string of emails for everyone that has been copied ASAP!"; "Team this is an inappropriate email. please delete immediately. Bill you should call Lou Ann directly for any information relating to competition or a competitive situation!!"). No such allegation exists here. FMI argues below that this case is similar to this situation because the executive claimed that he "thought IT personnel would nevertheless continue to have access to the deleted emails." *Id.* at *6. However, that is not at all similar to Dr. Eltoukhy's explanation or subsequent actions. Dr. Eltoukhy provided his laptop in 2018 *to litigation counsel* for collection. He did not just assume that IT personnel *had access*. Further, Dr. Eltoukhy was then questioned on emails involving his Gmail account at his deposition. He had no reason to believe that the collection failed to gather his Gmail.

### G. The Trial Should Go Forward As Planned On November 30th

The Court asked a series of questions about what should take place the week of November 30th. Based on the above showing that there was no spoliation, the trial should move forward on November 30th. Guardant does not believe any of the other options the Court proposed should go forward on that date.

### **Defendant's Position**

#### A. The Court Should Strike Guardant's Belated Attempt to Introduce New Evidence

9

Guardant's primary argument is that the Court should deny FMI's spoliation motion because no information has been lost. But Guardant has not met its "heavy burden" of establishing that FMI has not been prejudiced by its CEO's willful destruction of evidence. To the contrary, Guardant admits that it still does not know whether information was lost: "Given the short time period, Guardant has not confirmed that every file that was the subject of the October 2019 computer operations are on the Court March 2019 Backup."[6] Thus, Guardant's primary argument is without merit.

On the eve of trial, almost three weeks after Guardant filed its opposition to FMI's spoliation motion and three days after the October 29, 2020 hearing on FMI's spoliation motion (the "Hearing"), Guardant makes a belated and procedurally improper attempt to defeat FMI's spoliation motion by creating a brand new record with new arguments, new purported facts, and two new sworn declarations. The Court's request at the Hearing for a Joint Statement to address the Court's questions and other pertinent issues was not an opportunity to reopen the record and ambush FMI and the Court with new evidence to which FMI has no opportunity to respond. Guardant provided drafts of these new materials to FMI for the very first time only four hours before the deadline for filing this Joint Statement. FMI will not attempt to respond to Guardant's new evidence because it has no ability to do so. The Court should strike Guardant's new evidence and decide FMI's spoliation motion based on the record before the Court as of the Hearing and the parties' arguments during the Hearing.

Guardant's latest conduct here is emblematic of its repeated pattern of obfuscation over the past year of the facts relating to the willful destruction of evidence by its CEO on at least two occasions. It is now clear that Guardant did not investigate and did not take the matter seriously, as it made a strategic decision to oppose FMI's spoliation motion without conducting even a cursory investigation into its CEO's deletion of evidence in October 2019 to determine, among other things, whether those files were recoverable. When that approach did not work, and Guardant was confronted with the gravity of both its CEO's actions and its counsel's actions at the Hearing, Guardant reversed course, purportedly launching a new investigation into its CEO's misconduct so that it could ambush FMI and the Court with the untested results of that new investigation hours before this submission. The relevant facts demonstrating Guardant's undue lack of diligence are as follows:

Guardant has had more than a year to investigate and cure its CEO's bad faith deletion of evidence, since July 2019. It chose not to do so. In any event, Guardant received FMI's spoliation motion on September 24.[7] The motion itself and a supporting declaration from FMI's forensic expert provided a detailed account of Dr. Eltoukhy's deletions of numerous archive files and folders in October 2019, including a listing of the specific names of those files and folders. After receiving an extension from FMI, Guardant had three weeks to oppose FMI's motion.[8] Guardant made no attempt during these three weeks to inquire about whether the files deleted in October could be recovered. In its opposition, Guardant did not argue that the October files could be

---

[6] Plaintiff's Submission, at n. 1.
[7] D.I. 467.
[8] D.I. 485.

