# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>FOUNDATION MEDICINE, INC.,<br><br>        Defendant. | C. A. No. 17-cv-1616-LPS-CJB<br><br>**FILED UNDER SEAL** |

## JOINT STATUS REPORT PURSUANT TO D.I. 504

**Plaintiff's Position**

As the Court will see, the parties have a disparate view of the proper issues for follow-up discovery on FMI's spoliation motion. Guardant's statements about the restoration of discovery in Sunday's Joint Statement (D.I. 502) spurred the Court to ask for the parties' views on further discovery. The discovery should focus on the restoration of the deletions and on the alleged bad faith. As explained below, FMI views the issues as far broader than that, including whether Guardant's original document collection in 2018 was complete.

    A.    The Post-Deposition Deletion

Dr. Eltoukhy's March 2019 backup synced his Gmail as of March 22, 2019. That means nothing has been lost as a result of the post-deposition deletion. Guardant submitted a forensic expert declaration confirming this. FMI did not contest this in reply. The production of full-bodied emails further confirms that the Gmail back-up exists. Guardant has asked FMI for any basis to contest the existence of the March 2019 Gmail back-up and it has identified none. Nevertheless, Guardant would be willing to allow an inspection of the March 2019 backup by FMI's independent forensics expert to confirm that Dr. Eltoukhy's Gmail account is synced.

In addition, of all the bodiless email produced, the only two unrestored threads are ▆▆▆▆▆▆▆▆▆▆. Guardant is willing to perform a search that will identify whether there are other ▆▆▆ type emails (bodiless emails from the 2015 archive that were deleted from the active Gmail account between 2015 and March 2019). Guardant will do so by looking at the 4000–5000 documents from the original 2018 collection and produce any of the bodiless emails that are not present on the March 2019 backup regardless of whether they hit search terms. Guardant is also willing to search for other backups to see if there might be complete copies of emails that could not be restored from the March 2019 backup (such as the ▆▆▆ email) and promptly produce them.

    B.    The October 2019 Deletion

Although it had the image of Dr. Eltoukhy's hard drive in January 2020, FMI identified deleted files for the first time as part of its spoliation motion. Guardant believes it has found these files. FMI has not asked Guardant to produce those files. Nevertheless, Guardant agrees to produce them after a privilege review. Guardant agrees to allow FMI's forensics expert to inspect images of the March 2019 backup to confirm that those files are present.

    C.    FMI Seeks Fact Discovery That Is Not Coupled To The Deletions

FMI's discovery requests seek unbridled discovery decoupled from the spoliation issues. FMI appears to seek this as some sort of punishment for Dr. Eltoukhy's deletions, which have not been found to be in bad faith, and even though the deleted materials have been restored as described in the Joint Statement and above. A punitive discovery penalty of this sort is not appropriate.

FMI seeks the unproduced remainder of the 4000-5000 documents from the ***original*** document collection in 2018 of all document custodians (Dr. Eltoukhy was just one) that did ***not*** hit any of the original 38 search terms. FMI had the opportunity to identify an additional 30 terms after that. The requested documents were not produced because they did not hit the combined 68 search terms or were privileged. Discovery of these documents is uncoupled to the spoliation

allegations. FMI argues that these 68 terms were agreed to before it knew of Dr. Eltoukhy's deletion. However, this is untrue. These were precisely the terms Judge Burke ordered on December 10, 2019 (D.I. 289) *after* FMI knew about the deletion and the backup. FMI did not object or seek reconsideration of that Order in the year since then. It has long known about all the deletions that are the basis of its motion.

FMI seeks the production of emails that were bodiless and are present on the March 2019 backup but do not hit the 68 search terms. Discovery of these documents is likewise uncoupled to the spoliation allegations. It is just an undue expansion of discovery.

FMI seeks to search all the backups to see what other discovery it can find. These backups contain sensitive personal, family, and health information as well as privileged information, among other concerns. FMI asks that it be able to obtain "relevant" information from these sources. This is uncoupled to the spoliation allegations.

FMI seeks undefined interrogatories and deposition testimony broadly regarding Guardant's document collection and preservation efforts. This is uncoupled to the spoliation issues. As explained above, if there are specific issues about the restoration of the deleted materials, Guardant is willing to address that. The proposed interrogatories and depositions do not appear directed to that. If FMI identifies topics it would like to depose Dr. Eltoukhy about that it has not yet had an opportunity to cover, Guardant is amenable to making him available.

