## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUARDANT HEALTH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 17-cv-1616-LPS-CJB |
| v. | ) |
| | ) |
| FOUNDATION MEDICINE, INC., | ) |
| | ) |
| Defendant. | ) |

## STIPULATION AND [PROPOSED] ORDER

WHEREAS the Court ordered that the parties "meet and confer and . . . submit a proposed order setting out the details and timing for completion of the spoliation-related discovery ordered by the Court, as well as a proposed range of dates for a one-day remote evidentiary hearing relating to the motion, and page limits and timing for post-hearing briefs," D.I. 513, at 11; and

WHEREAS the parties have conferred, and have agreed on many of the issues regarding the details and timing of spoliation-related discovery, except for 1) the ordering of certain discovery, 2) the scope of the pre-hearing statement, and 3) the scope of FMI's expert's review of the forensic images. The parties' competing proposals and position statements are set forth below; and

WHEREAS in **Section A** the parties describe the (1) agreed-upon and (2) disputed portions of the pre-hearing discovery schedule, and provide their respective position statements on the disputed issues therein; and

WHEREAS in **Section B** the parties describe (1) the agreed-upon process for FMI's expert to review the forensic images of the devices that the Court ordered Guardant to produce and (2)

the disputed scope of FMI's expert's review, and provide their respective position statements on the disputed issues therein.

IT IS HEREBY STIPULATED by the parties, subject to approval of the Court and the Court's decision regarding the few remaining issues in dispute, that the parties will follow the proposed schedule below:

## SECTION A: Pre-Hearing Discovery Schedule

### I.  Agreed-Upon Portion of Proposed Schedule

| Event | Deadline |
|---|---|
| Guardant will provide to Stroz Friedberg forensic images of:<br><br>a) the hard drive received by FTAC on August 7th, 2018 and forensically imaged by FTAC, as identified in paragraph 3 of the November 8, 2019 Affidavit of Britton Moore, and<br><br>b) the two drives ("TLS Evidence ID numbers 056-0006 and 056-0007"), received by FTAC on November 18, 2019, and forensically imaged by FTAC, as identified in paragraph 3 of the October 15, 2020 Declaration of Britton Moore. | November 30, 2020 |
| Guardant will produce all non-privileged emails from FMI's list of 298 bodiless emails (D.I. 470-4).<br><br>Guardant will produce all bodiless emails from the 4000-5000 identified on the August 5, 2019 teleconference that could not be located on the March 2019 Backup, regardless of whether they hit on search terms. | December 7, 2020 |
| Guardant will produce all non-privileged files that can be recovered responsive to the list of 389 files FMI identified as deleted in October 2019, regardless of whether they are responsive to discovery requests or search terms.<br><br>Guardant shall also produce a log describing any of the emails that it seeks to withhold as privileged.<br><br>Guardant will search for other backups to see if there might be complete copies of emails, including copies of bodiless emails, that could not be restored from the March 2019 backup (such as the CNV email) and promptly produce them.  Guardant will file a certification with the Court that it completed this search. | December 14, 2020 |
| Fact Discovery, Expert Discovery, and Pretrial Statement.  **The disputed ordering and scope of the statements is described in Section II below.** | December 2020–March 2021 |
| One-day remote evidentiary hearing | March 25, 2021 through April 15, 2021, depending on the |

| Event | Deadline |
|---|---|
|  | Court's convenience and availability |
| FMI will file its post-hearing brief (20 pages). | 14 days after the hearing |
| Guardant will file its opposition brief (20 pages). | 14 days after FMI's opening brief is filed |
| FMI will file its reply brief (10 pages). | 7 days after Guardant's opposition brief is filed |

## II.     Disputed Portion of Proposed Schedule

### A.      Plaintiff's Proposal

**Ordering of Discovery.**  In view of this Court's discovery order, both parties agree that that FMI's forensic expert should be permitted to review the forensic images and provide a report, and that a Guardant Rule 30(b)(6) deposition should follow the responses to any FMI interrogatories.  The parties do not agree on the proper sequence, however.  To ensure that Guardant can provide a proper response to FMI's interrogatories and 30(b)(6) testimony, FMI and its expert should first complete its review of the forensic images and provide any findings, before any depositions or interrogatory responses.  The forensics report will frame the issues for the discovery of Guardant.  Without that, there is a risk that Guardant will not be able to address the issues arising from the forensics review.

