IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GUARDANT HEALTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1616 (LPS) (CJB) |
| | ) | |
| FOUNDATION MEDICINE, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**FOUNDATION MEDICINE, INC.'S PRE-HEARING STATEMENT REGARDING ITS MOTION FOR SANCTIONS BASED ON SPOLIATION OF EVIDENCE (D.I. 467)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Foundation Medicine, Inc.*

OF COUNSEL:

Eric J. Marandett
G. Mark Edgarton
Sophie F. Wang
Diane C. Seol
John C. Calhoun
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

**Confidential Version Filed: April 30, 2021**

**Public Version Filed: May 18, 2021**

Foundation Medicine, Inc. ("FMI") submits this pre-hearing statement pursuant to the Court's order dated December 17, 2020 (D.I. 517), requiring FMI to identify "precisely what spoliation it intends to prove at the evidentiary hearing, with as much clarity as it can, including by identifying which witness(es) it intends to have testify and documents on which it will rely."

## I. INTRODUCTION

Over the past two years, FMI has spent countless hours and resources investigating what the Court described as "very serious" allegations underlying FMI's Spoliation Motion. *See, e.g.*, D.I. 467; D.I. 468; D.I. 495; D.I. 513, at 5. Underlying these allegations are the undisputed, intentional, and willful deletions of evidence on at least two occasions by Guardant's co-founder and CEO, Dr. Helmy Eltoukhy. On the first known occasion, Dr. Eltoukhy deleted all of his pre-2014 Gmails from his computer and the Google servers weeks after his April 2019 deposition made it clear that such evidence was relevant to (and supportive of) FMI's inequitable conduct and inventorship counterclaims and defenses. Dr. Eltoukhy admits that, at the time he deleted his emails, he fully understood he was under a legal obligation to preserve those documents but deleted them anyway without consulting counsel. This misconduct was uncovered only after (a) Guardant produced numerous "bodiless" emails, *i.e.*, emails that were missing *all* text other than the date/to/from/cc/subject line; and (b) in the course of investigating – at FMI's request – whether complete versions of those emails could be recovered, Guardant finally disclosed that it could not obtain the original emails directly from Dr. Eltoukhy's Gmail account because he had deleted them from both his laptop and the Google servers. Incredibly, on a second occasion in October 2019, while the parties were addressing the significant issues caused by the deleted Gmails, Dr. Eltoukhy committed a second purge of nearly 400 files from his laptop just days before it was to be forensically imaged at FMI's request. In addition, both parties' experts have opined that Dr. Eltoukhy deleted documents on or before March 22, 2019, despite the fact that he has been under

a litigation hold since at least as early as 2016. Ex. 7 (K. Moore Dep. Tr., 3/2/2021), at 44:5-15; Ex. 4 (Moore Supplemental Rebuttal)[1], at ¶¶7, 14, 20; Ex. 3 (Kopelev Supplemental), at ¶¶13-16.

At his Court-ordered second deposition, Dr. Eltoukhy admitted that he performed a "batch-delete operation" of all of his pre-2014 Gmails following his April 2019 deposition. *See* Ex. 6 (Eltoukhy Dep. Tr., 9/18/2020), at 793:5-17. When asked about the October deletions, Dr. Eltoukhy claimed not to recall whether he deleted files from his computer in the days before it was imaged, but that there are "certain things" he "routinely" deletes in the "normal course of business." *See id.*, at 1004:16-1005:3. FMI filed its Spoliation Motion on September 24, 2020, citing (a) 298 bodiless emails from the key pre-2014 time period for which Guardant had not produced complete versions (Kopelev Ex. 4); and (b) nearly 400 additional files that Dr. Eltoukhy deleted in October 2019 (Kopelev Ex. 3). *See* D.I. 467; D.I. 468; D.I. 470.