recovered, nor did it request the opportunity to look for those files. The only declaration submitted by Guardant made no mention of the October deletions. Instead, at the Hearing, Guardant's counsel said they *could* check the backup drive on which they recovered the bodiless emails to see if the October deletions are also located there.[9] Then, less than 72 hours later, Guardant for the first time disclosed a broad swath of new alleged facts and two new draft declarations along with its initial draft of this Joint Statement, in support of a new argument that it allegedly located *some* of the files that were deleted by its CEO days before his laptop was imaged. FMI has never been provided with the mysterious backup drive in question that Guardant purportedly located after its CEO destroyed evidence, but according to Guardant itself, it has been in Guardant's and its expert's possession for more than a year. Indeed, one of the declarations indicated that Guardant's in-house lawyer, Kim Moore, not only had access to the backup drive but recently accessed it for purposes of submitting his declaration.[10]

Guardant could have easily looked for the files during the three weeks Guardant had to oppose FMI's motion, as evidenced by the fact that it did so only hours after the Hearing. But Guardant did nothing. Trial is scheduled to begin in 29 days. The time for Guardant's attempt to meet its burden now to show that the emails are allegedly recoverable or lack of prejudice arising from the October (and the April) deletions has come and gone.[11] FMI has no reasonable opportunity at this late date to take the discovery necessary to address the new allegations or have its expert review them. The Court should strike the new evidence and reject Guardant's argument that its CEO's intentional destruction of evidence should have no consequence.

### B. FMI is Entitled to Sanctions

In view of the undisputed facts and Guardant's admissions at the Hearing, FMI believes the Court has more than sufficient evidence to find both bad faith and prejudice on the record that existed *before* Guardant's belated and procedurally improper attempt to create a brand new, one-sided record to which FMI has no opportunity to respond. Significantly, Guardant's belated submission does not even seriously contest the clear evidence of bad faith on the part of Dr. Eltoukhy shown in FMI's spoliation motion. Guardant's submission instead tries to walk back its counsel's admissions at the Hearing that there is undisputedly lost information by providing

---

[9] Tr. 39:24-40:7.

[10] Given the seriousness of Guardant's spoliation, it is unclear why Guardant's outside counsel yet again is allowing Guardant's in-house employees access to the evidence at issue.

[11] Guardant's attempt to blame FMI for its belated efforts to meet its burden on establishing lack of prejudice should be rejected. Guardant repeatedly engaged in unwarranted delay and obfuscation, insisting that FMI must wait until Dr. Eltoukhy's deposition to address critical questions about the destruction of evidence, and then repeatedly delaying making him available for deposition. At the Hearing, Guardant argued incongruously that it was somehow FMI's burden to inform Guardant immediately about the results from a forensic examination of a laptop that has been in Guardant's own expert's possession since November 2019. Although Guardant conceded at the Hearing that Dr. Eltoukhy "delete[d] things all the time" (Tr. 60:9-10), it made no effort, even after learning of his April 2019 deletions, to forensically examine the hard drive to find evidence of additional deletions, including those that occurred in October 2019.

11

attorney conjecture as to whether files "look[] like" they have no content to begin with. These speculative and untested excuses for the lost information should be rejected.

The prior record before the Court, including the parties' briefs and arguments on FMI's spoliation motion and the numerous exhibits and testimony cited therein, demonstrate Guardant's bad faith and prejudice. Moreover, the video clips from Dr. Eltoukhy's depositions submitted with FMI's reply declaration on October 23, 2020, allow the Court to assess Dr. Eltoukhy's credibility in response to direct questions regarding his spoliation of evidence. *See* D.I. 497, Exs. 56-61. Accordingly, FMI contends that the existing record is more than sufficient for the Court to grant the requested remedies for Guardant's spoliation of evidence. Sanctions should be granted to address the deliberate spoliation, regardless of whether Guardant belatedly can recover the documents intentionally deleted by its CEO.

For the reasons explained in FMI's briefs, the most appropriate sanction to remedy the prejudice suffered by FMI and to deter misconduct in the future is a judgment holding Guardant's patents unenforceable and dismissing the case. The record before the Court demonstrates bad faith. Guardant has not and cannot show a lack of prejudice, especially this long after the close of fact discovery. However, if the Court concludes that it requires an evidentiary proceeding to hear directly from Dr. Eltoukhy before granting appropriate sanctions, the hearing should be scheduled for the week of November 30th, and be limited to the issue of Dr. Eltoukhy's bad faith. If the Court does not dismiss the case after the hearing, the trial should be scheduled for as soon as practicable in 2021.