    D.    <u>Guardant's Proposed Schedule</u>

Guardant proposes producing the documents and media identified by November 13th. The parties could file a 5-page joint statement on November 23rd to address the additional discovery. Guardant proposes a November 30th hearing before the Court in which Dr. Eltoukhy would address his intent and the spoliation issues. The parties could then brief the spoliation issues after that hearing as the Court requests. Based on the outcome of the hearing, the parties could propose to the Court what, if any, expert reports and depositions are appropriate if such witnesses are permitted to address the jury.

    E.    <u>Guardant's Proposed Additional Discovery</u>

As explained above, Guardant proposes the following additional discovery:

- An inspection of the March 2019 backup by an FMI independent forensics expert to confirm that Dr. Eltoukhy's Gmail account is synced and the presence of files from the October 2019 deletions.

- From the 4000-5000 email documents Guardant previously identified, Guardant produces any of the bodiless emails that are not present on the March 2019 backup regardless of whether they hit search terms.

- Guardant searches for other backups with other copies of bodiless emails that could not be restored and promptly produces any that are discovered.

- From the list of 389 files FMI identified as deleted in October 2019, Guardant produces all non-privileged files that can be recovered.

**Defendant's Position**

As the Court recognized during both recent hearings, Guardant has offered conflicting, incomplete, and vague information about the extent to which it has been able to recover information lost as a result of Guardant CEO Helmy Eltoukhy's intentional deletion of evidence shortly after his April 2019 deposition and again in October 2019. As a result, and consistent with the Court's statement that "FMI is entitled to some further discovery" (Nov. 2 H'rg Tr. at 46), FMI seeks the limited discovery below for an evidentiary hearing and subsequent briefing on FMI's request for sanctions as a result of Guardant's spoliation of evidence and litigation misconduct.

Contrary to Guardant's assertions, FMI has tailored its discovery requests to obtaining only the information necessary to fully assess bad faith and prejudice suffered by FMI. In the last few weeks alone, Guardant has progressively revealed the existence of numerous storage media from which it alleges deleted information may be recovered. Indeed, FMI did not know Guardant had purportedly recovered (1) all of the bodiless emails until Guardant's opposition on October 15, and (b) some of the deleted October files, on not one but two drives, until November 1. In contrast, Guardant and its experts have had access to all of the relevant media and information regarding Dr. Eltoukhy's deletions and alleged recovery efforts for over a year. FMI simply requests that its expert now have access to the same information—notably, the forensic images of the two drives on which Guardant now newly alleges all of the bodiless emails *and* October deleted files exist, and the original drive from which at least some of the original bodiless emails were extracted.

Guardant's proposal remains vague, confusing, and does not allow sufficient information or time for the required analysis regarding the deletions and alleged recovery. For example, Guardant has agreed to produce the 389 files which were deleted and whose filenames are known, but not the other 5 large files that contain an unknown number of files whose content and volume is still unknown by FMI. FMI cannot respond to Guardant's claims, and the Court cannot uncover the truth, based on Guardant's one-sided record. FMI's limited requests are intended to allow FMI and the Court to obtain sworn answers to necessary questions following forensic examination. Finally, FMI seeks production of the limited set of previously identified, allegedly recovered bodiless emails and documents, such that it may determine the full extent of Guardant's recovery efforts to date. FMI believes this discovery can be conducted expeditiously so that the matter can proceed to an evidentiary hearing and be resolved well in advance of the jury trial.

**A.   Pre-Hearing Discovery**

***Request 1: Forensic Images.***   Production of a full, complete forensic image of, and a complete and accurate chain of custody for:

a) the hard drive received by FTAC on August 7th, 2018 and forensically imaged by FTAC, as identified in paragraph 3 of the November 8, 2019 Affidavit of Britton Moore;
b) the two drives ("TLS Evidence ID numbers 056-0006 and 056-0007"), received by FTAC on November 18, 2019, and forensically imaged by FTAC, as identified in paragraph 3 of the October 15, 2020 Declaration of Britton Moore; and
c) a forensic image, hard drive, portable media, or other data storage media or back-up of Dr. Eltoukhy's computer that is closest in time to the date of suit in November 2017.