This mis-ordering of the process has already happened before resulting in a 19-page joint status report to the Court along with two declarations after a full hearing on the issue.  It should not be permitted to happen again.  FMI had possession of a forensic image created in October 2019 for nearly a year before raising an allegation of an improper deletion by Dr. Eltoukhy as part of its spoliation motion.  If FMI had raised the issue in a timely manner, Guardant would have been able to locate the deleted files—which it later did—and fully explain why the files were not relevant to

the case or duplicative of discovery already in FMI's possession. To prevent this disconnection, FMI should complete its review of the forensic image first, and provide its report, before proceeding to the other portions of discovery to address any concerns that arise.

FMI claims that its expert requires Guardant's responses to the interrogatories and 30(b)(6) testimony for his report. FMI, however, fails to articulate a single question that needs to be answered. As discussed in further detail in Section B below, the scope of the review should be commensurate with FMI's spoliation allegations. There is no reason that FMI's expert would need anything other than the forensic images to complete his forensic analysis.

<u>Pre-Hearing Statement</u>**.**  After completing discovery, Guardant requests that FMI submit a detailed statement of its spoliation allegations before the one-day evidentiary hearing. This will ensure that all the issues that need to be addressed, can be addressed, including any allegations against Dr. Eltoukhy.

This statement will also prevent the previous situation that occurred with FMI's original spoliation briefing. As FMI admitted, after seeing Guardant's opposition and explanation that most of the bodiless emails had been recovered, it "pivoted" to an entirely different set of spoliation allegations on reply. Further, Dr. Eltoukhy should have the opportunity to provide testimony regarding the full scope of FMI's allegations unlike what happened in his previous deposition. Despite its intention to accuse Dr. Eltoukhy of deleting 389 specific files in October 2019, FMI failed to ask a single question identifying any of these files by name so that Dr. Eltoukhy could explain whether they were relevant or duplicative. This should not be permitted to occur again.

FMI has argued that it is not necessary or warranted to submit such a statement because it will provide its position in the post-trial briefing. However, that will be too late. Dr. Eltoukhy

and Guardant should have the opportunity to address all of FMI's allegations at the hearing, before the Court, so that there will be no confusion.

Guardant's proposed schedule is below:

| **Plaintiff's Proposal** ||
| Event | Deadline |
|---|---|
| FMI will serve its opening expert report. | Within 21 days of Guardant certifying that its production of documents and forensic images is complete to the Court. |
| Guardant will serve a responsive expert report. | Within 21 days of service of FMI's opening expert report |
| FMI will serve a reply expert report, if necessary. | Within 14 days of service of Guardant's responsive expert report |
| Parties will complete any depositions of the parties' experts. The depositions will be conducted remotely. | Within 14 days of service of FMI's expert reply report |
| FMI will serve no more than 5 interrogatories. | Within 7 days of service of FMI's expert reply report. |
| Guardant will respond to FMI's interrogatories. | Within 21 days of service of FMI's interrogatories |
| Guardant shall provide a Rule 30(b)(6) witness regarding non-privileged information on the topic of Guardant's document collection, preservation, and recovery efforts. The deposition will be conducted remotely. | No earlier than 7 days after Guardant's interrogatory responses at a date mutually agreeable to the parties |
| FMI will serve a statement detailing the full extent of its spoliation allegations (limited to 5 pages). | 14 days before the one-day remote evidentiary hearing |

| Plaintiff's Proposal ||
| --- | --- |
| **Event** | **Deadline** |
| Guardant will serve a statement detailing its responses to FMI's spoliation allegations (limited to 5 pages). Guardant will combine the parties' statements and file it with the Court. | 7 days before the one-day remote evidentiary hearing |