After months of supplemental discovery and painstaking analysis of voluminous data by the parties' forensic experts, the expert opinions confirm that the full extent of data loss resulting from Dr. Eltoukhy's deletions cannot be ascertained. For the vast majority (but not all) of the 298 bodiless emails originally identified in the Spoliation Motion, Guardant purports to have recovered corresponding full-bodied versions from a "March 2019 backup" laptop found by its counsel in a storage room approximately seven months after Dr. Eltoukhy's deletions of his Gmails. However,

[1] On April 26, 2021, Guardant emailed to FMI a proposed supplemental report -- not authorized by the Court's schedule -- offering new opinions regarding certain bodiless emails produced by Guardant on March 27, 2021, and requested FMI's consent. FMI conditionally agreed not to oppose Guardant's supplementation if Guardant would agree not to oppose a supplemental responsive report from FMI's expert addressing the new opinions raised in Guardant's supplemental report. Both supplemental reports are attached hereto as Exhibits 3 and 4. Based on the parties' communications to date and the substance of the reports, FMI anticipates that both "proposed" supplemental reports will be agreed upon by the parties, and that the experts will testify to those opinions at the evidentiary hearing on May 13, 2021, as requested by the Court. To the extent Mr. Moore's supplemental report is considered, Mr. Kopelev's supplemental report should also be considered.

eight of these previously identified emails remain bodiless, *i.e.*, no full-bodied versions have been recovered by either FMI or Guardant (the "Eight Bodiless Emails").

Additionally, on March 27, 2021, in response to requests made by FMI during the forensic expert review process for unproduced documents containing previously agreed upon search terms, Guardant produced nearly 7,000 additional emails from Dr. Eltoukhy's Gmail account dated from 2011 and 2012. These documents are thus among the very pre-2014 Gmails that Dr. Eltoukhy deleted following his April 2019 deposition. Although *thousands* of additional bodiless emails appeared in this production, Guardant said nothing about this to FMI, even though the Court-ordered process designed to "get to the bottom" of these issues was long underway. Guardant also returned 274 emails to Illumina, Dr. Eltoukhy's former employer, which Illumina then produced to FMI. Although Illumina's production contained nearly 100 bodiless emails, Guardant once again said nothing about this to FMI. Instead, FMI had to again raise these issues with Guardant and expend substantial time and resources in a painstaking effort to determine how many of these thousands of bodiless emails lacked a corresponding full-bodied version. The remaining bodiless emails include (i) the Eight Bodiless Emails; and (ii) 443 additional bodiless emails (nearly 15% of Guardant's total production on March 27, 2021), which Guardant confirmed – for the first time in its rebuttal expert report on April 6, 2021 – lacked full-bodied versions. Although many of the additional bodiless emails may not be relevant to the issues in this case based on their subject lines, it is impossible to determine with certainty whether they may have contained additional relevant content. As explained in FMI's Spoliation Motion, many directly relevant emails in this case have innocuous subject lines. *See, e.g.*, D.I. 468, at 7, n.7 (citing D.I. 469, Exs. 9, 10, 11, 18, 20); *see also* Ex. 2 (Kopelev Reply), at ¶25, n.10 (citing Kopelev Exs. 24-25). It is the opinion of FMI's expert that there are 434 emails that remain bodiless. Ex. 3 (Kopelev Supplemental), at ¶16 (citing

Kopelev Ex. 28). A complete list of the 434 bodiless emails that remain bodiless is attached hereto as Kopelev Exhibit 28 and further explained in Mr. Kopelev's Supplemental Expert Report. *See* Ex. 3 (Kopelev Supplemental), at ¶14, n.6 (citing Kopelev Ex. 28).

In addition to these bodiless emails, there remains at least one .zip archive file from Dr. Eltoukhy's October deletions (containing an unknown volume of data with unknown content) that has still not been recovered. Although Guardant has recovered files with file names that match most of the other nearly 400 files deleted by Dr. Eltoukhy, there is no way to forensically determine whether those files are in fact the identical files that were deleted in October 2019.

The evidence supporting FMI's spoliation allegations is set forth in (i) the extensive record already before the Court in the materials submitted with FMI's Spoliation Motion and Reply (D.I. Nos. 467; 468; 469; 470; 495; 496); (ii) the Opening, Reply and Supplemental Expert Reports of FMI's forensic expert, Sergio Kopelev (the "Kopelev Reports," summarized below and attached hereto as Exhibits 1-3); and (iii) the additional evidence and argument that will be offered at the evidentiary hearing and/or in FMI's post-hearing briefing.