If the Court elects to move forward with an evidentiary hearing, the Court should immediately grant FMI interim relief in the form of immediate, compelled production of the documents that have been in Guardant's possession all this time (as explained below).

### C.     The Court Can Find Bad Faith Based on the Existing Record

At the Hearing, the Court agreed that "most, if not all, of what [FMI] said is undisputed, which is why it seems to me it turns on, the bad faith determination needs to turn on what was in Dr. Eltoukhy's head in April 2019 when he knew there was a litigation hold, he knew of the relevance of the things he was delet[ing]."[12] Rather than address these issues directly in today's filing, Guardant all but concedes that its CEO acted with bad faith, devoting only a few sentences – at the end of its seven page submission – to bad faith. FMI will not restate all of its arguments and the voluminous evidence demonstrating Guardant's bad faith spoliation of evidence, but instead will address the issues highlighted by the Court and admitted by Guardant at the Hearing.

The Court's primary concern at the Hearing was whether the record evidence demonstrated Dr. Eltoukhy's bad faith:

> Was he really actually thinking, you know, this is an additional copy of confidential materials I shouldn't have but I know my lawyer has all of them so at least I will make things a little better by getting rid of one set of them that I shouldn't have anyway **or was he thinking**

---

[12] 10/29/20 H'rg Tr. ("Tr.") 8:2-7 (emphasis added).

12

> **I have initiated litigation against my competitor. I'm asserting these patents against them. I don't want them to have this evidence.[13]**

Guardant's submission barely addresses this issue. The record evidence and applicable case law overwhelmingly establish that Dr. Eltoukhy acted with the latter bad faith intent. The manner in which Guardant has acted since the deletion confirms the bad faith. FMI's briefs cite numerous cases where courts have found bad faith and a high degree of fault of a spoliator based on identical or similar facts before the Court, including the Court's decision in *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833 at *7 (D. Del. July 12, 2016). In particular, the factors outlined below support finding bad faith on the current record.

### 1. Deletions by a Sophisticated CEO Who Understood His Obligations

Dr. Eltoukhy has been the CEO of Guardant since 2013. Prior to that – and contrary to Guardant's argument at the Hearing – he was the CEO of Avantome Inc., which was acquired by Illumina in 2008.[14] In addition to this lawsuit, Dr. Eltoukhy and Guardant have been involved in several high-stakes litigations, including: (1) a patent litigation filed by FMI against Guardant in 2016; (2) a false advertising litigation filed by Guardant against FMI in 2017; and (3) a patent litigation filed by Guardant against Personal Genome Diagnostics, Inc. in 2017 – on the same date this case was filed. Guardant was represented by, and worked closely with, experienced counsel in each of these cases who issued litigation hold notices.

Dr. Eltoukhy admits that he understood (a) his legal obligations to preserve all documents that might be relevant to disputed issues in the case, and (b) that such obligations continued throughout the pendency of the case.[15] Guardant also does not dispute that he understood the relevance of the documents he destroyed after his first deposition. The Court's articulation of Guardant's excuse – that Dr. Eltoukhy may have been thinking, "I know my lawyer has all of them" – is directly contradicted by his admission at his April 8, 2019 deposition:

> Q. Do you know if your attorneys ever searched your Gmail account for documents in this litigation?
>
> A. I'm not sure.
>
> Q. You don't know?
>
> A. No.[16]

In any event, even if the Court were to credit Dr. Eltoukhy's professed belief regarding counsel's preservation of his email and his supposed concern with possessing Illumina information (that he had kept for six years), this would not excuse his misconduct or negate a finding of bad faith based on the totality of the record evidence and the Court's prior decisions. *See GN Netcom*,

---

[13] Tr. 8:8-17 (emphasis added).

[14] These facts directly contradict counsel's representations at Hearing that Dr. Eltoukhy is a "first time CEO" who is "not sophisticated in litigation." Tr. 47:19-21.

[15] D.I. 468, at 6 (citing D.I. 469, Ex. 38, 781:17-783:17).

[16] D.I. 469, Ex. 27, 319:11-16.