***Request 2: Recovered Bodiless Emails.***   Production of all 298 emails that were previously

identified as bodiless by FMI and purportedly recovered and withheld by Guardant on grounds that they did not hit certain search terms that the parties had agreed to prior to FMI learning of Dr. Eltoukhy's deletion of evidence.  Given the negligible volume, these emails should be produced regardless of responsiveness and/or search terms.  Guardant should produce a log describing any such document it withholds as privileged..

***Request 3: 4000-5000 Withheld Pre-2013 Emails.***  Production of all non-privileged emails out of the 4,000-5,000 emails Guardant previously identified on the August 5, 2019 teleconference – regardless of responsiveness and/or search terms that the parties had agreed to prior to FMI learning of Dr. Eltoukhy's deletion of evidence – unless they are indisputably personal and wholly unrelated to Guardant, its business, the claimed technology, Illumina, and/or any other relevant fact or issue in this case.  Guardant has represented that these emails are communications between Dr. Eltoukhy and Guardant employees/advisors from the critical time period of before 2013.  The Court has the inherent authority to order the production of these documents as a result of Guardant's deletion of the pre-2014 emails and obfuscating discovery of these documents.  Guardant also should produce a privilege log that may be reviewed and challenged by FMI.

***Request 4: Depositions and Interrogatories.***  To answer open questions concerning the steps taken by Guardant and/or its expert, FMI requests:  (1) five (5) interrogatories; (2) a 30(b)(6) deposition regarding Guardant's document collection, preservation, and recovery efforts; and (3) a deposition of Guardant's expert, Britton Moore, as set forth in the schedule proposal below.

FMI reserves the right to request additional data storage media following its expert's investigation and review of the materials produced in Request 1 above, and/or additional fact or expert depositions to the extent it becomes necessary after FMI's expert completes his analysis.

### B.     Proposed Pre- and Post-Hearing Schedule

Given the need to better understand the contours of Dr. Eltoukhy's spoliation, FMI proposes the following schedule, which would begin to run from the date the Court approves the schedule:

- ***Guardant Production Deadlines:*** (1) Request 1, within 7 days; and (2) Requests 2 and 3 within 14 days.  FMI's expert shall then have 30 days to conduct his examination.
- ***30(b)(6) Deposition and Interrogatories.***  Guardant will make its 30(b)(6) witness available within 30 days after FMI's expert has had an opportunity to analyze the Guardant Production.  Interrogatory answers will be due at least one week prior to the deposition.
- ***Expert reports.***  FMI and Guardant will serve each other with expert reports concerning spoliation 21 days after the 30(b)(6) deposition (notably Guardant's schedule does not even allow for expert discovery). The parties may then opt to serve expert rebuttal reports as necessary within 21 days of service of the opening expert reports,
- ***Expert depositions.***  Within 21 days of service of the respective rebuttal reports.
- ***Evidentiary hearing***.  As early as possible in light of the preceding discovery timeline, the Court's schedule, and the parties' availability.  The hearing will include testimony from Dr. Eltoukhy and may also require testimony from other witnesses.  In advance of the hearing, the parties shall meet and confer and submit a 5 page joint statement on the scope of the hearing.
- ***Post-hearing briefing.***  FMI shall file its opening post-hearing brief within 21 days after the hearing; Guardant shall file its opposition 14 days later; FMI will file its reply 7 days later.

| | |
|---|---|
| Dated: November 5, 2020 | Respectfully submitted, |
| FARNAN LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| */s Brian E. Farnan* <br> Brian E. Farnan (#4089) <br> Michael J. Farnan (#5165) <br> 919 North Market Street, 12th Floor <br> Wilmington, DE 19801 <br> (302) 777-0300 <br> bfarnan@farnanlaw.com <br> mfarnan@farnanlaw.com <br><br> *Attorneys for Guardant Health, Inc.* | */s/ Karen Jacobs* <br> Karen Jacobs (#2881) <br> Jeremy A. Tigan (#5239) <br> 1201 North Market Street <br> P.O. Box 1347 <br> Wilmington, DE  19899 <br> (302) 658-9200 <br> kjacobs@mnat.com <br> jtigan@mnat.com <br><br> *Attorneys for Foundation Medicine, Inc.* |