**B.     Defendant's Proposal**

FMI proposes the schedule below for the following reasons:

**Scheduling of Expert Discovery.** Guardant's proposal that expert reports should precede discovery should be rejected because it would prevent FMI's expert from using the very discovery FMI requested and the Court ordered. At various times throughout this process, FMI's forensic expert has raised questions regarding Guardant's document collection, production and recovery efforts that FMI's counsel has been largely unable to answer because such information is known exclusively by Guardant and/or its counsel. Guardant's proposal would deny critical information to FMI's expert about the very issues that led the Court to postpone the trial and order an evidentiary hearing, including the issues that Guardant raised in new declarations filed in a status report after spoliation briefing and the hearing had concluded. As FMI requested and the Court ordered, Guardant must answer five interrogatories and produce a 30(b)(6) witness to testify as to Guardant's document collection, preservation, and recovery efforts. *See* D.I. 513, at 7; D.I. 507, at 4. Although Guardant has known this information since before and after July 2019 – when it first learned that Dr. Eltoukhy deleted his emails – such information remains a mystery to FMI, particularly considering Guardant's history of evasive and vague statements regarding these issues. Issues concerning Guardant's collection, preservation, and recovery efforts are relevant to FMI's forensic expert's opinions on spoliation-related matters and they involve technical concepts that are appropriately the subject of expert reports. FMI's expert should not be compelled to attempt to proffer a complete opinion on those issues without having the same level of access to

information concerning how exactly Guardant collected, preserved, and recovered the files/documents at issue from the various drives and other storage devices that Guardant has had all along.

Guardant gets it backwards when it objects that it cannot answer interrogatories or provide 30(b)(6) testimony without first reading FMI's expert's report. Guardant already knows all about its own collection, preservation, and recovery efforts. FMI, though, does not know those facts. FMI's expert therefore needs those undisclosed facts to form his opinions.

Guardant's proposal also seeks to unduly limit the scope of FMI's expert's review of the forensic images of the Guardant devices in precisely the same manner that the Court has already rejected. When the parties submitted their proposals for spoliation-related discovery, Guardant proposed that FMI's forensic expert's review be limited solely to "[a]n inspection of the March 2019 backup . . . to confirm that Dr. Eltoukhy's Gmail account is synced and the presence of files from the October 2019 deletions." D.I. 507, at 2. The Court implicitly rejected Guardant's limited proposal when it both (a) granted FMI's request for a 30(b)(6) deposition, interrogatories, and expert discovery, and (b) ordered Guardant to produce the forensic images without limiting the scope of FMI's expert's review in the manner previously requested by Guardant. *See* D.I. 513, at 7 (granting). Indeed, there is no basis to limit FMI's expert to solely addressing the issues that Guardant's declarants chose to raise in their belated (and untested) declarations (filed in a status report after both the close of briefing and the hearing on FMI's spoliation motion). Guardant's attempt to relitigate this issue via this scheduling order should be rejected.

Therefore, FMI respectfully requests that the Court adopt its proposal and order that FMI's opening expert report be due 14 days after FMI takes the deposition of Guardant's 30(b)(6) witness and that Guardant's scope limitations be rejected.

**Pre-Hearing Statement.**  The Court ordered that the parties "propose a schedule for completing this discovery *and then conducting* an evidentiary hearing on the sanctions motion." D.I. 513, at 7.  FMI's proposal is consistent with the Court's order, by requiring the parties submit a joint statement detailing how the evidentiary hearing should be conducted, including:  (a) the length of the hearing (which the Court has already indicated will be one day); (b) the witnesses who will testify at the hearing, in addition to Dr. Eltoukhy, if any (e.g., forensic experts if necessary and appropriate after the parties review the expert reports); and (c) the issues that will be addressed at the hearing.