FMI intends to prove through the extensive record evidence and at the hearing that (i) Dr. Eltoukhy deleted evidence in bad faith, in an attempt to conceal directly relevant and damaging evidence from FMI; (ii) actual data was lost, and the full extent of additional data loss cannot be determined; and (iii) the destruction of evidence prejudices FMI. Because Dr. Eltoukhy deleted evidence in bad faith, the burden and consequence of any uncertainties regarding the extent of the loss of relevant evidence must fall with Guardant. Based on the record evidence, Guardant cannot meet its burden to establish lack of prejudice to FMI. *See, e.g.*, *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 319 (D. Del. 2013). For these reasons, FMI asks the Court to sanction Guardant and Dr. Eltoukhy under Fed. R. Civ. P. 37 for intentional spoliation of evidence.

Alternatively, even if the Court were to find that Guardant's counsel was able to recover all of the evidence despite Dr. Eltoukhy's efforts to delete it, in view of Dr. Eltoukhy's egregious behavior and the totality of Guardant's conduct, it is appropriate and warranted here for the Court to sanction Guardant pursuant to its inherent authority. FMI has been substantially prejudiced by the loss of evidence and the unnecessary expenditure of countless hours and enormous expert and attorneys' fees in its now two-year investigation of Dr. Eltoukhy's misconduct.

## II. DR. ELTOUKHY DELETED EVIDENCE IN BAD FAITH

The extensive evidence surrounding Dr. Eltoukhy's multiple deletions – across time, computers, and Google servers – and in view of his known preservation obligations, demonstrates bad faith. It is undisputed that Dr. Eltoukhy deleted all of his pre-2014 Gmails from his laptop and from the Google Servers after he was deposed for the first time in this case. Dr. Eltoukhy was motivated to delete these emails after he was confronted with documents at his deposition that (i) showed his material contributions to the inventions claimed in the patents-in-suit; and (ii) revealed the incriminating nature of his misappropriation of Illumina confidential documents and his fraud on the Patent Office. *See, e.g.*, D.I. 168, at 18-35; D.I. 327, at 1-22; D.I. 419, at 4-18; D.I. 482. Dr. Eltoukhy knew these Gmails would contradict his testimony in this litigation about his purportedly limited involvement with Guardant while he was still employed at Illumina.

Dr. Eltoukhy was aware of his obligation to preserve documents. He has been subject to a litigation hold since at least as early as 2016, and understood that the emails he deleted were from a key time period in the case. He nonetheless intentionally and selectively deleted emails, without consulting his attorneys or anyone else at Guardant, in an effort to deprive FMI of discovery. *See* D.I. 468, at 1, 4-6, 11-14 (and documents cited). The undisputed evidence also shows that Dr. Eltoukhy deleted additional documents, files, and emails from his laptop in October 2019, days before it was to be forensically imaged at FMI's request. Indeed, he not only moved those files to

the trash, he "double deleted" them by emptying the trash, in an attempt to ensure that relevant files would be permanently destroyed. *See id.* at 12. Moreover, Guardant's own expert suggests that Dr. Eltoukhy may have engaged in additional deletions prior to March 22, 2019. *See supra* p. 2. Whether some or all of the deleted evidence could ultimately be recovered does nothing to diminish Dr. Eltoukhy's bad faith actions.

Because Dr. Eltoukhy's deletions were made in bad faith in an attempt to conceal relevant and damaging information from FMI, it is Guardant's burden to establish that FMI was not prejudiced by the deletions. *Micron Tech., Inc.*, 917 F. Supp. at 319. It cannot do so. As explained below, Mr. Kopelev's investigation and opinions establish that Dr. Eltoukhy's deletions resulted in actual data loss, and that the full extent of additional data loss is unknown.

## III. <u>DR. ELTOUKHY'S DELETIONS RESULTED IN ACTUAL DATA LOSS, AND THE FULL EXTENT OF DATA LOSS CANNOT BE DETERMINED</u>