2016 WL 3792833 at *7 (this Court finding bad faith and stating that a senior executive's conduct in intentionally deleting evidence could not be excused by his professed belief that he thought IT had preserved his emails).  Regardless of the excuses Dr. Eltoukhy may offer at an evidentiary hearing, the undisputed facts before the Court are more than sufficient to find bad faith.

### 2. Timing and Manner of Dr. Eltoukhy's Deletions

There is no dispute that Dr. Eltoukhy selectively deleted all pre-2014 email from his personal Gmail account *on both* his computer and Google's server shortly after his April 8, 2019 deposition, during which he was confronted with pre-2014 emails from the time he still was employed by Illumina. The deleted pre-2014 emails implicated key disputed issues in this case, including Dr. Eltoukhy's technical contributions to the claimed inventions and inequitable conduct in obtaining the asserted patents.[17]  There is also no dispute that Dr. Eltoukhy *again double deleted* an indeterminable volume of archive files and documents from his laptop – only days before Guardant imaged Dr. Eltoukhy's laptop to preserve its contents at FMI's request – by repeatedly accessing and emptying the trash folder on his laptop.[18]

> As the Court stated at the Hearing, this demonstrates bad faith:
>
> > It seems odd and possibly troubling to me that a witness who by this time you knew had done these deletions after his deposition, that he would be anywhere near the act of deleting things, trying to remove electronically stored information. Is there anything in the record about whether he talked to counsel about that? I'm not trying to breach privilege, but is there any explanation in my record? It just seems to me that you would want and someone acting in good faith would want to have nothing whatsoever to do with deleting documents from a laptop about to be turned over to counsel.
> >
> > …
> >
> > Wouldn't somebody acting in good faith with the proper intent, represented by very able counsel, say I don't want to get in trouble again. With hindsight we all know we should [sic] have done what I did in April. Here is my laptop, you figure out what to do with it. **That is not what happened here.**[19]

*See GN Netcom*, 2016 WL 3792833 at *7 ("the timing" of deletions after the filing of litigation and a motion to dismiss "strongly suggests an intent to deprive GN of discovery"); *see also id.* at *7 ("Another fact supporting the Court's conclusion that Mr. Houston's deletion of his own emails was undertaken to deprive GN of discovery are that he double deleted emails. That is, he deleted

---

[17] *See, e.g.*, D.I. 468, at 1, 5-6; D.I. 499, at 1.

[18] *See, e.g.*, D.I. 468, at 8-9 (citing Kopalev Decl.).

[19] Tr. 39:12-23, 40:13-18 (emphasis added).

messages not just from his inbox, but he also took the further step of deleting the deleted emails from his deleted items folder.").

### 3. Failure to Consult Counsel

There is no dispute that Dr. Eltoukhy did not consult counsel prior to any of his deletions:[20]

> THE COURT: It's undisputed that he did not ask you that, though?
>
> MR. REINES: That is correct, Your Honor. That is correct.[21]

*See GE Harris Railway Elecs. LLC v. Westinghouse Air Brake Co.*, 2004 WL 5702740 at *11 (D. Del. Mar. 29, 2004) (failure of executive to "consult with anyone when he destroyed documents" weighed "heavily in favor of imposing a serious sanction."); *Micron Tech. v. Rambus, Inc.*, 917 F. Supp. 2d 300, 318 (D. Del. 2013) (bad faith shown by failure to "inform outside counsel").

### 4. Failure to Promptly Inform FMI of the Deletions and Repeated Obfuscation

There is also no dispute that Guardant failed to promptly inform FMI of Dr. Eltoukhy's deletions.[22] At the Hearing, after questioning by the Court, Guardant's counsel admitted that they learned in July 2019 that there were no emails in Dr. Eltoukhy's Gmail account before 2014:

> THE COURT: Okay. But it is true that in July, I believe July 8th, 2019, you searched his emails on his search.
>
> MR. REINES: On his Gmail. On his Gmail account actually.
>
> THE COURT: His Gmail account, right. And you found nothing from the relevant time period.
>
> MR. REINES: That's correct, Your Honor.[23]

Guardant's counsel tried to argue that they did not learn of Dr. Eltoukhy's deletions until September 2019,[24] but that is flatly contradicted by their own email notifying FMI for the very first time that Dr. Eltoukhy had deleted all of his pre-2014 emails.[25]