Guardant, on the other hand, requests that FMI submit something akin to an Amended Complaint in advance of the hearing, which would "detail[] the full extent of its spoliation allegations," in essence requiring a *pre-hearing* brief (without any similar obligation on Guardant). The Court should reject Guardant's proposal because, among other things, it is (a) cumbersome, (b) beyond what the Court requested, (c) premature prior to, dependent upon, and subject to change based on, the testimony that will be offered at the evidentiary hearing, and (d) unnecessary because, under the parties' agreed-upon schedule, FMI will file a detailed 20-page post-hearing brief within 14 days after the evidentiary hearing.  As such, FMI maintains that a short, joint statement as outlined in FMI's proposal is appropriate.

For these reasons, FMI's proposed schedule is as follows:

| Defendant's Proposal ||
| Event | Deadline |
| --- | --- |
| FMI will serve no more than 5 interrogatories. | Within 10 days of Guardant certifying that its production of documents and forensic images is complete |

| Defendant's Proposal ||
|---|---|
| **Event** | **Deadline** |
| Guardant will respond to FMI's interrogatories. | Within 14 days of service of FMI's interrogatories |
| Guardant shall provide a Rule 30(b)(6) witness regarding non-privileged information on the topic of Guardant's document collection, preservation, and recovery efforts.  The deposition will be conducted remotely. | No earlier than 7 days after Guardant's interrogatory responses at a date mutually agreeable to the parties |
| FMI will serve its opening expert report. | Within 14 days of completion of the 30(b)(6) deposition. |
| Guardant will serve a responsive expert report. | Within 21 days of service of FMI's opening expert report |
| FMI will serve a reply expert report, if necessary. | Within 14 days of service of Guardant's responsive expert report |
| Parties will complete any depositions of the parties' experts.  The depositions will be conducted remotely. | Within 14 days of service of FMI's expert reply report |
| Parties will file a joint statement about the conduct of the evidentiary hearing, including length, witnesses to testify in addition to Dr. Eltoukhy (e.g., whether it is appropriate or necessary for forensic experts to testify), and the issues that will be addressed at the hearing.  Five days before this deadline to file the joint statement, FMI will provide its proposed list of issues to Guardant; Guardant will provide its list of issues two days later; and the parties will meet and cover over the remaining three days in an effort to narrow the list of disputed issues. | 14 days before the one-day remote evidentiary hearing |

**SECTION B: Process for Forensic Review by FMI's Expert**

The parties have agreed on a process for FMI's expert to review the forensic images of the devices that the Court ordered Guardant to produce, except for the scope of the review and whether there needs to be a procedure for the technical experts, Stroz Friedberg, to raise issues with FMI's counsel identified based on its review of the images.  The two remaining disagreements are highlighted in the following table and addressed by the parties' position statements set forth below:

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Guardant will provide to Stroz Friedberg no later than November 30, 2020 forensic images of a) the hard drive received by FTAC on August 7th, 2018 and forensically imaged by FTAC, as identified in paragraph 3 of the November 8, 2019 Affidavit of Britton Moore, and b) the two drives ("TLS Evidence ID numbers 056-0006 and 056-0007"), received by FTAC on November 18, 2019, and forensically imaged by FTAC, as identified in paragraph 3 of the October 15, 2020 Declaration of Britton Moore. | No dispute. |
| Guardant will provide a complete chain of custody for the forensic images. | No dispute. |
| Stroz Friedberg will review the forensic images of the two drives ("TLS Evidence ID numbers 056-0006 and 056-0007"), received by FTAC on November 18, 2019, **only to confirm the statements in the October 15, 2020 Declaration of Britton Moore, and to confirm that a complete copy of the emails on Dr. Eltoukhy's Gmail account as of March 2019 exists**. | Stroz Friedberg will review the forensic images of the two drives ("TLS Evidence ID numbers 056-0006 and 056-0007"), received by FTAC on November 18, 2019. |
| Stroz Friedberg may discuss and provide information about files and emails to FMI's counsel, excluding the contents of user files, emails, and the subject line of emails. However, Stroz Friedberg may discuss and provide any email subject lines that match the email subject line of a document already | No dispute. |