As of December 17, 2020, the date of the Court's Memorandum Order, the critical question before the Court—in addition to whether Dr. Eltoukhy deleted evidence in bad faith—was whether his deletions resulted in any lost data. More specifically, the outstanding questions included (1) whether full versions of certain bodiless emails existed and could be recovered, and (2) whether the 389 files deleted by Dr. Eltoukhy in October 2019 could be recovered. As part of the supplemental discovery ordered by the Court to investigate these issues, Mr. Kopelev examined a total of eight items of evidence received from Guardant that contained over 4 terabytes (TB) of data spanning many years, including images of (i) Dr. Eltoukhy's laptop as of October 2019; (ii) Dr. Eltoukhy's "then-current laptop" from March 2019 (the purported "March 2019 Backup"), located by Guardant's counsel in an IT storage room; (iii) the original data that Guardant collected from Dr. Eltoukhy as part of its initial collection and production efforts in 2018; and (iv) Time Machine Backups (macOS software that can create backups of selected files and folders) from

2014 and 2015. *See* Ex. 1 (Kopelev Opening), at ¶¶19-27.

As a result of this extensive discovery and review, FMI will prove that data was lost and the following spoliation occurred, as summarized in the Kopelev Reports. *See* Exs. 1-3.

**A. The October 2019 Deletions Resulted In The Loss Of A .Zip File Containing An Unknown Volume Of Data**

There can be no dispute that Dr. Eltoukhy's deletion of files in October 2019 (specifically identified by FMI in D.I. 470, Ex. 3 (Kopelev Ex. 3)) resulted in the loss of at least the file named "Files.zip." The content and volume of "Files.zip" is unknown and cannot be forensically recovered or determined. It is permanently lost. Furthermore, with respect to the remaining files deleted by Dr. Eltoukhy in October 2019, Guardant has located and produced, from the so-called "March 2019 Backup," files and documents that appear to have the same file names as the files deleted in October 2019. Mr. Kopelev has opined that there is no way to determine with certainty whether the files and documents Guardant found are, in fact, the exact files and documents that Dr. Eltoukhy deleted in October 2019. *See* Ex. 5 (Guardant's Responses), at 7; D.I. 502-A, at ¶ 6. This is because concluding that the documents deleted in October were recovered simply because they share names with files located on the "March 2019 Backup" would violate basic tenets of forensic analysis. Ex. 1 (Kopelev Opening), at ¶¶ 78-86; Ex. 2 (Kopelev Reply), at ¶¶ 10, 45-49.

**B. There Are Bodiless Emails For Which No Full-Bodied Versions Have Been Recovered**

It is also undisputed that Dr. Eltoukhy deleted emails and files on at least two other occasions. Even after forensic reviews of numerous legacy devices kept in storage, including the so-called "March 2019 Backup," neither expert can opine that all of the data that was deleted could be recovered. Guardant has also continued to produce thousands of additional bodiless emails to FMI without explanation, forcing FMI to expend time and resources to investigate the ever-

changing total number of bodiless emails for which no full-bodied versions have been recovered.

Moreover, ten days after the service of FMI's reply expert report, less than 48 hours before FMI's expert was set to be deposed and three days before Guardant's expert was set to be deposed, Guardant served a proposed (and unauthorized) supplemental report from its expert offering new opinions regarding the additional 443 bodiless emails produced by Guardant on March 27, 2021 and previously addressed in Guardant's rebuttal expert report. As a result, the depositions of the parties' experts were continued by several days so that FMI could analyze the new issues raised in the supplemental report and respond to such opinions in a supplemental report from its own expert. Consequently, FMI is filing this prehearing statement without the benefit of either party's forensic expert's deposition testimony. For these reasons, FMI reserves its right to supplement this pre-hearing statement as necessary and appropriate based on the expert deposition testimony.

As set forth in Mr. Kopelev's supplemental report, the experts now appear to agree that there are at least 14 bodiless emails (four of the Eight Bodiless Emails and ten of the additional bodiless emails produced by Guardant on March 27, 2021) for which Guardant could not recover full-bodied versions. Ex. 3 (Kopelev Supplemental), at ¶¶14-16, n.6 (citing Kopelev Ex. 28). By Guardant's own reasoning, these 14 emails were present in Dr. Eltoukhy's synced Gmail account after March 2019 (and thus likely weeks later when he batch-deleted all pre-2014 Gmails). *Id.* The experts also now appear to agree that (1) there are an additional 420 bodiless emails (four of the original Eight Bodiless Emails and 416 of the additional bodiless emails produced by Guardant on March 27, 2021) for which Guardant could not recover full-bodied versions; and (2) these 420 emails were likely deleted before March 22, 2019. *Id.* Included in this set of 420 bodiless emails are 236 bodiless Google Alerts, which are known to always have content in the body of their email. *See id.*; *see also* Ex. 2 (Kopelev Reply), at ¶¶35-36.