---

[20] *See also, e.g.*, D.I. 468, at 1, 13; D.I. 289; D.I. 469, Ex. 38, 795:18-796:3 (Dr. Eltoukhy admitting that he did not confer with counsel before deleting his pre-2014 emails); D.I. 497, Ex. 58, beginning at 5:00 (Dr. Eltoukhy admitting in a video clip of his deposition that he understood he had a litigation hold obligation in this case, prior to deleting his emails).
[21] Tr. 44:12-15.
[22] *See* D.I. 468, at 4-6.
[23] Tr. 37:14-21; *see also id.* at 19:8-10.
[24] Tr. 37:22-38:5, 38:15-19
[25] D.I. 469, Ex. 35 at 9 (finally disclosing that "Dr. Eltoukhy then deleted older files containing messages and messages from his personal gmail account prior to 2014 from both the Google servers and his laptop. On July 8, 2019, Guardant's counsel reviewed Dr. Eltoukhy's personal

15

Regardless, Guardant's counsel admitted they did not inform the Court or FMI of Dr. Eltoukhy's deletions until months later in November 2019:

> THE COURT: They say that you didn't tell them until November 3rd, 2019. **At this point, you are not pointing to anything to tell me that that is wrong, i.e., that you told them before November 3rd, 2019. Is that fair?**
>
> MR. REINES: I'm sorry to have to do this. But Mr. Constant, do you know the answer to that question?
>
> MR. CONSTANT: I do. This is Justin Constant. **Your Honor, that is correct.** We, once we had learned of the deletion, we informed them on November 3rd.[26]

From the time that Guardant learned of Dr. Eltoukhy's deletions on July 8, 2019, until it came clean to FMI on November 3, the nearly hundred pages of correspondence (reflected in Ex. 35) shows that Guardant repeatedly engaged in "obfuscation and misrepresentations related to [Dr. Eltoukhy's] email deletion and its investigation of it," which further supports that Guardant acted "in bad faith, intending to impair the ability of the other side to effectively litigate its case." *GN Netcom*, 2016 WL 3792833, at *8. *See also id.* at *8 ("The Court's finding of bad faith is buttressed by Plantronics' conduct in connection with litigating the deletion issue."); *id.* at *13 (spoliator created "difficulties" for opposing party in "getting to the bottom of the deletion story"). Even then, Guardant refused to provide a straight answer to FMI's direct inquiries as to which of the bodiless emails Guardant had recovered from the backup drive. It never told FMI that it purportedly had recovered all but six of the bodiless emails until it filed its opposition to FMI's spoliation motion. Guardant's obfuscation was apparent at the Hearing, when it still could not provide a straight answer to the Court's simple question: "Can you point to anywhere where you directly told them before your brief we have been able to recover all but six of the bodiless emails?"[27] This pattern continues with Guardant's belated attempt today to introduce new evidence in an attempt to explain its actions.

In sum, the evidence summarized above, as more fully detailed in FMI's motion and supporting materials, demonstrates Dr. Eltoukhy's brazen disregard of his legal obligations and his effort to intentionally and willfully "destroy all the unfavorable documents" on at least two occasions so they could not be used by FMI in the litigation. *See Micron Tech.*, 917 F. Supp. 2d at 317 (finding spoliation was carried out in bad faith). For this reason, FMI does not believe an evidentiary hearing is necessary for the Court to find that Dr. Eltoukhy and Guardant destroyed evidence in bad faith.

### D.    The Court Can Find Prejudice Based on the Existing Record

---

gmail account via the Google website. At that time, the personal gmail account contained no messages prior to 2014.").

[26] Tr. 36:10-18 (emphasis added).
[27] Tr. 33:2-4.