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| produced by Guardant. For subject lines not previously produced that Stroz Friedberg wishes to discuss or provide to FMI's counsel, Stroz Friedberg will first provide the subject lines to Guardant to review for privilege before discussing or providing the subject lines to FMI's counsel. | |
| Stroz Friedberg will not discuss or review the contents of any user files or emails. | To the extent Stroz Friedberg identifies files or information from its analysis that it believes FMI's counsel should review, Stroz will provide those files or information to Guardant for Guardant to consider whether to produce those files or information to FMI's counsel. If Guardant concludes that the files or information should not be provided to FMI's counsel, then—without disclosing the specific contents of the files or information—Stroz will be permitted to provide enough general information to FMI's counsel to allow FMI's counsel to understand what the issue is regarding the files or information at issue. The parties will then meet and confer regarding production of the files or information at issue. |
| The forensic images and all information contained therein will be designated Highly Confidential Attorney's Eyes Only under the protective order. | No dispute. |
| Stroz Friedberg will provide a declaration agreeing to the terms above. | No dispute. |

**Plaintiff's Position**

On November 17, 2020, this Court ordered that Guardant provide FMI access to a complete forensic image of Dr. Eltoukhy's computer prior to an evidentiary hearing on FMI's sanctions motion. D.I. 513 at 6-7. Any review of this forensic image should be limited to the spoliation allegations in FMI's motion.

FMI's motion was limited to only two specific instances of alleged misconduct: 1) Dr. Eltoukhy's removal of pre-2013 Gmail messages after his deposition in April 2019, and 2) deletion

of certain files prior to his computer being forensically imaged in October 2019. The backup forensic image predates both of these allegations. Therefore, the only relevance of the backup forensic image is whether it in fact contains a copy of these deleted files—specifically, a fully synced copy of Dr. Eltoukhy's Gmail account. Notably, FMI does not provide a single example of anything its expert would need to determine beyond this question that is relevant to its allegations. In sum, FMI's analysis does not require a document-by-document review.

Because of the limited relevancy of the backup, there is no reason why FMI's expert would need to request production of documents to FMI's counsel. The scope of the review should be focused on FMI's spoliation motion which would not require FMI's expert to identify documents for production.

Below FMI argues that its review of the forensic image should have no limits whatsoever. Indeed, FMI envisions that its expert will sort through Dr. Eltoukhy's "potentially relevant email and files" and flag them for FMI. This type of boundless review, however, is improper. Dr. Eltoukhy is Guardant's CEO, and the backup forensic image contains countless privileged documents and extremely sensitive trade secrets. There is simply no reason why a forensics analyst would need—or have the expertise—to review the *contents* of Dr. Eltoukhy's emails and user files and relay details back to FMI. FMI argues that "Guardant would effectively have carte blanche to decide whether FMI (and thus the Court) learn anything at all about those files." This is not true. Both parties agree (see above) that "Stroz Friedberg may discuss and provide information about files and emails to FMI's counsel, excluding the contents of user files, emails, and the subject line of emails." Thus, its expert can already discuss files generally without probing into the potentially privileged contents.

When filing its spoliation motion, FMI had known of the backup for over a year yet never requested access or questioned that it is a bona fide backup. This intrusive discovery should be focused on the issues identified in FMI's spoliation motion.