Guardant's expert speculates that certain of the remaining bodiless emails were always bodiless (and therefore that no data was lost as a result of Dr. Eltoukhy's deletions), but FMI's expert opines it is impossible to determine with certainty whether the bodiless emails ever contained additional content and/or attachments. This is because, among other things, Dr. Eltoukhy deleted the original emails from the Google Servers, and Guardant failed to adequately collect from or preserve his Google account until months after those deletions occurred. *See, e.g.*, Ex. 1 (Kopelev Opening), at ¶¶60-74; Ex. 2 (Kopelev Reply), at ¶¶9, 24, 34.[2] Moreover, because Google Alerts always have bodies, the existence of *bodiless* Google Alerts strongly suggests that a syncing error occurred that could have rendered other emails bodiless. *See* Ex. 2 (Kopelev Reply), at ¶¶12, 35-37.

### C. The "March 2019 Backup" Cannot Be Verified To Contain All Of Dr. Eltoukhy's Gmails And Files As Of March 2019

Although Guardant claims to have recovered nearly all of the bodiless emails and the nearly 400 files deleted in October 2019 from the "March 2019 Backup" found in an "[IT] Department storage room among over 100 other computers and hard drives," these attempts to rectify Dr. Eltoukhy's misconduct are unavailing. Ex. 5 (Guardant's Responses), at 11. The two drives that Guardant refers to as the "March 2019 Backup," which Guardant argues were "synced" to Dr. Eltoukhy's Gmail account, cannot be forensically verified to contain all of Dr. Eltoukhy's Gmails and files as of March 22, 2019. Nor does the fact that certain bodiless emails may have been deleted prior to Dr. Eltoukhy's deposition in April 2019 absolve Guardant or Dr. Eltoukhy of his egregious misconduct. Indeed, by identifying the possibility of earlier deletions, Guardant's

[2] Notably, the bodiless email that was discussed at length by the Court on October 29, 2020 and November 2, 2020, and in the parties' briefing – the "CNV analysis" email – remains bodiless. *See* D.I. 502-A, at 7; D.I. 503, November 2, 2020 Hearing Tr., at 23:4-24.

expert now opines that Dr. Eltoukhy could have deleted evidence on even more occasions while he was under a litigation hold. *See supra* p. 2.

Moreover, Guardant's data recovery efforts with respect to the "March 2019 Backup" themselves resulted in the loss of relevant information, including data relating to historical file system and user activity that could have been used to identify other possible deletion activity by Dr. Eltoukhy prior to March 2019. Ex. 1 (Kopelev Opening), at ¶¶96-99, 106; Ex. 2 (Kopelev Reply), at ¶¶13, 50-51. Finally, and critically, Guardant's failure to preserve Dr. Eltoukhy's Gmail account until December 2019, years after Guardant filed its complaint, months after Guardant knew the account contained relevant evidence, and six months after Dr. Eltoukhy had already deleted his pre-2014 Gmails, resulted in a lost opportunity to preserve the best – and only – original source of Dr. Eltoukhy's Gmail data.

## IV. WITNESSES AND DOCUMENTS ON WHICH FMI INTENDS TO RELY

At the evidentiary hearing on May 13, 2021, FMI intends to call Mr. Kopelev in its affirmative case. FMI also intends to cross-examine (1) Dr. Eltoukhy, as well as Guardant's expert, Britton Moore, who will testify pursuant to the Court's Order; and (2) Guardant's in-house counsel, Kim Moore, if he is called by Guardant.

A list of the documents FMI intends to rely on at the evidentiary hearing and/or in post-hearing briefing in support of its Spoliation Motion is attached as Appendix A, which includes all of the exhibits, deposition testimony, and other materials already in the record and submitted in connection with FMI's Spoliation Motion and Reply.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jeremy A. Tigan
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Foundation Medicine, Inc.*

OF COUNSEL:

Eric J. Marandett
G. Mark Edgarton
Sophie F. Wang
Diane C. Seol
John C. Calhoun
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

April 30, 2021