16

This Court has stated that the "question of prejudice turns largely on whether a spoliating party destroyed evidence in bad faith." *GN Netcom*, 2016 WL 3792833, at *6 (*quoting Micron Tech.*, 917 F. Supp. 2d at 319). If the Court finds – as it should, based on the evidence – that Dr. Eltoukhy deleted evidence in bad faith, the burden shifts to Guardant to establish that FMI has not suffered prejudice as a result of those deletions. In this context, as the Court indicated, Guardant likely cannot meet its burden:

> THE COURT: Well, under the law, if I find that the deletions were bad faith, the burden is on you to persuade me that there is no prejudice, which in this context would mean you would have to persuade me that if it says ▓▓▓ or, you know, we're hiring somebody or whatever, that there is no plausible reason to think anything relevant was in the body, with which I think is a hard thing to persuade me of because we know from some of the others that the subject line has nothing to do with what the substance of the body of the email is.[28]
>
> ****
>
> THE COURT: All right. Well, I do have questions. So by your own acknowledgment, the bodiless emails don't exist. **There are six of them that are missing, at least one of which, even in a subject line, speaks to a relevant subject. So isn't it wrong to say that nothing is lost?**
>
> MR. REINES: **Yes**, but, you know, I am mostly leveraging off of what was being said by opposing counsel, right? The opposing counsel first says "virtually all", and then he said "all" later on, you know, **but you are correctly stating the fact.**[29]

In addition to the bodiless emails, additional evidence has been permanently deleted and is unrecoverable, including several archive files and folders Dr. Eltoukhy deleted from his laptop just before it was imaged whose content and volume remains unknown. As explained at the Hearing, those deleted archive files and folder could have contained 1,000 emails/documents/spreadsheets/reports or 100,000 emails/documents/spreadsheets/reports.[30] Moreover, from the limited filenames that are available, it is clear that, contrary to Guardant's arguments, Dr. Eltoukhy deleted files that are relevant to this litigation and which have not been produced to FMI.[31] For the reasons explained above, Guardant should not be given an opportunity at this late date to attempt to cure the substantial prejudice arising from its October deletions.

The evidence of bad faith and prejudice summarized above and in FMI's filings is sufficient to permit the Court to grant FMI's motion for sanctions, including to enter judgment

---

[28] Tr. 29:21-30:5.
[29] Tr. 29:5-16 (emphasis added).
[30] Tr. 52:17-20.
[31] D.I. 468, at 17; D.I. 495, at 10.

17

declaring Guardant's patents unenforceable based on FMI's inventorship and inequitable conduct counterclaims and defenses and dismissing the case. *See Micron Tech*, 917 F. Supp. 2d at 327.

### E. FMI's Request for Immediate Interim Relief

Separate and apart from the Court's ruling on the issues addressed above, FMI requests that the Court grant the following interim relief in view of the egregious facts of this case, the additional prejudice FMI has suffered as a result of Guardant's lengthy obfuscation and the current stage of these proceedings:

1. Guardant should produce all withheld documents from the 298 bodiless emails Guardant has been withholding within five (5) days of the Court's order. If Guardant claims privilege over any of those documents, FMI requests that the Court order Guardant produce a log for those documents, and to permit FMI to challenge any log entries, including through requesting *in camera* review.

2. Guardant should produce all non-privileged emails out of the 4,000-5,000 emails Guardant previously identified, regardless of responsiveness and/or search terms – with the exception of emails that are indisputably personal and unrelated to Guardant, the technology in this case or any other relevant issues – within seven (7) days of the Court's order. To the extent Guardant claims privilege over any of these documents, FMI requests that the Court require Guardant to provide a detailed privilege log and to permit FMI to challenge any log entries, including through requesting *in camera* review.

In addition, to the extent that the Court is inclined to consider at all the new evidence improperly submitted by Guardant for the first time today, FMI should, at minimum, be permitted to conduct additional discovery related to that new evidence that should include at least the opportunity to conduct its own forensic review of the "March 2019" back up drive and related discovery. In order to permit FMI a full and fair opportunity to conduct such discovery in advance of trial, the November 30 trial date should be put off.

In view of the seriousness of Dr. Eltoukhy's repeated spoliation of evidence, the limited number of documents at issue, and the already prejudicial delay caused by Guardant's counsel's obfuscation, this immediate interim relief is justified and not overly broad or unduly burdensome. Such relief does not and cannot cure the prejudice to FMI of having been deprived of relevant evidence throughout this case but arrests the harm ahead of trial, in the event the Court does not grant a dispositive sanction.

18

        Respectfully submitted,

        /s/ Brian E. Farnan

        Brian E. Farnan

cc: Counsel of Record (via E-Mail)