**Defendant's Position Statement**

**Scope of Review.** As explained above in FMI's position statement regarding the sequence of discovery, the Court has already rejected Guardant's attempts to limit the scope of FMI's expert's review of the relevant forensic images. *See supra* at 7-8. When the parties submitted their respective proposals for spoliation-related discovery, Guardant proposed that FMI's expert review be limited to "[a]n inspection of the March 2019 backup . . . to confirm that Dr. Eltoukhy's Gmail account is synced and the presence of files from the October 2019 deletions." D.I. 507, at 2. FMI, on the other hand, simply requested full production of the complete forensic images of, and a complete and accurate chain of custody for, the requested drives. *Id.* at 3. The Court granted FMI's request and did not limit the review of the forensic images as urged by Guardant. D.I. 513, at 7. Guardant now attempts to circumvent the relief already granted by the Court via this scheduling order, arguing that discovery should be cabined to issues raised in FMI's opening spoliation motion—even though Guardant raised a wide range of new issues both in its spoliation opposition brief and in its portion of the joint statement and two new declarations it filed after spoliation briefing had concluded. In light of all this, the Court delayed the trial and allowed FMI discovery on the facts relevant to at least two rounds of intentional deletions of evidence by Guardant's CEO and Guardant's belated argument that no evidence was lost. Now is the time for FMI and its expert to uncover these facts, including through a comprehensive review of the forensic images of the devices Guardant has been ordered to produce. Guardant's proposal would unduly limit FMI's expert's review to only "confirm the statements in the October 15, 2020

Declaration of Britton Moore, and to confirm that a complete copy of the emails on Dr. Eltoukhy's Gmail account as of March 2019 exists." Based on all of the facts that are before this Court, as well as the Court's prior ruling on the scope of discovery, FMI respectfully contends that there is no basis for such a severe restriction on the discretion of FMI's expert to review and analyze what he believes is necessary to opine on spoliation-related issues. Forcing FMI's expert to limit his review to confirm the accuracy of statements Guardant chose to include in its expert's declaration would be unduly restrictive and unfair. The restrictive measures the parties have agreed to that will govern FMI's access to information on the forensic images provide more than sufficient protections to Guardant. Accordingly, FMI requests that the Court reject Guardant's attempt to unduly limit the scope of its expert's forensic analysis.

**Procedure for Elevating and Resolving Disputes about Relevant Technical Information.** FMI also disagrees with Guardant's proposal that the technical experts at Stroz Friedberg should be barred from flagging for FMI any details whatsoever about potentially relevant emails or files that Guardant declines to produce to FMI. During the course of their review, the experts at Stroz may identify files or emails that relate directly to the spoliation issue. Both FMI and Guardant agree that, under those circumstances, Stroz should first contact Guardant to see if Guardant agrees to share those files with FMI. If Guardant agrees, there is no issue. But if Gurdant refuses, without a process akin to what FMI proposes here, FMI would not know that those files even existed (let alone whether they should properly be produced to FMI). In essence, Guardant would effectively have carte blanche to decide whether FMI (and thus the Court) learn anything at all about those files. FMI thus proposes that Stroz be able to advise FMI of the existence of the files, without sharing any particulars about that information with FMI. The parties

would then meet and confer about whether the files should be produced.   A process thus would be in place to determine whether additional documents should be produced.

- 17 -

| | |
|---|---|
| Dated: November 24, 2020 | Respectfully submitted, |
| FARNAN LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| */s/ Brian E. Farnan* | */s/ Karen Jacobs* |
| Brian E. Farnan (#4089) | Karen Jacobs (#2881) |
| Michael J. Farnan (#5165) | Jeremy A. Tigan (#5239) |
| 919 North Market Street, 12th Floor | Sarah Simonetti (#6698) |
| Wilmington, DE 19801 | 1201 North Market Street |
| (302) 777-0300 | P.O. Box 1347 |
| bfarnan@farnanlaw.com | Wilmington, DE  19899 |
| mfarnan@farnanlaw.com | (302) 658-9200 |
| *Attorneys for Guardant Health, Inc.* | kjacobs@mnat.com |
| | jtigan@mnat.com |
| | ssimonetti@mnat.com |
| | *Attorneys for Foundation Medicine, Inc.* |

SO ORDERED on this _____ day of _____ 2020.

_____
J.